IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF MASSACHUSETTS *ex rel.* JOHN DOE,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>JOHNSON & JOHNSON, DEPUY SYNTHES, INC., and DEPUY SYNTHES SALES, INC.<br><br>                    Defendants. | No. 17-cv-11502-DJC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, TO STRIKE CERTAIN ALLEGATIONS FROM THE FIRST
<u>AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

PROCEDURAL HISTORY.........................................................................................................3

ARGUMENT .............................................................................................................................4

    I.     Counts Six, Seven, Ten and Eleven Do Not Satisfy Rule 12(b)(6)'s Pleading
        Requirements .............................................................................................................4

         a.     Legal Standard .............................................................................................4

         b.     Plaintiff Fails to State a Claim for FCA Retaliation (Count Six) as He
              Offers Only Conclusory Allegations that His Protected Conduct was the
              "But-For" Reason for His Alleged Termination ..........................................5

         c.     Plaintiff Fails to State a Claim for Massachusetts FCA Retaliation
              (Count Seven) .............................................................................................9

         d.     Plaintiff Fails to State a Claim for Breach of the Implied Covenant of
              Good Faith and Fair Dealing (Count Ten)..................................................11

         e.     Plaintiff Fails to State a Claim for Breach of Contract (Count Eleven) ....13

    II.    Counts Eight and Ten are Preempted by Plaintiff's FCA and Massachusetts
        FCA Retaliation Claims (Count Six and Seven)......................................................15

    III.   In the Alternative, This Court Should Strike the Allegations Related to
        SR3's Death ..............................................................................................................18

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alenci v. Hometown Am. Mgmt., LLC*,
No. 19-12244-LTS, 2020 WL 2515872 (D. Mass. May 15, 2020) ..................................13, 15

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
583 N.E.2d 806 (Mass. 1991) ..............................................................................................11

*Armstrong v. Arcanum Grp. Inc.*,
No. 16-CV-1015-MSK-CBS, 2017 WL 4236315 (D. Colo. Sept. 25, 2017),
*aff'd sub nom. Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283 (10th Cir.
2018) ......................................................................................................................................6

*Artuso v. Vertex Pharms., Inc.*,
637 F.3d 1 (1st Cir. 2011) ....................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................4, 5, 8

*Bennett v. Abiomed, Inc.*,
No. 13-cv-12277-IT, 2020 WL 1429847 (D. Mass. Mar. 24, 2020) .......................................7

*Bryant v. Kindred Hosps. E. LLC*,
No. 07-12139-PBS, 2008 WL 11389202 (D. Mass. Aug. 6, 2008).......................................16

*Christensen v. Kingston Sch. Comm.*,
360 F. Supp. 2d 212 (D. Mass. 2005) ...................................................................................12

*Coll v. PB Diagnostic Sys., Inc.*,
50 F.3d 1115 (1st Cir. 1995) .................................................................................................16

*Dexter v. Dealogic, LLC*,
390 F. Supp. 3d 233 (D. Mass. 2019) ...................................................................................12

*DiFiore v. CSL Behring, LLC*,
879 F.3d 71 (3rd Cir. 2018) ...................................................................................................6

*Dineen v. Dorchester House Multi-Service Ctr.*,
No. 13-12200-LTS, 2014 WL 458188 (D. Mass. Feb. 3, 2014)............................................16

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996) .................................................................................................15

*Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.*,
   450 F. Supp. 3d 20 (D. Mass. 2020) ...................................................................11

*Grant v. Target Corp.*,
   126 F. Supp. 3d 183 (D. Mass. 2015) ............................................................11, 12

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009).....................................................................................5, 6

*Guilfoile v. Shields*,
   913 F.3d 178 (1st Cir. 2019) .............................................................................7

*Guilfoile v. Shields Pharmacy, LLC*,
   No. 16-cv-10652, 2021 WL 4459515 (D. Mass. Sept. 29, 2021) (Casper, J.).........................17

*Harrington v. Aggregate Indus. Ne. Region, Inc.*,
   668 F.3d 25 (1st Cir. 2012).................................................................................7

*Harrison v. NetCentric Corp.*,
   744 N.E.2d 622 (Mass. 2001) ...........................................................................11

*Hogan v. Teamsters Local 170*,
   495 F. Supp. 3d 52 (D. Mass. 2020) ..................................................................13

*Kachaylo v. Brookfield Twp. Bd. of Trs.*,
   778 F. Supp. 2d 814 (N.D. Ohio 2011)................................................................8

*King v. Driscoll*,
   638 N.E.2d 488 (Mass. 1994) ......................................................................15, 16

*Lawson v. FMR LLC*,
   724 F. Supp. 2d 141 (D. Mass. 2010), *rev'd in part*, 670 F.3d 61 (1st Cir.
   2012), *rev'd and remanded*, 571 U.S. 429 (2014) .................................................17

*Lestage v. Coloplast Corp.*,
   982 F.3d 37 (1st Cir. 2020)........................................................................5, 6, 9

*Lorenzana v. S. Am. Rests. Corp.*,
   799 F.3d 31 (1st Cir. 2015).................................................................................5

*Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*,
   No. 20-10565-FDS, 2021 WL 231298 (D. Mass. Jan. 22, 2021) ..............................13, 14, 15

*McLeod v. Fessenden Sch.*,
   2022 WL 3446011 (D. Mass. Aug. 17, 2022) .......................................................19

*Morales-Vallellanes v. Potter*,
   605 F.3d 27 (1st Cir. 2010).................................................................................9

*Naimark v. BAE Sys. Info. and Elec. Sys. Integration Inc.*,
No. 20-cv-10138-DJC, 2021 WL 6098728 (D. Mass. Dec. 23, 2021) (Casper, J.)................17

*Nesbitt v. Candler Cnty.*,
945 F.3d 1355 (11th Cir. 2020) .........................................................................................6, 7

*Robert Reiser & Co. v. Scriven*,
130 F. Supp. 3d 488 (D. Mass. 2015) ...............................................................................11, 13

*Sawyer v. Kindred Healthcare, Inc.*,
186 F. Supp. 3d 118 (D. Mass. 2016), *aff'd*, No. 16-1674, 2017 WL 11686099
(1st Cir. July 31, 2017) ...........................................................................................................16

*Sheffield v. City of Bos.*,
319 F.R.D. 52 (D. Mass. 2016)...............................................................................................18

*Sheppard v. 265 Essex St. Operating Co., LLC*,
299 F. Supp. 3d 278 (D. Mass. 2018) ............................................................................7, 8, 10

*Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*,
533 N.E.2d 1368 (Mass. 1989) ........................................................................................15, 16

*St. Arnaud v. Chapdelaine Truck Ctr., Inc.*,
836 F. Supp. 41 (D. Mass. 1993) ...........................................................................................17

*United States ex rel. Chandler v. Hektoen Inst. for Med. Research*,
35 F. Supp. 2d 1078 (N.D. Ill. 1999) .....................................................................................17

*United States ex rel. Cody v. ManTech Int'l, Corp.*,
746 F. App'x. 166 (4th Cir. 2018) ...........................................................................................6

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
95 F. Supp. 3d 240 (D. Mass. 2015), *aff'd sub nom. Hagerty ex rel. United
States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016) .........................................................10

*United States ex rel. Hood v. Satory Global, Inc.*,
946 F. Supp. 2d 69 (D.D.C. 2013)...........................................................................................17

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.3d 220 (1st Cir. 2004)................................................................................................5, 6

*United States ex rel. Karvelas v. Tufts Shared Servs.*,
433 F. Supp. 3d 174 (D. Mass. 2019) ................................................................................10, 15

*United States ex rel. King v. Solvay Pharms., Inc.*,
871 F.3d 318 (5th Cir. 2017) ...................................................................................................6

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ............................................................................................. 6, 7

*Valerio v. Putnam Assocs. Inc.*,
   173 F.3d 35 (1st Cir. 1999) ..................................................................................... 17

*Vonachen v. Comput. Assocs. Int'l, Inc.*,
   524 F. Supp. 2d 129 (D. Mass. 2007) ..................................................................... 11

*Wong v. Resolve Tech.*,
   No. 10-11642-DJC, 2011 WL 3157198 (D. Mass. July 25, 2011) (Casper, J.) ................ 12, 16

*Young v. Lepore*,
   305 F.3d 1 (1st Cir. 2002) ......................................................................................... 6

*Zurich Am. Ins. Co. v. Watts Regulator Co.*,
   796 F. Supp. 2d 240 (D. Mass. 2011) ..................................................................... 18

## Statutes

31 U.S.C. § 3730(h) ..................................................................................................... 3, 5

Mass. Gen. Laws ch. 12, § 5J ....................................................................................... 4, 9

Mass. Gen. Laws ch. 149, § 187 ..................................................................................... 4

## Other Authorities

5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1382 (3d ed) ............... 18, 19

Fed. R. Civ. P. 12(b)(6) ........................................................................................... *passim*

Fed. R. Civ. P. 12(f) ..................................................................................................... 18

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Johnson & Johnson and DePuy Synthes Sales, Inc. (collectively, "Defendants" or "DePuy"),[1] respectfully submit this memorandum of law in support of the motion to dismiss the first amended complaint ("Complaint" or "FAC", Dkt. 13) of plaintiff John Doe ("Relator" or "Plaintiff"). The FAC should be dismissed because it fails to state a claim and contains common law claims that are preempted by other statutory remedies. The FAC also contains immaterial and impertinent statements that, in the alternative, should be stricken from the pleading.

At bottom, this suit is nothing more than an employment retaliation dispute between Plaintiff and DePuy. In August 2017, Plaintiff brought this action, alleging various violations of the False Claims Act ("FCA") and Anti-Kickback Statute ("AKS"). Nearly six years later, DePuy has resolved, through a January 2023 civil settlement agreement ("Settlement Agreement"), the underlying FCA and AKS allegations with the United States Attorney's Office for the District of Massachusetts ("USAO"), the United States Department of Justice ("DOJ"), and the Massachusetts Attorney General's Office ("AGO") (collectively, the "Government"), without admitting to any legal liability under the FCA and the AKS. This Settlement Agreement resulted in the release and dismissal of Plaintiff's causes of action related to the alleged FCA and AKS claims. As such, Plaintiff has five remaining claims in this action, Counts Six through Eight and Ten through Eleven, all of which arise from DePuy's alleged retaliation and termination of Plaintiff. Each of these claims fails and should be dismissed.

---

[1] The Plaintiff's FAC originally included DePuy Synthes, Inc. as a defendant. Plaintiff voluntarily dismissed DePuy Synthes, Inc., on March 3, 2023. (Dkt. 89.)

Plaintiff's claims suffer from inadequate pleading, as Plaintiff fails to plead allegations sufficient to establish the elements of the causes of action.  Plaintiff's statutory retaliation claims, under the FCA and the Massachusetts False Claims Act ("MFCA"), Counts Six and Seven, should be dismissed because Plaintiff fails to allege a "but-for" causal link between his protected conduct and alleged termination. Despite the 22 paragraphs of allegations that remain in the FAC, nothing in those paragraphs contains any information alleging that DePuy terminated Plaintiff *because of* the reports he made to DePuy or to the Government. By not accounting for significant gaps in time and by not connecting his alleged termination to the underlying allegations of protected conduct and other allegedly retaliatory incidents, Plaintiff is unable to demonstrate that his protected conduct was the "but-for" cause of his alleged termination. Plaintiff similarly fails to state a common law claim for breach of the implied covenant of good faith and fair dealing (Count Ten) because he does not allege that DePuy deprived him of compensation for work that he had already performed. Finally, Plaintiff's breach of contract claim (Count Eleven) is devoid of the basic information needed to establish the alleged existence, exercise, and breach of the stock option and incentive agreement and, accordingly, should be dismissed.

Moreover, Plaintiff's two public policy claims—wrongful termination in violation of public policy (Count Eight) and breach of the implied covenant of good faith and fair dealing (Count Ten)—are based on the same alleged conduct, seek the same remedies, and vindicate the same public policy interests as his statutory FCA and MFCA retaliation claims, and are therefore preempted and should be dismissed.

Plaintiff also inexplicably makes reference to a supervisor's death in two places in his complaint, which he alleges occurred within days of reporting his concerns to the government. These references are irrelevant, impertinent, and immaterial, and only serve to impugn the

supervisor's character and to improperly suggest that DePuy knew or should have known about the circumstances of his death and/or that his death was somehow related to the conduct at issue. Plaintiff makes no allegation that the supervisor was involved in the alleged retaliation that Plaintiff suffered and, should his complaint survive this motion, these wholly inappropriate and scandalous references should be stricken.

Because of these legal deficiencies in each of Plaintiff's claims, the Court should dismiss the Complaint in its entirety and enter judgment in favor of DePuy. In the alternative, the Court should strike Plaintiff's unnecessary and improper references to the supervisor's death.

## PROCEDURAL HISTORY

Plaintiff filed his first *qui tam* complaint with this Court in August 2017, primarily raising claims against the Defendants under the FCA and AKS. (Dkt. 2.) Plaintiff amended his complaint in March 2018. (Dkt. 13.)

In September 2022—after more than five years of investigation—the Government intervened against DePuy Synthes, Inc. and DePuy Synthes Sales, Inc., as to Count Three, and declined to intervene with respect to all other allegations. (Dkt. 62.) In January 2023, the Government filed notice with this Court that the parties had executed a settlement agreement. (Dkt. 70.) The complaints were unsealed on January 20, 2023. (Dkt. 71.)

On January 27, 2023, the Court granted the Government's and the Plaintiff's Joint Notice of Dismissal as to all claims, aside from claims arising from the Plaintiff's retaliation allegations in paragraphs 68 through 90 of the FAC. (Dkt. 72, 73.) As such, only the following counts remain in this action:

- Count Six alleges that DePuy retaliated against Plaintiff under 31 U.S.C. § 3730(h) of the FCA because of his refusal to engage in practices that led to the presentment of false claims to the United States, FAC ¶¶ 124–27;

- Count Seven alleges that DePuy retaliated against Plaintiff under the Massachusetts analog to the FCA, Mass. Gen. Laws ch. 12, § 5J, *id.* ¶¶ 128–31;

- Count Eight alleges that DePuy wrongfully terminated Plaintiff's employment in violation of public policy, *id.* ¶¶ 132–34;

- Count Ten alleges that DePuy breached the implied covenant of good faith and fair dealing by retaliating against Plaintiff for reporting unlawful activity to his supervisor at DePuy, *id.* ¶¶ 142–45; and

- Count Eleven alleges that DePuy breached a contract with Plaintiff by preventing him from exercising his rights under a "Stock Option and Incentive Plan," *id.* ¶¶ 146–48.[2]

DePuy now files its motion to dismiss on the grounds that Counts Six, Seven, Ten, and Eleven fail to state a viable cause of action, and Counts Eight and Ten are preempted under Massachusetts law.  All claims fail as a matter of law and must be dismissed.

## ARGUMENT

### I.   Counts Six, Seven, Ten and Eleven Do Not Satisfy Rule 12(b)(6)'s Pleading Requirements

#### a.  Legal Standard

A complaint cannot survive a motion to dismiss under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While the Court must accept the alleged facts as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and cannot state a viable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* at 678 (quoting

---

[2] Plaintiff's FAC originally included a cause of action for retaliatory actions against health care providers pursuant to Mass. Gen. Laws ch. 149, § 187. FAC ¶¶ 135–41 (Count Nine). Plaintiff voluntarily dismissed this cause of action on March 3, 2023. (Dkt. 90.)

*Twombly*, 550 U.S. at 555). Complaints that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture" are ripe for dismissal. *Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015) (internal quotation marks omitted). "[C]ourts 'do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Id.* at 35 (quoting *Iqbal*, 556 U.S. at 678–79).

> **b. Plaintiff Fails to State a Claim for FCA Retaliation (Count Six) as He Offers Only Conclusory Allegations that His Protected Conduct was the "But-For" Reason for His Alleged Termination**

In Count Six, Plaintiff alleges that DePuy retaliated against him and ultimately fired him on account of his protected activity in violation of 31 U.S.C. § 3730(h). FAC ¶ 126. Under this provision of the False Claims Act, an employee is entitled to relief if he is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). Plaintiff fails to sufficiently plead a violation of this provision.

The First Circuit has elucidated the following elements that must be pled in order to state a claim under 31 U.S.C. § 3730(h): "To prevail on a False Claims Act retaliation claim, a plaintiff must show that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 235 (1st Cir. 2004) (affirming dismissal for failure to sufficiently allege causation element). In the First Circuit, courts apply a "but-for" standard to the causation prong of this analysis. *Lestage v. Coloplast Corp.*, 982 F.3d 37, 41 (1st Cir. 2020).[3] This

---

[3] The First Circuit joined several other Circuit Courts of Appeal and District Courts in applying a "but-for" causation standard in FCA retaliation cases in light of the Supreme Court's recent decisions in *Gross v. FBL Fin. Servs., Inc.*,

standard requires more of a causal connection than simply alleging that the plaintiff's protected conduct was a "motivating factor" in the employer's allegedly retaliatory conduct.[4] *See Armstrong v. Arcanum Grp. Inc.*, No. 16-CV-1015-MSK-CBS, 2017 WL 4236315, at *3 (D. Colo. Sept. 25, 2017) ("[T]he statutory phrase 'because of' connotes a more stringent causal connection than 'motivating factor' does."), *aff'd sub nom. Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283 (10th Cir. 2018).

Plaintiff appears to allege that his internal reporting of safety concerns to DePuy and his disclosure of safety and overbilling concerns to the government constituted his protected conduct, but he does not make the requisite "but-for" correlation between the protected conduct and any alleged employment retaliation or termination. FAC ¶¶ 73, 78. Plaintiff alleges that DePuy became aware of his protected conduct when SR1, "Relator's boss,"[5] was interviewed by law enforcement officials within days of his reporting to the government. FAC ¶ 78. Plaintiff seems to allege that DePuy discriminated or retaliated against him by revoking an "offer" or "promise[]" to pay him commissions, *id.* ¶ 81, by not providing requested additional support, *id.* ¶ 84, by not inquiring further as to his concerns, *id.* ¶ 87, by requesting that he submit his electronic devices for review, *id.* ¶ 89, and by ultimately terminating him, *id.* ¶ 90. Plaintiff also alleges that SR1 threatened and

557 U.S. 167, 176 (2009) and *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350–52 (2013) that interpreted the "because of" language in analogous statutes. *See, e.g., Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1359–60 (11th Cir. 2020); *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76–78 (3rd Cir. 2018); *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x. 166, 177 (4th Cir. 2018); *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017).

[4] Note that in *Karvelas*, the First Circuit affirmed the dismissal of the relator's FCA retaliation claim under the "substantial motivating factor" standard. *See Karvelas*, 360 F.3d at 239. The First Circuit abrogated the "motivating factor" test relied upon in *Karvelas* in its decision in *Lestage. Lestage*, 982 F.3d at 46.

[5] Plaintiff's FAC is anonymized as to the individuals and entities involved in the alleged conduct. While Plaintiff's Proposed Second Amended Complaint ("PSAC") identifies these parties, the present motion relates only to the anonymized FAC, and therefore adopts Plaintiff's anonymized styling. *See Young v. Lepore*, 305 F.3d 1, 10–11 (1st Cir. 2002) ("The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint.").

harassed him. *Id.* ¶ 86. Even accepting these facts as true, as the Court must at this stage, Plaintiff

fails to meet his pleading burden under Rule 12(b)(6) because he fails to plead that he would not

have been terminated or retaliated against "but-for" his protected conduct. *See Nesbitt*, 945 F.3d

at 1358 (finding that the "but-for" standard requires a plaintiff "to 'show that the harm would not

have occurred in the absence of[,] that is, but for' his protected conduct.") (alteration in original)

(quoting *Nassar*, 570 U.S. at 346–47)).

The lapse in time between the alleged protected conduct and the alleged retaliation and

termination also negates any inference that Plaintiff's alleged protected conduct was the "but-for"

basis for the alleged retaliation and termination.  In certain cases, "[c]ausation can be inferred from

temporal proximity between protected conduct and an adverse employment action." *Sheppard v.

265 Essex St. Operating Co., LLC*, 299 F. Supp. 3d 278, 286 (D. Mass. 2018); *see also Bennett v.

Abiomed, Inc.*, No. 13-cv-12277-IT, 2020 WL 1429847, at *6 (D. Mass. Mar. 24, 2020) ("[A]

showing of temporal proximity between the two events may be enough to establish a prima facie

case of causation"). Plaintiff can not avail himself of that inference here. Plaintiff alleges that he

reported his safety concerns to DePuy in October 2016, and that he was terminated in January

2018, fifteen months later. FAC ¶¶ 73, 90. Moreover, viewing the factual allegations in the light

most favorable to Plaintiff, he separately alleges that DePuy learned of his protected conduct in

May 2017. *Id.* ¶ 82. Even this eight-month period between Plaintiff's alleged protected conduct

and his termination far exceeds the days and weeks that courts typically recognize as being

temporally proximate. *See, e.g., Guilfoile v. Shields*, 913 F.3d 178, 194 (1st Cir. 2019) (plaintiff

"plausibly pleaded" causation "given the close temporal proximity – about a week – of his

termination."); *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 32 (1st Cir. 2012)

("[T]he temporal span here—72 hours—is sufficiently brief to satisfy the causation element of the

appellant's prima facie case."); *Sheppard*, F. Supp. 3d at 286 ("A one- to two-month period is sufficiently brief to allow that inference"). Plaintiff does not allege that the temporal distance between his protected conduct and ultimate termination is due to some other factor, such as a steady decrease in his job responsibilities, his placement on an unrealistic performance plan, his placement on administrative leave, or any other explanation.  In fact, accepting, *arguendo*, that Plaintiff's allegations from the May to July 2017 period are accurate, *see* FAC ¶¶ 81–89, he does not account for or provide any information related to the six-month delay between other incidents of alleged retaliation and his termination. Indeed, Plaintiff alleges that DePuy "demanded" that he return his electronic devices in July 2017, but makes no further factual allegations whatsoever until he contends that he was terminated in January 2018. *Id.* ¶¶ 89–90. Plaintiff's allegation that he was informed of his termination on January 30, 2018 does not even allege that it was related in any way to his protected conduct or any pattern of retaliatory or discriminatory behavior. *Id.* ¶ 90 ("On January 30th 2018, Defendants wrote to Relator informing him for the first time that he his [sic] employment had been terminated.").

The only connection that Plaintiff attempts to make between his protected conduct and his alleged termination is that "Defendants retaliated against Relator Doe, and ultimately fired him, because he refused to engage in practices that led to the presentation of false claims to the United States." *Id.* ¶ 126.  Such a conclusory allegation is insufficient under 31 U.S.C. § 3730(h) and Rule 12(b)(6), and Plaintiff's cause of action for FCA retaliation must thus be dismissed. *See Kachaylo v. Brookfield Twp. Bd. of Trs.*, 778 F. Supp. 2d 814, 820–21 (N.D. Ohio 2011) ("Such conclusory allegations, without any factual allegations in support, are insufficient to state this element of a whistleblower claim. The Complaint must provide more than 'a formulaic recitation of the elements of a cause of action' to state a claim." (quoting *Twombly*, 550 U.S. at 555)).

Finally, not only has Plaintiff failed to plead "but-for" causation as to his alleged termination and other allegedly retaliatory conduct, he also pleads many allegations that do not meet the standard of discrimination or retaliation as they are not adverse employment actions. In general, "[a]n adverse employment action is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Morales-Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) (quotation marks omitted). In the present case, Plaintiff has cluttered his complaint with a number of distracting allegations that do not meet this standard. For instance, the alleged revocation of the "offer" to pay Plaintiff commissions did not result in a "significant change" in benefits. FAC ¶ 81. This is also the case for his allegations that he requested and was denied additional support, *id.* ¶ 84, that DePuy should have inquired further as to his concerns, *id.* ¶ 87, and that DePuy requested Plaintiff's devices for inspection. *Id.* ¶ 89. As these allegations do not constitute adverse employment actions, they should not be considered by this Court in assessing whether Plaintiff has stated a claim upon which relief can be granted. *See Lestage*, 982 F.3d at 49 (stating that examples of adverse employment actions include "a decrease in wage or salary … significantly diminished material responsibilities, or other indices that might be unique to a particular situation" (quoting *Morales-Vallellanes*, 605 F.3d at 36)).[6]

### c. Plaintiff Fails to State a Claim for Massachusetts FCA Retaliation (Count Seven)

In Count Seven, Plaintiff re-states his retaliation claim in Count Six, and alleges that DePuy violated Mass. Gen. Laws ch. 12, § 5J, the state analog to the FCA in Massachusetts. Under the

---

[6] In addition, Plaintiff also includes allegations in the Complaint that are not actually made against Defendants to this action. *See, e.g.,* FAC ¶¶ 79 (alleging that H1 summoned Plaintiff and threatened to ban him from the hospital); 86 (alleging that SR1 threatened and harassed Plaintiff).

MFCA, "to prove a retaliatory termination, a plaintiff must demonstrate that (1) she engaged in conduct protected by the MFCA; (2) her employer knew that she was engaged in that conduct; and (3) her employer took an adverse employment action against her because of the protected conduct." *Sheppard*, 299 F. Supp. 3d at 284. Plaintiff alleges, as he does in Count Six, that DePuy retaliated against him "and ultimately fired him, because he refused to engage in practices that led to the presentation of false claims to the United States," and that DePuy's actions constitute a violation of the MFCA. FAC ¶ 130. Plaintiff's MFCA claim therefore mirrors his FCA retaliation claim.

In evaluating MFCA retaliation claims, courts look to its federal counterpart for guidance. "Case law construing the MFCA's provisions is sparse. 'However, the MFCA was modeled on the similarly worded [FCA]'; thus, Massachusetts courts 'look for guidance to cases and treatises interpreting the [f]ederal [FCA].'" *United States ex rel. Karvelas v. Tufts Shared Servs.*, 433 F. Supp. 3d 174, 181 (D. Mass. 2019) (alterations in original) (citation omitted) (quoting *Scannell v. Att'y Gen.*, 872 N.E.2d 1136, 1138 (Mass. App. Ct. 2007)).

Plaintiff's MFCA retaliation claim allegations involve the same core facts, theories of liability, and the same alleged damages as his FCA retaliation claim. As such, the Court must dismiss Plaintiff's MFCA retaliation claim, consistent with its dismissal of his FCA retaliation cause of action. *See United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 273–74 (D. Mass. 2015) (denying dismissal of a federal FCA retaliation claim and then denying dismissal of MFCA retaliation claim "[b]ecause state acts such as the MFCA are construed consistently with the federal FCA"), *aff'd sub nom. Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016). Because Plaintiff fails to state a claim under the FCA, so too does he fail to state a claim under the MFCA.

### d.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Ten)

Plaintiff alleges in Count Ten that DePuy breached the implied covenant of good faith and fair dealing after he "reported what he reasonably believed to be unlawful activity." FAC ¶¶ 142–45. In Massachusetts, "a covenant of good faith and fair dealing is implied in every contract." *Robert Reiser & Co. v. Scriven*, 130 F. Supp. 3d 488, 495 (D. Mass. 2015). The purpose of the implied covenant is to ensure "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 820 (Mass. 1991) (quoting *Druker v. Roland Wm. Jutras Assocs., Inc.*, 348 N.E.2d 763, 765 (Mass. 1976)). "To advance a claim for breach of the covenant, a Plaintiff must establish four elements: (1) status as an at-will employee; (2) termination of employment; (3) termination without 'good cause' or in 'bad faith'; and (4) termination with the purpose of depriving an employee of benefits to which he is entitled." *Vonachen v. Comput. Assocs. Int'l, Inc.*, 524 F. Supp. 2d 129, 137 (D. Mass. 2007).

In considering whether a claim for breach of the implied covenant of good faith and fair dealing is viable, courts examine whether an employee was terminated in bad faith, and whether he was thereby deprived of a benefit to which he was entitled. *See Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.*, 450 F. Supp. 3d 20, 29, 33 (D. Mass. 2020); *Harrison v. NetCentric Corp.*, 744 N.E.2d 622, 629 (Mass. 2001) (stating that the terminated employee may seek "unpaid compensation if the employee [was] terminated in bad faith and the compensation is clearly connected to work already performed").

As such, the only remedy available to a plaintiff who was wrongfully terminated in violation of the implied covenant is damages to "compensate an employee for past services" and to "deny the employer any readily definable, financial windfall resulting from the breach." *Grant*

*v. Target Corp.*, 126 F. Supp. 3d 183, 190 (D. Mass. 2015) (internal quotation marks omitted). In other words, courts have consistently found at the motion to dismiss stage that plaintiffs cannot recover damages for emotional distress, reputational harm, or prospective lost wages. *See, e.g.,* *Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 244–45 (D. Mass. 2019) (dismissing claim where plaintiff sought prospective lost wages, benefits, and bonuses); *Grant*, 126 F. Supp. 3d at 190 (dismissing claim where damages sought were not based on past services); *Wong v. Resolve Tech.*, No. 10-11642-DJC, 2011 WL 3157198, at *6–7 (D. Mass. July 25, 2011) (Casper, J.) (granting motion to dismiss where plaintiff did not plead that her employer "terminated the her [sic] employment to avoid payment of past services or benefits earned but not received"); *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 228 (D. Mass. 2005) (dismissing claim where plaintiff sought future compensation damages).

The Court need not determine whether Relator's alleged termination was made in bad faith as the Relator does not make any allegation that he was deprived of any compensation or benefits for services rendered prior to his termination. Plaintiff alleges that DePuy's conduct caused him damage in the form of "lost salary, lost benefits and emotional distress." FAC ¶ 145. He makes no allegation of any financial windfall to DePuy resulting from the alleged breach. As it relates to lost compensation, Plaintiff's complaint, at most, alleges that Plaintiff was "supposed to begin earning a percentage of overall sales" as of May 2017, and that "this offer was effectively revoked." *Id.* ¶ 81. Accepting this fact as true, as is required at the motion to dismiss stage, the revocation of future commissions is insufficient to state a claim for a breach of the implied covenant of good faith and fair dealing. Plaintiff does not allege that these commissions were earned and owed as of the date of his alleged termination as the result of past services he performed for DePuy. Similarly, Plaintiff does not allege that he continued to provide services to DePuy for which he was not paid. Indeed,

Plaintiff makes no allegation that DePuy withheld any compensation for his past services rendered. *See Artuso v. Vertex Pharms., Inc.*, 637 F.3d 1, 8–9 (1st Cir. 2011) ("[I]t is especially prudent in such cases to insist on a real showing. Without such specific information, the plaintiff's allegation 'bears insignia of its speculative character,' betokening that it constitutes only mere possibility.") (quoting *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)); *Reiser*, 130 F.Supp.3d at 496 (dismissing a basis for a breach of implied covenant claim where the complaint "contains no allegations identifying any specific benefits that [employer] failed to provide to [plaintiff]" and "no allegations explaining how a wrongful termination deprived him of any benefits."). In the absence of such allegations, this cause of action must be dismissed under Rule 12(b)(6).

### e.   Plaintiff Fails to State a Claim for Breach of Contract (Count Eleven)

In Count Eleven, Plaintiff alleges that DePuy breached a stock option and incentive contract. FAC ¶¶ 146–48. Under Massachusetts law, to prevail on a breach of contract claim a plaintiff must show that: "(1) a valid contract between the parties existed; (2) the plaintiff was ready, willing, and able to perform; (3) the defendant breached that contract; and (4) the defendant's breach caused the plaintiff damage." *Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*, No. 20-10565-FDS, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must do more than allege, in conclusory fashion, that the defendant breached the contract," and must identify "who did what to whom, when, where, and why" and explain "what obligations were imposed on each of the parties." *Hogan v. Teamsters Local 170*, 495 F. Supp. 3d 52, 58 (D. Mass. 2020) (quoting *Alenci v. Hometown Am. Mgmt., LLC*, No. 19-12244-LTS, 2020 WL 2515872, at *4 (D. Mass. May 15, 2020)).

Plaintiff offers only the following allegations for his breach of contract claim: "Defendants and Relator Doe are parties to a contract entitled the 'Stock Option and Incentive Plan' (the 'Plan'). Under the terms of the Plan, Relator Doe's outstanding stock options should have become fully exercisable. Defendants prevented Relator Doe from exercising his rights under the Plan and so breached the contract between them." FAC ¶ 147. Plaintiff does not make any contentions related to this agreement in his factual allegations; indeed, Plaintiff offers no allegations as to the details of the Plan, the outstanding stock allegedly exercisable by Plaintiff, Plaintiff's alleged attempt to exercise the stock options, nor how DePuy allegedly prevented Plaintiff from exercising his rights under the contract.

*Madden* is instructive. In that case, the plaintiff alleged that she had been awarded stock options by her employer, and that her employer breached their agreement by not providing documentation of her exercise of the stock options. *Madden*, 2021 WL 231, 298, at *5. The Court granted the defendant's motion to dismiss, finding that the allegations in the plaintiff's complaint were "wholly inadequate":

> **There is nothing else in the complaint about the alleged options contract, or the obligations of either party, including whether the options had vested, in whole or in part, at the time she exercised (or attempted to exercise) them.** It does not allege what, if any, obligations were created concerning providing 'documentation.' ***It does not allege when the contract was created, or whether it was oral or written.*** If there is a written contract, ***it is not described or quoted, and it is not attached to the complaint. Nor are there any specifics as to the alleged breach, such as when she exercised or attempted to exercise the options, and what happened as a result***. The complaint is therefore ***missing the most basic information*** as to the terms of the alleged contract and the nature of the breach.
>
> […]
>
> Again, a clam for breach of contract must set forth basic information as to the nature and terms of the alleged contract and the circumstances of the alleged breach. Here ***the allegations in the complaint as to the existence of a contract concerning the exercise of stock options, and defendant's breach of that contract, are wholly inadequate to satisfy those requirements***.

*Id.* at \*5–6 (emphasis added).

As in *Madden*, Plaintiff's breach of contract claim is "wholly inadequate" and fails. He fails to plead the "most basic information" as to the contract and the alleged breach, including when the contract was created and in what form, the parties' obligations, whether the stock options had vested, when he attempted to exercise the stock options, or the nature and circumstances of DePuy's alleged breach. A mere conclusory recitation of the elements of the claim with no additional information or detail lacks the requisite "substantial certainty" for a breach of contract claim, and this cause of action must be dismissed. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) ("Conclusory statements" that defendant "failed to meet their contractual requirement . . . are insufficient to satisfy the pleading requirements." (internal quotation marks omitted)); *Alenci*, 2020 WL 2515872, at \*4.

## II.    Counts Eight and Ten are Preempted by Plaintiff's FCA and Massachusetts FCA Retaliation Claims (Count Six and Seven)

In Count Eight, Plaintiff alleges that DePuy wrongfully terminated him in violation of public policy. FAC ¶¶ 132–34. "[A]s an exception to the general rule that an employer may terminate an at-will employee at any time with or without cause, [Massachusetts courts] have recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy." *Tufts*, 433 F. Supp. 3d at 185 (second alteration in original) (quoting *King v. Driscoll*, 638 N.E.2d 488, 492 (Mass. 1994)). The public policy exception is available where a plaintiff "assert[s] a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 533 N.E.2d 1368, 1371 (Mass. 1989). This

exception to the at-will employment doctrine is interpreted narrowly so as not to risk "convert[ing] the general rule . . . into a rule that requires just case to terminate an at-will employee." *King*, 638 N.E.2d at 492 (second alteration in original) (quoting *Smith-Pfeffer*, 533 N.E.2d at 1371). Plaintiff alleges in Count Ten that DePuy breached the implied covenant of good faith and fair dealing in retaliating against Plaintiff. FAC ¶¶ 142–45. Massachusetts recognizes an implied covenant of good faith and fair dealing in every contract, which "prohibits an employer from terminating an employee in order to deprive him of a benefit to which he is entitled." *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1125 (1st Cir. 1995)."[7] Both of these claims are preempted by Plaintiff's FCA and MFCA retaliation claims and must be dismissed.

"[I]t is well-established that a plaintiff may not bring a common-law claim for termination in violation of public policy where the legislature has provided the plaintiff with a detailed statutory remedy." *Sawyer v. Kindred Healthcare, Inc.*, 186 F. Supp. 3d 118, 127 (D. Mass. 2016), *aff'd*, No. 16-1674, 2017 WL 11686099 (1st Cir. July 31, 2017); *see also Bryant v. Kindred Hosps. E. LLC*, No. 07-12139-PBS, 2008 WL 11389202, at *2–3 (D. Mass. Aug. 6, 2008) (holding that the public policy exception "does not apply" where a plaintiff "has a comprehensive remedy available to her to vindicate her rights."). There is no question that Plaintiff's FCA and MFCA claims provide him with a "detailed statutory remedy." Plaintiff's public policy claims "not only invoke[] the same public policy established by the federal statute, [they] arise from the very acts giving rise to [his FCA and MFCA] claims." *Dineen v. Dorchester House Multi-Service Ctr.*, No. 13-12200-LTS, 2014 WL 458188, at *4–5 (D. Mass. Feb. 3, 2014) (dismissing common law claim where plaintiff also pleaded FCA retaliation). This analysis applies equally to Plaintiff's breach of implied covenant of good faith and fair dealing claim. *See Wong*, 2011 WL 3157198, at *7 (Casper,

---

[7] The legal standards governing this cause of action are discussed in Section I.d, *supra*.

J.) (finding that a common law remedy for breach of covenant of good faith and fair dealing is only appropriate when there is no statutory scheme to vindicate the public policy).

Such a finding here would be consistent with cases in this and other courts. *See, e.g., Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 46 (1st Cir. 1999) (affirming dismissal of common law claim duplicative of plaintiff's statutory claim); *Naimark v. BAE Sys. Info. and Elec. Sys. Integration Inc.*, No. 20-cv-10138-DJC, 2021 WL 6098728, at *7 (D. Mass. Dec. 23, 2021) (Casper, J.) ("Accordingly, the False Claims Act provides a comprehensive remedy for [plaintiff]'s allegations and precludes [plaintiff]'s public policy claim."); *Guilfoile v. Shields Pharmacy, LLC*, No. 16-cv-10652, 2021 WL 4459515, at *7 (D. Mass. Sept. 29, 2021) (Casper, J.) ("A cause of action for wrongful termination in violation of public policy, however, is inapplicable where there is a comprehensive remedial statute, . . . Here, the FCA is the operative 'comprehensive remedial statute.") (internal quotation marks omitted); *United States ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 88–89 (D.D.C. 2013) (finding an alleged breach of the FCA retaliation provisions forecloses availability of the public policy exception); *Lawson v. FMR LLC*, 724 F. Supp. 2d 141, 166 (D. Mass. 2010) ("[A] plaintiff cannot seek common law remedies for wrongful discharge when a statutory scheme already provides remedies for the same conduct."), *rev'd in part*, 670 F.3d 61 (1st Cir. 2012), *rev'd and remanded*, 571 U.S. 429 (2014); *United States ex rel. Chandler v. Hektoen Inst. for Med. Research*, 35 F. Supp. 2d 1078, 1082–83 (N.D. Ill. 1999) (dismissing state public policy claim at motion to dismiss where "the FCA provides [plaintiff] with an adequate remedy"), *on reconsideration in part*, 118 F.Supp.2d 902 (N.D. Ill. 2000), *rev'd sub nom. United States ex rel. Chandler v. Cook Cnty., Ill.*, 277 F.3d 969 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003); *St. Arnaud v. Chapdelaine Truck Ctr., Inc.*, 836 F. Supp. 41, 43 (D. Mass. 1993) (dismissing claim

for wrongful termination based on breach of implied covenant of good faith and fair dealing because public policy at issue was covered by statutory scheme).

The FCA and MFCA provide Plaintiff with statutory remedies to address his retaliation allegations, and the same factual allegations underpin each of these claims: namely, that Plaintiff reported allegedly unlawful activity and/or refused to engage in that activity, and that DePuy allegedly retaliated against him as a result. FAC ¶¶ 125–26, 129–30, 133, 143–44. There is no question that the FCA and MFCA preclude Plaintiff's public policy claims, and Counts Eight and Ten must therefore be dismissed.

### III.    In the Alternative, This Court Should Strike the Allegations Related to SR3's Death

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While motions to strike are generally disfavored, "[t]he Court has broad discretion to strike comments which are not 'substantive elements of the cause of action.'" *Sheffield v. City of Bos.*, 319 F.R.D. 52, 54 (D. Mass. 2016) (quoting *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)); *see also Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011). Immaterial statements are those that have "no essential or important relationship to the claim for relief or the defenses being pleaded," while impertinent statements are those that "do not pertain, and are not necessary, to the issues in question." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1382 (3d ed). Plaintiff's complaint contains irrelevant, impertinent, and unnecessary allegations, and the Court should exercise its discretion to strike such allegations.

Plaintiff's complaint contains two references to the death of SR3, allegedly Plaintiff's supervisor's supervisor. *See* FAC ¶¶ 69–70. At paragraph 80, Plaintiff alleges that "a few days later [after Plaintiff reported his concerns to the government, SR1 was interviewed by law

enforcement, and SR1 was banned from H1], SR3 was found dead of a suspected drug overdose. He was 47-years [sic] old." Further, at paragraph 87, Plaintiff alleges that "Defendants never contacted the Relator to understand or ask about: . . . (e) why SR3 may have died just days later." These allegations should both be stricken as impertinent and immaterial.

By including such allegations and by linking them temporally to Plaintiff's report to the government, to SR1's interview by law enforcement officials, and to SR1's ban from H1, Plaintiff appears to suggest that the circumstances of SR3's death are somehow connected to Plaintiff's protected conduct and/or subsequent actions by law enforcement officials and H1. FAC ¶¶ 78–80, 87. Nowhere in his complaint does Plaintiff allege that SR3 had knowledge of his protected conduct or that SR3 retaliated against him. These allegations are "not necessary" to the issues in question and have "no essential or important relationship to the claim for relief," and therefore are irrelevant, immaterial, and impertinent, and should be stricken. *See* Wright & Miller, § 1382. While motions to strike are disfavored, they have been granted where a plaintiff makes immaterial and irrelevant allegations. *See McLeod v. Fessenden Sch.*, 2022 WL 3446011, at *2 (D. Mass. Aug. 17, 2022) (striking "[a]llegations concerning the occupations, personal wealth, and private lives of [school] trustees" as "immaterial and impertinent" in a case alleging sexual abuse of a student by her teacher). Given that Plaintiff makes no allegations connecting SR3 to Plaintiff's causes of action, SR3's unavailability as a witness in this litigation, and the negative inferences and suggestions that stem from the framing of and reference to SR3's death, there is no basis to include these inappropriate and scandalous allegations, and they should be stricken as immaterial and irrelevant under Rule 12(f).

## CONCLUSION

For the foregoing reasons, DePuy respectfully requests that the Court dismiss the FAC. To the extent this action survives this motion, the Court should strike Paragraph 80s and 87(e) of the FAC (the references to SR3's death).


Dated: March 24, 2023

Respectfully submitted,

DEFENDANTS
JOHNSON & JOHNSON and DEPUY SYNTHES
SALES, INC.

By their attorneys,


*/s/ Mark D. Seltzer*
Mark D. Seltzer, Esq.
(BBO No. 556341)
Hannah R. Bornstein, Esq.
(BBO No. 670433)
NIXON PEABODY LLP
53 State Street
Boston, MA  02109-2835
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
Email: mseltzer@nixonpeabody.com

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 24, 2023, I electronically filed the foregoing document with the United States District Court for the District of Massachusetts by using the CM/ECF system.  I certify that the parties or their counsel of record registered as ECF Filers will be served by the CM/ECF system:

<u>/s/ Mark D. Seltzer</u>