IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF MASSACHUSETTS *ex rel.* JOHN DOE,<br><br>                    Plaintiffs,<br><br><br>                    v.<br><br>JOHNSON & JOHNSON, DEPUY SYNTHES, INC., and DEPUY SYNTHES SALES, INC.<br><br>                    Defendants. | No. 17-cv-11502-DJC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION TO DISMISS THE PROPOSED SECOND AMENDED COMPLAINT OR, IN
THE ALTERNATIVE, TO STRIKE CERTAIN ALLEGATIONS FROM THE
<u>PROPOSED SECOND AMENDED COMPLAINT</u>**

## <u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY...................................................................................................3

ARGUMENT .....................................................................................................................5

    I.   Counts One, Two, Four, Five, Six, and Seven Do Not Satisfy Rule 12(b)(6)'s Pleading
       Requirements ...........................................................................................................5

         a.  Legal Standard .............................................................................................5

         b.  Plaintiff Fails to State a Claim for FCA Retaliation (Count One)
            as He Pleads Explanations for Defendants' Alleged Conduct that
            Demonstrate that His Protected Conduct was Not the "But-For"
            Reason for the Alleged Retaliation ..........................................................5

         c.  Plaintiff Fails to State a Claim for MFCA Retaliation (Count Two)......................8

         d.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant of
            Good Faith and Fair Dealing (Count Four)...........................................9

         e.  Plaintiff Fails to State a Claim for Breach of Contract (Count Five) ..................11

         f.   Counts Six and Seven Fail to State a Claim for IIED and NIED .........................13

    II.  Counts Three and Four are Preempted by Plaintiff's FCA and MFCA
       Retaliation Claims (Counts One and Two).........................................................14

    III. Plaintiff's IIED and NIED Claims are Barred by the Massachusetts Worker's
       Compensation Act.................................................................................................16

    IV. In the Alternative, This Court Should Strike the Previously-Dismissed Allegations
       and Those Related to Knaus's Death ................................................................18

         a.   Plaintiff's Inappropriately Repled Allegations Should be Stricken.....................18

         b.  Plaintiff's Knaus Allegations are Impertinent, Immaterial, and Scandalous.........19

    CONCLUSION...................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
  583 N.E.2d 806 (Mass. 1991) .................................................................................9

*Armstrong v. Arcanum Grp. Inc.*,
  No. 16-CV-1015-MSK-CBS, 2017 WL 4236315 (D. Colo. Sept. 25, 2017),
  *aff'd sub nom. Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283 (10th Cir.
  2018) .......................................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5, 13

*Chin v. Garda CL New Eng., Inc.*,
  No. 15-CV-13110-TSH, 2017 WL 5771464 (D. Mass. Aug. 16, 2017) ................14

*United States ex rel. Cody v. ManTech Int'l, Corp.*,
  746 Fed. App'x 166 (4th Cir. 2018) ........................................................................6

*Connolly v. Woburn Pub. Sch.*,
  No. 22-10695-FDS, 2023 WL 2333500 (D. Mass. Mar. 2, 2023)....................13, 14

*Croteau v. MiTek Inc.*,
  No. 19-CV-12171-ADB, 2020 WL 4673532 (D. Mass. Aug. 12, 2020)................17

*Dexter v. Dealogic, LLC*,
  390 F. Supp. 3d 233 (D. Mass. 2019) ...................................................................10

*DiFiore v. CSL Behring, LLC*,
  879 F.3d 71 (3rd Cir. 2018) ...................................................................................6

*Dineen v. Dorchester House Multi-Service Ctr.*,
  No. 13-12200-LTS, 2014 WL 458188 (D. Mass. Feb. 3, 2014)............................15

*Doyle v. Hasbro, Inc.*,
  103 F.3d 186 (1st Cir. 1996)..................................................................................13

*Edwards v. Granite Techs., LLC*,
  No. 19-CV-12330-ADB, 2020 WL 3577911 (D. Mass. July 1, 2020)...................17

*Elliott-Lewis v. Abbott Labs., Inc.*,
  411 F. Supp. 3d 195 (D. Mass. 2019) .....................................................................7

*Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.*,
   450 F. Supp. 3d 20 (D. Mass. 2020) ...................................................................................9

*Gauthier v. United States*,
   No. 4:10-40116, 2011 WL 3902770 (D. Mass. Sept. 2, 2011) ...............................................20

*Grant v. Target Corp.*,
   126 F. Supp. 3d 183 (D. Mass. 2015) .................................................................................10

*Green v. Wyman-Gordon Co.*,
   664 N.E.2d 808 (Mass. 1996) ............................................................................................17

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) ............................................................................................................6

*Guilfoile v. Shields Pharmacy, LLC*,
   No. 16-cv-10652, 2021 WL 4459515 (D. Mass. Sept. 29, 2021) (Casper, J.)......................16

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
   95 F. Supp. 3d 240 (D. Mass. 2015), *aff'd sub nom. Hagerty ex rel. United*
   *States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016) ..........................................................9

*Harrison v. NetCentric Corp.*,
   744 N.E.2d 622 (Mass. 2001) ............................................................................................10

*Hogan v. Teamsters Local 170*,
   495 F. Supp. 3d 52 (D. Mass. 2020) ...................................................................................11

*United States ex rel. Hood v. Satory Global, Inc.*,
   946 F. Supp. 2d 69 (D.D.C. 2013) .....................................................................................16

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004) ................................................................................................6

*United States ex rel. Karvelas v. Tufts Shared Servs.*,
   433 F. Supp. 3d 174 (D. Mass. 2019) ............................................................................8, 15

*King v. Driscoll*,
   638 N.E.2d 488 (Mass. 1994) ............................................................................................15

*United States ex rel. King v. Solvay Pharm., Inc.*,
   871 F.3d 318 (5th Cir. 2017) ................................................................................................6

*Lestage v. Coloplast Corp.*,
   982 F.3d 37 (1st Cir. 2020) ..................................................................................................6

*Lockwood v. Madeiros*,
   No. 4:18-CV-40143-DHH, 2018 WL 4087938 (D. Mass. Aug. 27, 2018) ............................14

*Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*,
   No. 20-10565-FDS, 2021 WL 231298 (D. Mass. Jan. 22, 2021) ................................11, 12, 13

*McLeod v. Fessenden Sch.*,
   No. 21-10807-FDS, 2022 WL 3446011 (D. Mass. Aug. 17, 2022)........................................20

*Morales-Vallellanes v. Potter*,
   605 F.3d 27 (1st Cir. 2010)...................................................................................................8

*Nesbitt v. Candler Cnty.*,
   945 F.3d 1355 (11th Cir. 2020) ...........................................................................................6

*O'Connor v. Jordan Hosp.*,
   No. 10-11416-MBB, 2012 WL 1802308 (D. Mass. May 16, 2012).......................................17

*Robert Reiser & Co. v. Scriven*,
   130 F. Supp. 3d 488 (D. Mass. 2015) ...................................................................................9

*Sawyer v. Kindred Healthcare, Inc.*,
   186 F. Supp. 3d 118 (D. Mass. 2016), *aff'd*, 16-1674, 2017 WL 11686099 (1st
   Cir. July 31, 2017) ..............................................................................................................15

*Sheffield v. City of Bos.*,
   319 F.R.D. 52 (D. Mass. 2016).............................................................................................18

*Shepard v. Egan*,
   767 F. Supp. 1158 (D. Mass. 1990) .....................................................................................18

*Sheppard v. 265 Essex St. Operating Co., LLC*,
   299 F. Supp. 3d 278 (D. Mass. 2018) ...................................................................................8

*Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*,
   533 N.E.2d 1368 (Mass. 1989) ...........................................................................................15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013)............................................................................................................6

*Vonachen v. Comput. Assocs. Int'l, Inc.*,
   524 F. Supp. 2d 129 (D. Mass. 2007) ..................................................................................9

*Wong v. Resolve Tech.*,
   No. 10-11642-DJC, 2011 WL 3157198 (D. Mass. July 25, 2011) (Casper, J.)...........10, 11, 16

**Statutes**

31 U.S.C. § 3730(h) ...................................................................................................................4, 5

Mass. Gen. Laws ch. 12, § 5J ....................................................................................................4, 8

Mass. Gen. Laws ch. 149, § 187 ................................................................................4

Mass. Gen. Laws ch. 152, § 24 ................................................................................16

**Other Authorities**

Wright & Miller, 5C Fed. Prac. & Proc. Civ., § 1382 (3d ed.)................................18, 20

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 5

Fed. R. Civ. P. 12(f) ..............................................................................................18

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Johnson & Johnson and DePuy Synthes Sales, Inc. (collectively, "Defendants"),[1] respectfully submit this memorandum of law in support of the motion to dismiss the proposed second amended complaint ("PSAC," Dkt. 91-1). The PSAC should be dismissed because it fails to state a claim and contains common law claims that are preempted by other statutory remedies. The PSAC also contains immaterial, impertinent, and scandalous statements that, in the alternative, should be stricken from the pleading.

This suit is nothing more than an employment retaliation dispute. In August 2017, Plaintiff brought this action, alleging various violations of the False Claims Act ("FCA") and Anti-Kickback Statute ("AKS"). Nearly six years later, Defendants have resolved, through a January 2023 civil settlement agreement (the "Settlement Agreement"), the underlying FCA and AKS allegations with the United States Attorney's Office for the District of Massachusetts, the United States Department of Justice, and the Massachusetts Attorney General's Office (collectively, the "Government"), without admitting to any legal liability under the FCA and AKS. This Settlement Agreement resulted in the release and dismissal of Plaintiff's causes of action related to the alleged FCA and AKS claims. Plaintiff has since dismissed another cause of action, (Dkt. 90), while the PSAC adds two more, PSAC ¶¶ 80–88; all counts in the PSAC arise from Defendants' alleged retaliation against and termination of Plaintiff. Each of these claims fails and should be dismissed.

Plaintiff's claims suffer from inadequate pleading, as Plaintiff fails to plead allegations sufficient to establish the elements of the causes of action. Plaintiff's statutory retaliation claims, Counts One and Two under the FCA and the Massachusetts False Claims Act ("MFCA"), should

---

[1] Plaintiff's FAC originally included DePuy Synthes, Inc., as a defendant. Plaintiff voluntarily dismissed DePuy Synthes, Inc., on March 3, 2023. (Dkt. 89.)

1

be dismissed because Plaintiff fails to allege a "but-for" causal link between his protected conduct and the alleged retaliation. His attempt to do so is unsuccessful because the PSAC also pleads alternative explanations for the alleged retaliatory conduct. Plaintiff similarly fails to state a common law claim for breach of the implied covenant of good faith and fair dealing (Count Four) because he does not allege that Defendants terminated him to avoid paying him. Plaintiff's breach of contract claim (Count Five) is devoid of the basic information needed to establish the alleged existence, exercise, and breach of the alleged stock option and incentive agreement and, accordingly, should be dismissed. Finally, Plaintiff's two new claims, for intentional infliction of emotional distress ("IIED") (Count Six) and negligent infliction of emotional distress ("NIED") (Count Seven), fail to allege sufficiently outrageous conduct or the existence of a breached duty that Defendants owed Plaintiff.

Moreover, Plaintiff's two public policy claims—wrongful termination in violation of public policy (Count Three) and breach of the implied covenant of good faith and fair dealing (Count Four)—are based on the same alleged conduct, seek the same remedies, and vindicate the same public policy interests as his statutory FCA and MFCA retaliation claims, and are therefore preempted and should be dismissed. His IIED (Count Six) and NIED (Count Seven) claims are similarly preempted by a statutory remedy: the Massachusetts Worker's Compensation Act.

Plaintiff also inexplicably repleads in the PSAC allegations that have been dismissed with prejudice and that he has explicitly released. These references are irrelevant and immaterial to the claims in the PSAC and should be stricken if the PSAC survives. Plaintiff further makes reference to his regional sales manager's death in two places in his PSAC, which he alleges occurred within days of reporting his concerns to the Government. These references are immaterial, impertinent, and scandalous, and only serve to impugn his supervisor's character and to improperly suggest

2

that Defendants knew or should have known about the circumstances of his death and/or that his death was somehow related to the conduct at issue. Plaintiff makes no allegation that his regional sales manager was involved in the alleged retaliation he suffered and, should his PSAC survive this motion, these wholly inappropriate and scandalous references also should be stricken.

Because of these legal deficiencies in each of Plaintiff's claims, the Court should dismiss the PSAC in its entirety and enter judgment in favor of Defendants. In the alternative, the Court should strike Plaintiff's previously dismissed, unnecessarily and improperly repled allegations, and his unnecessary and improper references to his regional sales manager's death.

## PROCEDURAL HISTORY

Plaintiff filed his first *qui tam* complaint with this Court in August 2017, primarily raising claims against Defendants under the FCA and AKS. (Dkt. 2.) Plaintiff amended his complaint in March 2018. (Dkt. 13.)

In September 2022—after more than five years of investigation—the Government intervened against DePuy Synthes, Inc., and DePuy Synthes Sales, Inc., as to FAC Count Three, and declined to intervene with respect to all other allegations. (Dkt. 62.) In January 2023, the Government filed notice with this Court that the parties had executed a settlement agreement. (Dkt. 70.) The complaints were unsealed on January 20, 2023. (Dkt. 71.)

On January 27, 2023, the Court granted the Government's and the Plaintiff's Joint Notice of Dismissal as to all claims, aside from claims arising from the Plaintiff's retaliation allegations in paragraphs 68 through 90 of the FAC. (Dkt. 72, 73.) Importantly, with regard to Plaintiff, the dismissal was with prejudice. (Dkt. 73.)

On March 3, 2023, Plaintiff moved to voluntarily dismiss DePuy Synthes, Inc., as a defendant, (Dkt. 89), and, in a separate motion, to voluntarily dismiss a claim of retaliation against

health care providers, Mass. Gen. Laws ch. 149, § 187, against all Defendants, (Dkt. 90). He also moved for leave to file a second amended complaint. (Dkt. 91.) Pursuant to the Court's February 14, 2023 scheduling order, (Dkt. 84), Defendants filed both a motion to dismiss the FAC, (Dkt. 96), and an opposition to Plaintiff's motion for leave to file a second amended complaint, (Dkt. 98), on March 24, 2023. Defendants now file this motion to dismiss the PSAC, to be considered only if the Court grants Plaintiff's motion for leave to file a second amended complaint, thus making the PSAC the operative complaint.

The PSAC contains seven counts:

- Count One alleges that Defendants retaliated against Plaintiff under 31 U.S.C. § 3730(h) of the FCA because of his reporting potential violations of the FCA to the Government, PSAC ¶¶ 61–64;

- Count Two alleges that Defendants retaliated against Plaintiff under the Massachusetts analog to the FCA, Mass. Gen. Laws ch. 12, § 5J, PSAC ¶¶ 65–68;

- Count Three alleges that Defendants wrongfully terminated Plaintiff's employment in violation of public policy, *id.* ¶¶ 69–71;

- Count Four alleges that Defendants breached the implied covenant of good faith and fair dealing by retaliating against Plaintiff for reporting unlawful activity to Defendants and the Government, *id.* ¶¶ 72–76;

- Count Five alleges that Defendants breached a contract with Plaintiff by preventing him from exercising his rights under a "Stock Option and Incentive Plan," *id.* ¶¶ 77–79;

- Count Six alleges that Defendants intentionally caused Plaintiff emotional distress, *id.* ¶¶ 80–83; and

- Count Seven alleges that Defendants negligently caused Plaintiff emotional distress, *id.* ¶¶ 84–88.

Defendants now file their motion to dismiss on the grounds that Counts One, Two, Four, Five, Six, and Seven fail to state a viable cause of action, and Counts Three, Four, Six, and Seven are preempted under Massachusetts law. All claims fail as a matter of law and must be dismissed.

**ARGUMENT**

I. **Counts One, Two, Four, Five, Six, and Seven Do Not Satisfy Rule 12(b)(6)'s Pleading Requirements**

a. **Legal Standard**

A complaint cannot survive a motion to dismiss under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept the alleged facts as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and cannot state a viable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

b. **Plaintiff Fails to State a Claim for FCA Retaliation (Count One) as He Pleads Explanations for Defendants' Alleged Conduct that Demonstrate that His Protected Conduct was Not the "But-For" Reason for the Alleged Retaliation**

In Count One, Plaintiff alleges that Defendants retaliated against him and ultimately fired him on account of his protected activity in violation of 31 U.S.C. § 3730(h). PSAC ¶ 63. Under this provision of the False Claims Act, an employee is entitled to relief if he is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). Plaintiff fails to sufficiently plead a violation of this provision.

The First Circuit has elucidated the following elements that must be pled in order to state a claim under 31 U.S.C. § 3730(h): "To prevail on a False Claims Act retaliation claim, a plaintiff must show that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.* (*Karvelas*), 360 F.3d 220, 235 (1st Cir. 2004). In the First Circuit, courts apply a "but-for" standard to the third (the causation) prong of this analysis. *Lestage v. Coloplast Corp.*, 982 F.3d 37, 41 (1st Cir. 2020).[2] This standard requires more of a causal connection than simply alleging that the plaintiff's protected conduct was a "motivating factor" in the employer's allegedly retaliatory conduct.[3] *See Armstrong v. Arcanum Grp. Inc.*, No. 16-CV-1015-MSK-CBS, 2017 WL 4236315, at *3 (D. Colo. Sept. 25, 2017) ("[T]he statutory phrase 'because of' connotes a more stringent causal connection than 'motivating factor' does."), *aff'd sub nom. Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283 (10th Cir. 2018).

Plaintiff's PSAC fails to meet the "but-for" causation standard and is self-defeating, as Plaintiff's new allegations contain other factors that account for his alleged termination. While he claims that any ground besides retaliation for terminating him was pretext, PSAC ¶ 63, Plaintiff himself alleges a non-pretextual reason for his alleged termination in the PSAC: his short-term disability leave ended and he was never approved for long-term disability leave, *id.* ¶¶ 46–47; *see*

---

[2] The First Circuit joined several other Circuit Courts of Appeal and District Courts in applying a "but-for" causation standard in FCA retaliation cases in light of the Supreme Court's recent decisions in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) and *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350–52 (2013) interpreting the "because of" language in analogous statutes. *See, e.g., Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1359–60 (11th Cir. 2020); *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76–78 (3rd Cir. 2018); *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 Fed. App'x 166, 177 (4th Cir. 2018); *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017).

[3] Note that in *Karvelas*, the First Circuit affirmed the dismissal of the relator's FCA retaliation claim under the "substantial motivating factor" standard. *See Karvelas*, 360 F.3d at 239. The First Circuit abrogated the "motivating factor" test in *Karvelas* in its opinion in *Lestage*. *Lestage*, 982 F.3d at 46.

*also id.* ¶ 53 (alleging that he was terminated after the expiration of his short-term disability leave).[4]
Plaintiff does not allege that he attempted to return to work and was denied. Failing to return to
work after the end of a leave of absence is a recognized and sufficient justification for termination.
*See Elliott-Lewis v. Abbott Labs., Inc.*, 411 F. Supp. 3d 195, 210 (D. Mass. 2019) (finding that "no
reasonable jury could conclude that Plaintiff's accusations of wrongdoing were the cause of her
termination" where plaintiff "did not return to work after her approved leave of absence ended or
submit additional medical documentation to justify an extension"). Plaintiff's *own pleading*
defeats the "but-for" causation standard.

 Plaintiff's other, non-termination retaliation allegations also fail to state a claim. Like his
termination claim, Plaintiff attempts to allege that Defendants' demand of his Company-owned
devices for forensic imaging somehow constituted illegal retaliation, PSAC ¶ 51, but again pleads
another justification that defeats the "but-for" causation standard and thus his claim: Defendants
had received a subpoena from the Government and needed to collect and review certain
information on his devices to respond to it, *id.* ¶¶ 41, 51. And Plaintiff's remaining non-termination
retaliation allegations are not pled against Defendants. He pleads threats by the Boston Medical
Center ("BMC"), *id.* ¶¶ 38, 42, a lack of work support from superiors and colleagues, *id.* ¶ 43, and
threats and harassment primarily by Matt Capobianco ("Capobianco") and by other unnamed
individuals, *id.* ¶ 48. But the BMC, the unnamed superiors and colleagues, the unnamed threateners
and harassers, and Capobianco are not parties to this action, and nowhere in the PSAC does
Plaintiff allege that Defendants somehow are or should be liable for their alleged conduct. Further,
none of Plaintiff's non-termination retaliation allegations even constitute adverse employment

---

[4] Defendants do not concede that Plaintiff was terminated, but that factual question is not before the Court in connection with this motion.

actions. *See Morales-Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) ("An adverse employment action is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." (citation omitted) (internal quotation marks and brackets omitted)). These allegations, then, cannot support a retaliation claim against Defendants.

### c.   Plaintiff Fails to State a Claim for MFCA Retaliation (Count Two)

In Count Two, Plaintiff restates his retaliation claim in Count One, and alleges that Defendants violated Mass. Gen. Laws ch. 12, § 5J, the MFCA. Under the MFCA, "[t]o prove a retaliatory termination, a plaintiff must demonstrate that (1) she engaged in conduct protected by the MFCA; (2) her employer knew that she was engaged in that conduct; and (3) her employer took an adverse employment action against her because of the protected conduct." *Sheppard v. 265 Essex St. Operating Co., LLC*, 299 F. Supp. 3d 278, 284 (D. Mass. 2018). Plaintiff alleges, as he does in Count One, that Defendants retaliated against him "and ultimately fired him, because of his lawful 'whistleblowing' conduct," and that Defendants' actions constitute a violation of the MFCA. PSAC ¶ 67. Plaintiff's MFCA claim therefore mirrors his FCA retaliation claim.

In evaluating MFCA retaliation claims, courts look to its federal counterpart for guidance. "Case law construing the MFCA's provisions is sparse. 'However, the MFCA was modeled on the similarly worded [FCA]'; thus, Massachusetts courts 'look for guidance to cases and treatises interpreting the [f]ederal [FCA].'" *United States ex rel. Karvelas v. Tufts Shared Servs.* (*Tufts*), 433 F. Supp. 3d 174, 181 (D. Mass. 2019) (alterations in original) (citation omitted) (quoting *Scannell v. Att'y Gen.*, 872 N.E.2d 1136, 1138 n.4 (Mass. App. Ct. 2007)).

Plaintiff's MFCA retaliation claim allegations involve the same core facts, theories of liability, and alleged damages as his FCA retaliation claim. As such, the Court must dismiss

Plaintiff's MFCA retaliation claim, consistent with its dismissal of his FCA retaliation cause of action. *See United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 273–74 (D. Mass. 2015) (denying dismissal of a federal FCA retaliation claim and then denying dismissal of an MFCA retaliation claim "[b]ecause state acts such as the MFCA are construed consistently with the federal FCA"), *aff'd sub nom. Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016). Because Plaintiff fails to state a claim under the FCA, so too does he fail to state a claim under the MFCA.

> ### d.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Four)

Plaintiff alleges in Count Four that Defendants breached the implied covenant of good faith and fair dealing after he "reported what he reasonably believed to be unlawful activity." PSAC ¶¶ 72–76. In Massachusetts, "a covenant of good faith and fair dealing is implied in every contract." *Robert Reiser & Co. v. Scriven*, 130 F. Supp. 3d 488, 495 (D. Mass. 2015). The purpose of the implied covenant is to ensure "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 820 (Mass. 1991) (quoting *Druker v. Roland Wm. Jutras Assocs., Inc.*, 348 N.E.2d 763, 765 (Mass. 1976)). "To advance a claim for breach of the covenant, a Plaintiff must establish four elements: (1) status as an at-will employee; (2) termination of employment; (3) termination without 'good cause' or in 'bad faith'; and (4) termination with the purpose of depriving an employee of benefits to which he is entitled." *Vonachen v. Comput. Assocs. Int'l, Inc.*, 524 F. Supp. 2d 129, 137 (D. Mass. 2007).

In considering whether a claim for breach of the implied covenant of good faith and fair dealing is viable, courts examine whether an employee was terminated in bad faith, and whether he was thereby deprived of a benefit to which he was entitled. *See Fine v. Guardian Life Ins. Co.*

9

*of Am. & Park Ave. Sec.*, 450 F. Supp. 3d 20, 29, 33 (D. Mass. 2020); *Harrison v. NetCentric Corp.*, 744 N.E.2d 622, 629 (Mass. 2001) (stating that the terminated employee may seek "unpaid compensation if the employee [was] terminated in bad faith and the compensation is clearly connected to work already performed").

As such, the only remedy available to a plaintiff who was wrongfully terminated in violation of the implied covenant is damages to "compensate an employee for past services" and to "deny the employer any readily definable, financial windfall resulting from the breach." *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 190 (D. Mass. 2015) (internal quotation marks omitted). In other words, courts have consistently found at the motion to dismiss stage that plaintiffs cannot recover damages for emotional distress, reputational harm, or prospective lost wages. *See, e.g., Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 244–45 (D. Mass. 2019) (dismissing claim where plaintiff sought prospective lost wages, benefits, and bonuses); *Grant*, 126 F. Supp. 3d at 190 (dismissing claim where damages sought were not based on past services); *Wong v. Resolve Tech.*, No. 10-11642-DJC, 2011 WL 3157198, at *6–7 (D. Mass. July 25, 2011) (Casper, J.) (granting motion to dismiss where plaintiff did not plead that her employer "terminated the her [sic] employment to avoid payment of past services or benefits earned but not received").

Nowhere in the PSAC does Plaintiff allege that the purpose of his alleged termination was to deprive him of benefits to which he is entitled. Rather, Plaintiff alleges, even in pleading this count, that the purpose of his alleged termination was retaliation for reporting what he believed to be unlawful activity. PSAC ¶ 75. This failure is fatal. *Wong*, 2011 WL 3157198, at *6 (Casper, J.) ("Wong makes no allegation in the complaint [that Resolve terminated her employment to avoid payment of past services or benefits earned but not received] and the analysis, accordingly, could stop there."). Further, while Plaintiff alleges that he "has suffered economic harm, loss of income

and future earnings, lost benefits, and emotional distress," PSAC ¶ 76, he does not plead that he was denied compensation for past services or that Defendants received a financial windfall from his termination. Plaintiff's allegations that he was never paid a Leadership Award he received in July 2017 or a prospective 0.5% commission in October 2017, PSAC ¶ 54, are insufficient, as Plaintiff makes no allegation that these constitute compensation for past services, *see Wong*, 2011 WL 3157198, at *7 (Casper, J.) ("Wong has not pleaded, nor could she, that she earned the bonus and legitimately expected to receive one."). Even if Plaintiff did plead such allegations, he still fails to allege that he was terminated so Defendants could avoid paying that compensation. Given the flaws in Plaintiff's pleading of his claim of breach of the implied covenant of good faith and fair dealing, it fails to state a claim and must be dismissed.

### e.   Plaintiff Fails to State a Claim for Breach of Contract (Count Five)

In Count Five, Plaintiff alleges that Defendants breached a stock option and incentive contract. PSAC ¶¶ 77–79. Under Massachusetts law, to prevail on a breach of contract claim a plaintiff must show that: "(1) a valid contract between the parties existed; (2) the plaintiff was ready, willing, and able to perform; (3) the defendant breached that contract; and (4) the defendant's breach caused the plaintiff damage." *Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*, No. 20-10565-FDS, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must do more than allege, in conclusory fashion, that the defendant breached the contract," and must identify "who did what to whom, when, where, and why" and explain "what obligations were imposed on each of the parties." *Hogan v. Teamsters Local 170*, 495 F. Supp. 3d 52, 58 (D. Mass. 2020) (quoting *Alenci v. Hometown Am. Mgmt., LLC*, No. 19-12244-LTS, 2020 WL 2515872, at *4 (D. Mass. May 15, 2020)).

Plaintiff offers only the following allegations for his breach of contract claim: "Defendants and Plaintiff are parties to a contract entitled the 'Stock Option and Incentive Plan' (the 'Plan'). Under the terms of the Plan, Plaintiff's outstanding stock options should have become fully exercisable. Defendants prevented Plaintiff from exercising his rights under the Plan and thereby breached the contract between them." PSAC ¶ 78. Plaintiff does not make any contentions related to this agreement in his factual allegations; indeed, Plaintiff offers no allegations as to the details of the Plan, the outstanding stock allegedly exercisable by Plaintiff, Plaintiff's alleged attempt to exercise the stock options, or how Defendants allegedly prevented Plaintiff from exercising his rights under the contract.

*Madden* is instructive. In that case, the plaintiff alleged that she had been awarded stock options by her employer, and that her employer breached their agreement by not providing documentation of her exercise of the stock options. *Madden*, 2021 WL 231298, at *5. The Court granted the defendant's motion to dismiss, finding that the allegations in the plaintiff's complaint were "wholly inadequate":

> ***There is nothing else in the complaint about the alleged options contract, or the obligations of either party, including whether the options had vested, in whole or in part, at the time she exercised (or attempted to exercise) them.*** It does not allege what, if any, obligations were created concerning providing 'documentation.' ***It does not allege when the contract was created, or whether it was oral or written.*** If there is a written contract, ***it is not described or quoted, and it is not attached to the complaint. Nor are there any specifics as to the alleged breach, such as when she exercised or attempted to exercise the options, and what happened as a result.*** The complaint is therefore ***missing the most basic information*** as to the terms of the alleged contract and the nature of the breach.
> […]
> Again, a claim for breach of contract must set forth basic information as to the nature and terms of the alleged contract and the circumstances of the alleged breach. Here, ***the allegations in the complaint as to the existence of a contract concerning the exercise of stock options, and defendant's breach of that contract, are wholly inadequate to satisfy those requirements***.

*Id.* at *5–6 (emphasis added).

As in *Madden*, Plaintiff's breach of contract claim is "wholly inadequate." He fails to plead the "most basic information" as to the contract and the alleged breach, including when the contract was created and in what form, the parties' obligations, whether the stock options had vested, when he attempted to exercise the stock options, or the nature and circumstances of Defendants' alleged breach. A mere conclusory recitation of the elements of the claim with no additional information or detail lacks the requisite substantial certainty for a valid breach of contract claim, and this cause of action must be dismissed. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) ("Conclusory statements" that defendant "failed to meet their contractual requirement . . . are insufficient to satisfy the pleading requirements." (internal quotation marks omitted))

### f.   Counts Six and Seven Fail to State a Claim for IIED and NIED

In Counts Six and Seven, Plaintiff alleges that Defendants' conduct caused him "severe emotional distress." PSAC ¶¶ 80–88. An IIED claim in Massachusetts "requires proof '(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress.'" *Connolly v. Woburn Pub. Sch.*, No. 22-10695-FDS, 2023 WL 2333500, at *15 (D. Mass. Mar. 2, 2023) (quoting *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994)). The PSAC does not allege that Defendants committed anything close to the "extreme and outrageous" conduct necessary to support an IIED claim.[5] That "standard of proof . . . is very high," and

---

[5] The PSAC alleges "extreme and outrageous" conduct in a conclusory fashion, PSAC ¶¶ 81, 85, which is not sufficient under Fed. R. Civ. P. 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)).

> **"[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."** Mere embarrassment, or sharp questioning by a supervisor, does not qualify as extreme and outrageous conduct that is beyond all possible bounds of decency. Similarly, mere expressions of anger or frustration by supervisors, without more, do not qualify. And even insults and threats are normally insufficient.

*Id.* at *15 (emphasis added) (citations omitted) (quoting *Foley v. Polaroid Corp.*, 508 N.E.2d 72, 82 (Mass. 1986)). The allegations in Plaintiff's PSAC regarding Defendants' alleged conduct do not come close to meeting that "very high" standard. Without an allegation of facts constituting extreme and outrageous conduct, Plaintiff's IIED claim fails and must be dismissed.

An NIED claim under Massachusetts law requires "1) negligence, 2) emotional distress, 3) causation, 4) physical harm manifested by objective symptomatology, and 5) that a reasonable person would have suffered emotional distress under the circumstances." *Chin v. Garda CL New Eng., Inc.*, No. 15-CV-13110-TSH, 2017 WL 5771464, at *10 (D. Mass. Aug. 16, 2017) (quoting *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 105 (D. Mass. 2006)). While Plaintiff's NIED claim attempts to parrot the elements of the cause of action, it fails to sufficiently allege negligence. *See* PSAC ¶¶ 84–88. "As with any sort of negligence, negligence in the context of an emotional distress claim requires that the defendant have owed plaintiff a duty of care that was breached in some way." *Lockwood v. Madeiros*, No. 4:18-CV-40143-DHH, 2018 WL 4087938, at *8 (D. Mass. Aug. 27, 2018) (quoting *Delmonte v. Laidlaw Envtl. Servs., Inc.*, 46 F. Supp. 2d 89, 96 (D. Mass. 1999)). The PSAC does not allege that Defendants owed Plaintiff any duty or that they breached that duty, let alone explain how that breach allegedly caused Plaintiff's alleged injuries. Without those necessary allegations, Plaintiff's NIED claim fails and must be dismissed.

## II.     Counts Three and Four are Preempted by Plaintiff's FCA and MFCA Retaliation Claims (Counts One and Two)

14

In Count Three, Plaintiff alleges that Defendants wrongfully terminated him in violation of public policy. PSAC ¶¶ 69–71. "As an exception to the general rule that an employer may terminate an at-will employee at any time with or without cause, [Massachusetts courts] have recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy." *Tufts*, 433 F. Supp. 3d at 185 (second alteration in original) (quoting *King v. Driscoll*, 638 N.E.2d 488, 492 (Mass. 1994)). This exception is available where a plaintiff is terminated for "asserting a legally guaranteed right[,] . . . for doing what the law requires[,] . . . or for refusing to do that which the law forbids." *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 533 N.E.2d 1368, 1371 (Mass. 1989). This exception to the at-will employment doctrine is interpreted narrowly so as not to risk "convert[ing] the general rule . . . into a rule that requires just cause to terminate an at-will employee." *King*, 638 N.E.2d at 492 (second alteration in original) (quoting *Smith-Pfeffer*, 533 N.E.2d at 1371). Plaintiff alleges in Count Four that Defendants breached the implied covenant of good faith and fair dealing in retaliating against Plaintiff.[6] PSAC ¶¶ 72–76. Both of these claims are preempted by Plaintiff's FCA and MFCA retaliation claims and must be dismissed.

"[I]t is well-established that a plaintiff may not bring a common-law claim for termination in violation of public policy where the legislature has provided the plaintiff with a detailed statutory remedy." *Sawyer v. Kindred Healthcare, Inc.*, 186 F. Supp. 3d 118, 127 (D. Mass. 2016), *aff'd*, 16-1674, 2017 WL 11686099 (1st Cir. July 31, 2017). There is no question that Plaintiff's FCA and MFCA claims provide him with a "detailed statutory remedy." Plaintiff's public policy claims "not only invoke[] the same public policy established by the federal statute, [they] arise[] from the very acts giving rise to [his FCA and MFCA] claims." *Dineen v. Dorchester House Multi-*

---

[6] The legal standards governing this cause of action are discussed in Section I.d, *supra*.

*Service Ctr.*, No. 13-12200-LTS, 2014 WL 458188, at *4–5 (D. Mass. Feb. 3, 2014) (dismissing common law claim where plaintiff also pled FCA retaliation). This analysis applies equally to Plaintiff's claim of breach of the implied covenant of good faith and fair dealing. *See Wong*, 2011 WL 3157189, at *6–7 (Casper, J.) (finding that a common law remedy for breach of the covenant of good faith and fair dealing is only appropriate when there is no statutory scheme to vindicate the public policy). Such a finding here would be consistent with cases in this and other courts. *See, e.g., Guilfoile v. Shields Pharmacy, LLC*, No. 16-cv-10652, 2021 WL 4459515, at *7 (D. Mass. Sept. 29, 2021) (Casper, J.) ("A cause of action for wrongful termination in violation of public policy, however, is inapplicable where there is a comprehensive remedial statute . . . . Here, the FCA is the operative comprehensive remedial statute." (internal quotation marks omitted)); *United States ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 88–89 (D.D.C. 2013) (finding that an alleged breach of the FCA retaliation provisions forecloses availability of the public policy exception).

The FCA and MFCA provide Plaintiff with statutory remedies to address his retaliation allegations, and the same factual allegations underpin each of these claims: namely, that Plaintiff reported allegedly unlawful activity and/or refused to engage in that activity, and that Defendants allegedly retaliated against him as a result. PSAC ¶¶ 62–63, 66–67, 70, 74–75. There is no question that the FCA and MFCA preclude Plaintiff's public policy claims, and Counts Three and Four therefore must be dismissed.

## III.     Plaintiff's IIED and NIED Claims are Barred by the Massachusetts Worker's Compensation Act

Both of Plaintiff's emotional distress claims are barred by the exclusivity provision of the Massachusetts Worker's Compensation Act ("WCA"), Mass. Gen. Laws ch. 152, § 24, which "preempts common law claims that are compensable under the WCA 'unless the employee has

reserved his right' to bring a common law claim." *Edwards v. Granite Techs., LLC*, No. 19-CV-12330-ADB, 2020 WL 3577911, at *7 (D. Mass. July 1, 2020) (quoting *Choroszy v. Wentworth Inst. of Tech.*, 915 F. Supp. 446, 452 (D. Mass. 1996)). "The WCA exclusivity provision stops a common law tort claim when 1) the plaintiff is an employee, 2) the plaintiff's condition is shown to be a personal injury within the meaning of the WCA, and 3) the injury is shown to have arisen out of and in the course of employment." *Id.* (quoting *Luthy v. Proulx*, 464 F. Supp. 2d 69, 76–77 (D. Mass. 2006)). "Massachusetts courts construe this provision broadly, and the waiver covers intentional and negligent infliction of emotional distress," *Croteau v. MiTek Inc.*, No. 19-CV-12171-ADB, 2020 WL 4673532, at *3 (D. Mass. Aug. 12, 2020) (quoting *Andresen v. Diorio*, 349 F.3d 8, 16 (1st Cir. 2003)), including when the alleged emotional distress is inflicted by a co-employee, *see Green v. Wyman-Gordon Co.*, 664 N.E.2d 808, 813 (Mass. 1996), or is a result of termination, whether that termination is a bona fide personnel action or retaliation, *O'Connor v. Jordan Hosp.*, No. 10-11416-MBB, 2012 WL 1802308, at *12 (D. Mass. May 16, 2012). Further, "[a]n injury arises out of the [plaintiff's] employment if it arises out of the nature, conditions, obligations, or incidents of the employment; in other words, out of the employment looked at in any of its aspects"—including emotional injuries arising from actions like termination. *Edwards*, 2020 WL 3577911, at *8 (second alteration in original) (quoting *Doe v. Purity Supreme*, 664 N.E.2d 815, 819 (Mass. 1996)).

The PSAC does not allege (nor could it) that Plaintiff reserved his right to bring IIED and NIED claims outside of the WCA framework, and it does not allege that Plaintiff was not an employee at the time of his alleged emotional injuries. As discussed above, IIED and NIED claims are personal injuries within the meaning of the WCA, and the allegations in Plaintiff's PSAC tie his alleged emotional injuries to the course of his employment. *See* PSAC ¶¶ 35, 43–45, 59, 82,

86. Plaintiff's IIED and NIED claims are barred by the Massachusetts WCA and must be dismissed.

## IV.   In the Alternative, This Court Should Strike the Previously-Dismissed Allegations and Those Related to Knaus's Death

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While motions to strike are generally disfavored, "[t]he Court has broad discretion to strike comments which are not 'substantive elements of the cause of action.'" *Sheffield v. City of Bos.*, 319 F.R.D. 52, 54 (D. Mass. 2016) (quoting *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)). Immaterial statements are those that have "no essential or important relationship to the claim for relief or the defenses being pleaded," impertinent statements are those that "do not pertain, and are not necessary, to the issues in question," and scandalous statements are those "which improperly cast[] a derogatory light on someone." Wright & Miller, 5C Fed. Prac. & Proc. Civ., § 1382 (3d ed.). Plaintiff's PSAC contains immaterial, impertinent, and scandalous allegations, and the Court should exercise its discretion to strike such allegations.

### a.   Plaintiff's Inappropriately Repled Allegations Should be Stricken

The Settlement Agreement between Defendants, Plaintiff, and the Government—which Plaintiff himself signed—expressly dismisses *all claims* in the FAC—except for those arising from Plaintiff's employment retaliation allegations in paragraphs 68–90—and does so *with prejudice as to Plaintiff*, Settlement Agreement ¶¶ 7, 19, *available at* https://www.justice.gov/d9/2023-01/us_v_depuy_fca_-_settlement_agreement.pdf; the Court's dismissal order implements that portion of the Agreement, (Dkt. 73). As such, Plaintiff is prohibited from any further litigation of these claims. *Shepard v. Egan*, 767 F. Supp. 1158, 1165 (D. Mass. 1990) ("Dismissal of an action

with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." (quoting *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964))).

Yet the PSAC repleads allegations that were expressly dismissed. These allegations relate to Defendants' alleged payments to Dr. Tony Tannoury of money, products, and entertainment, to allegedly induce the use of Defendants' products in Dr. Tannoury's spine surgeries, and match those in the FAC. *Compare* PSAC ¶¶ 18–27, *with* FAC ¶¶ 55–67. Not only are these allegations inflammatory and unnecessary, but Defendants have, for many years, disclosed payments to Dr. Tannoury on the Open Payments website, as required by federal law—which Plaintiff himself acknowledged, PSAC ¶¶ 19–20 (referencing "reported payments"). Plaintiff cannot argue that these repled claims are needed to form the basis of his employment retaliation claims, as Plaintiff already has agreed—by signing the January 2023 Settlement Agreement—that these claims are dismissed with prejudice, are not part of his employment retaliation claims, and that Plaintiff releases Defendants from them. These allegations, then, are immaterial and impertinent to Plaintiff's claims in the PSAC, and Defendants should not be forced to litigate them after having reached an agreement to dismiss them. To prevent that, these allegations should be stricken.

### b.  Plaintiff's Knaus Allegations are Impertinent, Immaterial, and Scandalous

Plaintiff's PSAC contains allegations about former regional sales manager Erik Knaus ("Knaus"), now deceased, that are wholly unnecessary to Plaintiff's complaint but are impertinent, immaterial, and scandalous. *See* PSAC ¶¶ 40, 49(e). Plaintiff took the time in the PSAC to plead the alleged cause of Knaus's death, *id.* ¶ 40, to imply that Plaintiff knew something about it, *id.* ¶ 49, and to state that Defendants should have spoken to Plaintiff about it, *id.*, and by linking these allegations temporally to Plaintiff's report to the government, *id.* ¶ 36, Capobianco's interview by law enforcement officials, *id.* ¶ 39, and Capobianco's ban from the BMC, *id.* ¶ 38, Plaintiff appears

19

to suggest that the circumstances of Knaus's death are somehow connected to Plaintiff's protected conduct and/or subsequent actions by law enforcement officials.

Nowhere in his complaint does Plaintiff allege that Knaus had knowledge of Plaintiff's protected conduct or that Knaus retaliated against him. These allegations, then, are "not necessary" to the issues in question, have "no essential or important relationship to the claim for relief," and "improperly cast[] a derogatory light" on Knaus and are immaterial, impertinent, and scandalous, and should be stricken. *See* Wright & Miller, § 1382; *see also McLeod v. Fessenden Sch.*, No. 21-10807-FDS, 2022 WL 3446011, at *2 (D. Mass. Aug. 17, 2022) (striking "[a]llegations concerning the occupations, personal wealth, and private lives of [school] trustees" as "immaterial and impertinent" in a case alleging sexual abuse of a student by her teacher); *Gauthier v. United States*, No. 4:10-40116, 2011 WL 3902770, at *12 (D. Mass. Sept. 2, 2011) (striking portions of an affidavit that listed the names of people who worked at a construction site, one of whom was allegedly involved in an alleged rape, because they were "irrelevant allegations [that] threaten[ed] to cast a private individual in a derogatory light" by associating them with sexual misconduct without support). Given that Plaintiff makes no allegations connecting Knaus to Plaintiff's causes of action, Knaus's unavailability as a witness in this litigation, and the negative inferences and suggestions that stem from the framing of and reference to Knaus's death, there is no basis to include these inappropriate and scandalous allegations, and they should be stricken under Rule 12(f).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the PSAC. To the extent this action survives this motion, the Court should strike Paragraphs 18–27, 40, and 49(e) of the PSAC.

Dated: March 24, 2023

Respectfully submitted,

DEFENDANTS
JOHNSON & JOHNSON and DEPUY SYNTHES
SALES, INC.

By their attorneys,

*/s/ Mark D. Seltzer*
Mark D. Seltzer, Esq.
(BBO No. 556341)
Hannah R. Bornstein, Esq.
(BBO No. 670433)
NIXON PEABODY LLP
53 State Street
Boston, MA  02109-2835
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
Email: mseltzer@nixonpeabody.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 24, 2023, I electronically filed the foregoing document with the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that the parties or their counsel of record registered as ECF Filers will be served by the CM/ECF system.

*/s/ Mark D. Seltzer*