**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

ALEKSEJ GUSAKOVS,

*Plaintiff,*

v.

JOHNSON & JOHNSON and
DEPUY SYNTHES SALES, INC.,

*Defendants.*

---

Civil Action No.:
1:17–cv–11502–DJC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO REQUESTS FOR ADMISSIONS**

*It is difficult to get a man to understand something, when his salary depends on
his not understanding it.*

∼ Upton Sinclair, *I, Candidate for Governor – and How I Got Licked* (1935)

**INTRODUCTORY STATEMENT**

In this case, Plaintiff Alex Gusakovs asserts that Defendants Johnson & Johnson

and DePuy Synthes Sales, Inc. ("Defendants") wrongfully terminated his employment

*five years ago* in retaliation for his having blown the whistle to the Government about

Defendants' unlawful conduct (for which Defendants ultimately paid almost $10

million to the Government).  Plaintiff's employment termination therefore is a bedrock

factual issue in this case – especially given that half a decade later, Defendants

inexplicably claim that he was not terminated; rather, he supposedly is a "current

employee" who has been "out on unpaid leave" *for the last five years*.  (Defendants'

RFA Responses at 14-15; *see* Declaration of Charles F. Kester ISO Motion to Compel RFA Answers ("Kester Decl."), Ex. 2 (attaching copy), filed concurrently herewith.)

Defendants' novel legal position as to Plaintiff's employment status is, however, very much contradicted by numerous letters ***written on Johnson & Johnson letterhead*** that Defendants sent to him in 2018 wherein they informed him that he had, in fact, been terminated.  Accordingly, Plaintiff propounded Requests for Admission ("RFAs") simply asking Defendants to admit that they had sent those letters to him (and one to his wife).  And, Plaintiff attached the letters as exhibits to his RFAs so as to avoid any possible confusion and to facilitate Defendants' answers.

Despite having been provided with copies of those letters, Defendants refuse to admit that they sent them.  Nor do they deny having done so.  Instead, Defendants have responded by conclusorily asserting that they have conducted a "reasonable inquiry" for each RFA at issue and are unable to provide meaningful answers to them – *i.e.*, admissions, denials, or admissions-in-part/denials-in-part.

But Defendants' parroting of the "reasonable inquiry" language found in Rule 36 of the FRCP is not talismanic.  A "reasonable inquiry" must have indeed taken place. Yet, when Plaintiff's counsel met and conferred with Defendants' counsel prior to bringing this Motion, Defendants' counsel refused (when asked) to provide any information about the alleged "reasonable inquiry" that had been conducted.  (Kester Decl. ¶ 8.)  Furthermore, when Plaintiff's counsel offered to provide additional time for Defendants to supplement their non-answer responses, Defendants' counsel refused to

propose any future date certain by which Defendants would do so, nor even to guarantee that supplemental responses would be provided.  (*Id.*)

## PROCEDURAL AND FACTUAL HISTORY

### A.    Plaintiff's False Claims Act Case

On August 11, 2017, Plaintiff Aleksej Gusakovs brought this action (as Relator "John Doe") under seal on behalf of the United States of America and Massachusetts asserting, *inter alia*, various claims under the *qui tam* provisions of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.*, and the Massachusetts False Claims Act, Mass. Gen. Laws, Ch. 12, §§ 5A, *et seq.*  (Compl. – ECF Docket ("D.") 2.)  Plaintiff sought to recover monies wrongfully paid as a result of false claims caused by Defendant Johnson & Johnson ("J&J") and two entities wholly-owned by J&J ─ Defendants DePuy Synthes, Inc. (now dismissed) and DePuy Synthes Sales, Inc. ("DePuy Synthes Sales"). Plaintiff had learned of Defendants' unlawful conduct while working as a "Clinical Specialist" for Defendants J&J and DePuy Synthes Sales ("Defendants").

At the time he filed this case, Plaintiff was on short term disability leave, which had begun six weeks prior on June 28, 2017.  Plaintiff had been forced to go on disability leave because of the stress he was experiencing due to Defendants' dangerous and unlawful conduct.  (2d Am. Compl. (D. 107) ¶¶ 42-47.)

### B.    The January 30, 2018 Taxes Letter from Johnson & Johnson

Just about six months after this case was filed, Plaintiff received a letter dated January 30, 2018, from the "Johnson & Johnson, Employee Service Center."  The letter was on "Johnson & Johnson" letterhead, with the company's unmistakable (and likely

trademarked) red cursive lettering displayed prominently at the top of the page. (Jan. 30, 2018 J&J Letter attached as Ex. 2 to Plaintiff's RFAs; *see* Kester Decl., Ex. 1 (attaching Plaintiff's RFAs).)  Notably, the subheading of the letter indicated that it was directed to "***Former*** and Active US & Puerto Rico Employees."  (*Id.* (emphasis added).)  In the letter, J&J expressed concern about supposedly having advanced taxes on Plaintiff's behalf in 2017 that J&J would be "unable to recover in 2018 ***due to your termination***."  (*Id.* (emphasis added).)  This was the first time that Plaintiff learned that he had been fired.  (2d Am. Compl. (D. 107) ¶ 52.)

### C.    The First Amended Complaint

Believing that he had been terminated in retaliation for his whistleblowing activities, Plaintiff filed an Amended Complaint (D. 13) on March 29, 2018, to assert various personal claims arising from Defendants' unlawful retaliation against Plaintiff, including his wrongful termination.  (*See* D. 13 at ¶¶ 124-148.)

### D.    The April 19, 2018 COBRA Enrollment Letters from Johnson & Johnson

Several weeks later, Plaintiff received an 11-page letter dated April 19, 2018 from "Johnson & Johnson – Health, Benefits & Compensation."  Once again, the letter was on "Johnson & Johnson" letterhead, with the company's cursive logo appearing at the top of the first page.  (Apr. 19, 2018 J&J Letter attached as Ex. 4 to Plaintiff's RFAs; *see* Kester Decl., Ex. 1.)  The letter – entitled "Welfare Plan, Cobra Enrollment Notice" – advised Plaintiff of his right to COBRA health insurance coverage "[a]s a result of *your* ***Termination*** on **April 12, 2018**."  (*Id.* (emphasis added, but bolded date in original).)  That same day, J&J sent Plaintiff's wife, Daria Gusakova, an identical letter, except that

it began: "As a result of your or *your family member's Termination* on **April 12, 2018**."

(Apr. 19, 2018 J&J Letter attached as Ex. 3 to Plaintiff's RFAs (emphasis added, but

bolded date in original); *see* Kester Decl., Ex. 1.)

Plaintiff was confused why the April 19, 2018 letters stated a different

termination date than did the January 30, 2018 letter. But if the January letter was

vague as to the termination date, the April letters were crystal clear. Plaintiff had been

fired by Defendants not later than April 12, 2018. (2d Am. Compl. (D. 107) ¶ 56.)

E.      **The April 19, 2018 Pension Plan Letter from Johnson & Johnson**

Around the same time, if not the same day, Plaintiff received a second letter

dated April 19, 2018 from "Johnson & Johnson – Health, Benefits & Compensation."

Just like the others, the letter was also on "Johnson & Johnson" letterhead, with the

company's cursive logo appearing at the top of the page. (Apr. 19, 2018 J&J Letter

attached as Ex. 5 to Plaintiff's RFAs; *see* Kester Decl., Ex. 1.) This letter – entitled

"Pension Plan, Ineligibility Notice" – advised Plaintiff that he was ineligible for J&J

pension benefits because the duration of his employment was not long enough to meet

the vesting requirements. Significantly, the letter repeatedly referred to the fact that

Plaintiff's employment had previously ended:

> ***Due to your recent separation from Johnson & Johnson***, your records
> have been reviewed to determine if you are eligible to receive a pension
> benefit.
>
> Employees earn a benefit in the Plan beginning when they become a
> member of the Plan, but that benefit only becomes payable if you meet
> the Plan's vesting requirements ***prior to your separation date***. You are
> vested when:

- You have 5 or more years of Vesting Service, or
- You reach age 55 (or older) and have one year of service

Our records indicate that *you left Johnson & Johnson* prior to meeting either of these requirements.  As such you are not vested and not entitled to receive any pension benefit.

(*Id.* (emphases added).)

### F.    The January 2023 False Claims Act Settlement and Case Unsealing

For five-and-a-half years, the United States and Massachusetts (collectively, "the Government") investigated the FCA claims alleged by Plaintiff.  Based on the significant supporting evidence provided by Plaintiff and also gathered by the Government, Defendants J&J, DePuy Synthes, Inc., and DePuy Synthes Sales ultimately entered into a January 2023 settlement agreement with the Government and Plaintiff, whereby, *inter alia*, Defendants admitted responsibility for certain conduct, and they agreed to pay *$9,750,000* (plus interest) to the Government.  (Jan. 17, 2023 Notice of Settlement filed by the U.S. & Massachusetts (D. 70).)  Three days later, the Court unsealed the action.  (Jan. 20, 2023 Ct. Order (D. 71).)  And, one week later, the Court dismissed Plaintiff's *qui tam* FCA claims (because of the settlement), but allowed his personal claims (including his FCA retaliation claim) to proceed.  (Jan. 27, 2023 Ct. Order (D. 73).)

### G.    Defendants Belatedly Provide Plaintiff with W-2 Forms for 2019-2022

With the case unsealed and litigation proceeding forward, Plaintiff invoked his rights under Massachusetts employment law to request that Defendants provide him with a copy of his personnel file.  (Kester Decl. ¶ 3.)  In response, Defendants produced

two tranches of documents to Plaintiff in February 2023.  (*Id.* ¶ 4.)  The second batch of documents – provided on February 21, 2023 – consisted of W-2 forms for the tax years 2019 through 2022 that ostensibly had been issued to Plaintiff by "J&J Services, Inc., Agent for DePuy Synthes Sales, Inc."  (2019-2022 W-2 Forms from J&J Services, Inc. attached as Ex. 8 to Plaintiff's RFAs; *see* Kester Decl. ¶ 5 & Ex. 1.)  Plaintiff does not believe that Defendants ever provided him with these W-2 forms prior to February 21, 2023 – which, as discussed below, is precisely why he propounded RFA No. 8.

## H.    The Second Amended Complaint

On March 3, 2023, Plaintiff moved the Court for leave to file his Second Amended Complaint, submitting the proposed pleading with his moving papers. (D. 91 & 91-1.)  Plaintiff moved to amend for many reasons, including the need to update the parties and claims remaining in the case, and the need to update Plaintiff's allegations so as to include events that had occurred after the Amended Complaint had been filed back in March 2018.

Chief among the new allegations were the multiple paragraphs wherein Plaintiff described the April 2018 correspondence (discussed above) that he (and his wife) had received from Defendants informing him that he had been terminated.  (2d Am. Compl. (D. 107) ¶¶ 55-57.)  Plaintiff also elaborated on the January 30, 2018 letter from Defendants (discussed above), wherein he first learned that he had been terminated. (Id. ¶ 52; *cf.* Am. Compl. (D. 13) ¶ 90 (far less detail).)

Several months later, the Court granted Plaintiff's Motion to Amend, but also dismissed some of his claims.  (June 16, 2023 Ct. Order (D. 105).)  Shortly thereafter,

on June 22, 2023, Plaintiff filed his Second Amended Complaint, consistent with the Court's ruling.  (D. 107.)

### I.    Plaintiff's Requests for Admissions

The Court held a Rule 16(b) Scheduling Conference on July 24, 2023, at which time the Court set various discovery and motion deadlines.  (July 24, 2023 Scheduling Order (D. 112); *see also* D. 111 (Clerk's Notes).)  With discovery officially underway, on August 9, 2023, Plaintiff propounded his First Set of Requests for Admissions on Defendants.  (Kester Decl. ¶ 6 & Ex. 1 (Plaintiff's RFAs).)  Defendants' served their Responses on September 8, 2023.  (Kester Decl. ¶ 7 & Ex. 2 (Defendants' RFA Responses).)

### J.    The Meet-and Confer Conference Pursuant to L.R. 7.1(a)(2) & 37.1(b)

The parties met and conferred about Plaintiff's concerns with Defendants' RFA Responses on September 14, 2023, at or about 10 a.m., by means of a telephone call lasting approximately 15 minutes, with counsel Charles Kester and Ilyas Rona present for Plaintiff, and counsel Hannah Bornstein and Jarrad Kirsh present for Defendants.  (Kester Decl. ¶ 8.)  None of Plaintiff's concerns were resolved on the call.  (*Id.*)  This Motion followed.

### ARGUMENT

### DEFENDANTS SHOULD BE ORDERED TO ANSWER FIVE OF PLAINTIFF'S REQUESTS FOR ADMISSIONS

Plaintiff was very circumspect in formulating and propounding his First Set of Requests for Admissions.  Indeed, half of the ten RFAs, simply asked Defendants to admit (*i.e.*, verify) that they had sent various pieces of correspondence to Plaintiff (or his

wife).  And, another RFA asked Defendants to admit that prior to February 21, 2023,

they had not sent Plaintiff W-2 forms for the tax years 2019 through 2022.  Defendants

neither admitted nor denied these straight-forward RFAs seeking to authenticate

*Defendants' own documents*; instead, Defendants refused to answer any of them.

Defendants' intransigence should not be allowed.

### A.      Request No. 2 – The January 30, 2018 Taxes Letter from J&J

REQUEST NO. 2:

> Admit that the document attached hereto as Exhibit 2 is a true and correct
> copy of a document that You sent to Plaintiff.

(Kester Decl., Ex. 1 (Plaintiff's RFAs) at 4 (RFA No. 2).)  Relatedly, attached as Exhibit 2

to the RFAs was a copy of the January 30, 2018 "Taxes Letter" (discussed above) that

Plaintiff had received from Johnson & Johnson.  (*Id.*, Plaintiff's RFAs at Ex. 2.)

DEFENDANTS' RESPONSE:

> The Defendants object to this Request on the grounds that the term "You"
> renders the Request vague, ambiguous, and overly broad, and the Defendants
> incorporate Specific Objection No. 7.  The Defendants further object on the
> grounds that the terms "the document" and "a document" are vague and
> ambiguous.  The Defendants further object on the grounds that the term "a true
> and correct copy" is vague and ambiguous and calls for a legal conclusion.
> Subject to and without waiving these objections, the Defendants respond as
> follows:  The Defendants have made a reasonable inquiry, and the information
> currently known or readily obtainable is insufficient to permit the Defendants
> to admit or deny Request No. 2.  The Defendants' inquiry will continue, and the
> Defendants will supplement this response as appropriate.

(Kester Decl., Ex. 2 (Defendants' RFA Responses) at 10-11.)

Defendants' feigned inability to answer this Request is just stonewalling.  By its

appearances, including the iconic red cursive "Johnson & Johnson" logo, the January 30,

2018 letter is arguably self-authenticating.  But ignoring that evidentiary issue, for present purposes, Defendants' assertion that they are unable to determine (*i.e.*, to admit or deny) whether they sent the letter to Plaintiff is simply not credible.  Not only did Defendants have a copy of the letter for a month, because attached to Plaintiff's RFAs – they also have known about the letter for over six months, because it was described (and quoted from) in detail in Plaintiff's proposed Second Amended Complaint, which Defendants received on March 3, 2023.  (D. 91-1 ¶ 52.)  Furthermore, Defendants actually received a hard copy of the letter from Plaintiff's counsel *eight months ago* when counsel met to discuss this case on January 5, 2023.  (Kester Decl. ¶ 2.)  For Defendants to claim that they still have "insufficient" information to answer this basic document-authentication RFA is not just laughable, it is contemptuous of the rules of discovery.

Moreover, Defendants' contempt for the discovery process is readily apparent in the objections that they made.  Defendants objected that the words "document" and "true and correct copy" supposedly were "vague and ambiguous."  When confronted about such frivolous objections during the meet-and-confer process, Defendants' counsel refused to explain or withdraw any of the asserted objections.  (Kester Decl. ¶ 8.)

Relatedly, when asked about the "reasonable inquiry" that Defendants' claimed to have done, Defendants' counsel refused to provide any information to support the claim.  (*Id.*); *see Bouchard v. United States*, 241 F.R.D. 72- 76-77 (D. Me. 2007) (Rule 36 case holding that a "reasonable inquiry" requires the RFA respondent "to ascertain the truth *if the ability to do so is reasonably within his power*" (emphasis added, and internal

- 10 -

quotation marks and citations omitted).  And, when Plaintiff's counsel offered to

provide additional time for Defendants to supplement their non-answer responses,

Defendants' counsel refused to propose any future date certain by which Defendants

would do so, nor even to guarantee that supplemental responses would be provided.

(Kester Decl. ¶ 8.)

Defendants should be ordered to answer Request No. 2.

### B.       Request No. 4 – The April 19, 2018 COBRA Enrollment Letter from J&J to Plaintiff

REQUEST NO. 4:

Admit that the document attached hereto as Exhibit 4 is a true and correct copy of a document that You sent to Plaintiff.

(Kester Decl., Ex. 1 (Plaintiff's RFAs) at 4 (RFA No. 4).)  Relatedly, attached as Exhibit 4 to

the RFAs was a copy of the April 19, 2018 "COBRA Enrollment Letter" (discussed above)

that Plaintiff had received from Johnson & Johnson.  (Id., Plaintiff's RFAs at Ex. 4.)

DEFENDANTS' RESPONSE:

The Defendants object to this Request on the grounds that the term "You" renders the Request vague, ambiguous, and overly broad, and the Defendants incorporate Specific Objection No. 7.  The Defendants further object on the grounds that the terms "the document" and "a document" are vague and ambiguous.  The Defendants further object on the grounds that the term "a true and correct copy" is vague and ambiguous and calls for a legal conclusion. Subject to and without waiving these objections, the Defendants respond as follows:  The Defendants have made a reasonable inquiry, and the information currently known or readily obtainable is insufficient to permit the Defendants to admit or deny Request No. 4.  The Defendants' inquiry will continue, and the Defendants will supplement this response as appropriate.

(Kester Decl., Ex. 2 (Defendants' RFA Responses) at 11-12.)

Defendants' Response and refusal to answer Request No. 4 is word-for-word the same as previously-discussed regarding Request No. 2.  Once again, Defendants claim that they are unable to determine (*i.e.*, to admit or deny) whether they sent the letter to Plaintiff.  Bear in mind, this was an eleven-page letter on "Johnson & Johnson" letterhead that contained pages and pages of J&J employment benefits boilerplate that was specifically addressed to Plaintiff.  Like the January 30, 2018 letter at issue in Request No. 2, Defendants had a copy of the April 19, 2018 letter for a month, because it was attached to Plaintiff's RFAs – and, likewise, they had known about the letter for *over six months*, because it was described (and quoted from) in detail in Plaintiff's proposed Second Amended Complaint, which Defendants received on March 3, 2023. (D. 91-1 ¶ 55.)  For Defendants to claim that they still have "insufficient" information to answer this basic document-authentication RFA is just not credible.

For the sake of brevity, Plaintiff incorporates here the discussion from the prior section about Defendants' frivolous "vague and ambiguous" objections and about the unsupported "reasonable inquiry" that they allegedly conducted.

Defendants should be ordered to answer Request No. 4.

C.      **Request No. 3 – The April 19, 2018 COBRA Enrollment Letter from J&J to Plaintiff's Wife**

REQUEST NO. 3:

Admit that the document attached hereto as Exhibit 3 is a true and correct copy of a document that You sent to Daria Gusakova.

(Kester Decl., Ex. 1 (Plaintiff's RFAs) at 4 (RFA No. 3).)  Relatedly, attached as Exhibit 3 to

the RFAs was a copy of the April 19, 2018 "COBRA Enrollment Letter" (discussed above)

that Plaintiff's wife, Daria Gusakova, had received from Johnson & Johnson.  (*Id.*,

Plaintiff's RFAs at Ex. 3.)

> DEFENDANTS' RESPONSE:
>
> The Defendants object to this Request on the grounds that the term "You" renders the Request vague, ambiguous, and overly broad, and the Defendants incorporate Specific Objection No. 7.  The Defendants further object on the grounds that the terms "the document," "a document," and "Daria Gusakova" are vague and ambiguous.  The Defendants further object on the grounds that the term "a true and correct copy" is vague and ambiguous and calls for a legal conclusion.  Subject to and without waiving these objections, the Defendants respond as follows:  The Defendants have made a reasonable inquiry, and the information currently known or readily obtainable is insufficient to permit the Defendants to admit or deny Request No. 3.  The Defendants' inquiry will continue, and the Defendants will supplement this response as appropriate.

(Kester Decl., Ex. 2 (Defendants' RFA Responses) at 11.)

Plaintiff incorporates here his argument and analysis from the prior section,

because it applies equally to Request No. 3 – especially given that the two "COBRA

Enrollment Letters" from J&J were identical, except that the one at issue in Request

No. 3 was sent to Plaintiff's wife, Daria.  It too was attached to Plaintiff's RFAs, and it

too was discussed (and quoted from) in detail in Plaintiff's proposed Second Amended

Complaint back on March 3, 2023.  (D. 91-1¶ 55.)

Lastly, Plaintiff respectfully asserts that the term "Daria Gusakova" as used in

this Request is not "vague and ambiguous."  Defendants' objection here is preposterous

– after all, her name appears as an emergency contact in Plaintiff's personnel file.  Given

this obvious family connection and the fact that it is an uncommon name, Defendants

cannot credibly claim to be confused as to which "Daria Gusakova" is being referred to.

Defendants should be ordered to answer Request No. 3.

**D.      Request No. 5 – The April 19, 2018 Pension Plan Letter from J&J**

REQUEST NO. 5:

Admit that the document attached hereto as Exhibit 5 is a true and correct
copy of a document that You sent to Plaintiff.

(Kester Decl., Ex. 1 (Plaintiff's RFAs) at 4 (RFA No. 5).)  Relatedly, attached as Exhibit 5 to

the RFAs was a copy of the April 19, 2018 "Pension Plan Letter" (discussed above) that

Plaintiff had received from Johnson & Johnson.  (*Id.*, Plaintiff's RFAs at Ex. 5.)

DEFENDANTS' RESPONSE:

The Defendants object to this Request on the grounds that the term "You"
renders the Request vague, ambiguous, and overly broad, and the Defendants
incorporate Specific Objection No. 7.  The Defendants further object on the
grounds that the terms "the document" and "a document" are vague and
ambiguous.  The Defendants further object on the grounds that the term "a true
and correct copy" is vague and ambiguous and calls for a legal conclusion.
Subject to and without waiving these objections, the Defendants respond as
follows:  The Defendants have made a reasonable inquiry, and the information
currently known or readily obtainable is insufficient to permit the Defendants
to admit or deny Request No. 5.  The Defendants' inquiry will continue, and the
Defendants will supplement this response as appropriate.

(Kester Decl., Ex. 2 (Defendants' RFA Responses) at 12.)

Plaintiff incorporates here his argument and analysis from the prior sections,

because they apply equally to Request No. 5.  There simply is no credible reason that

Defendants cannot answer this Request after having the "Pension Plan Letter" in their

hands for their review since Plaintiff's RFAs were served a month before their response;

and, once again, this letter was discussed (and quoted from) in great detail in Plaintiff's proposed Second Amended Complaint back on March 3, 2023.  (D. 91-1¶ 57.)

Defendants should be ordered to answer Request No. 5.

### E.    Request No. 8 – The 2019-2022 W-2 Forms Provided by Defendants to Plaintiff on February 21, 2023

REQUEST NO. 8:

Admit that prior to February 21, 2023, You did not send to Plaintiff, or otherwise cause him to be provided with, any W-2 forms for the tax years 2019 through 2022, copies of which are attached hereto as Exhibit 8.

(Kester Decl., Ex. 1 (Plaintiff's RFAs) at 5 (RFA No. 8).)  Relatedly, attached as Exhibit 8 to the RFAs were copies of the 2019 through 2022 W-2 forms (discussed above) that Plaintiff received from Defendants on February 21, 2023 as part of his personnel file.  (*Id.*, Plaintiff's RFAs at Ex. 8.)

DEFENDANTS' RESPONSE:

The Defendants object to this Request on the grounds that the term "You" renders the Request vague, ambiguous, and overly broad, and the Defendants incorporate Specific Objection No. 7.  The Defendants further object on the grounds that the term "any W-2 forms" is vague and ambiguous.  The Defendants further object on the grounds that the term "cause him to be provided with" is vague and ambiguous and calls for a legal conclusion.  Subject to and without waiving these objections, the Defendants respond as follows: The Defendants have made a reasonable inquiry, and the information currently known or readily obtainable is insufficient to permit the Defendants to admit or deny Request No. 8.  The Defendants' inquiry will continue, and the Defendants will supplement this response as appropriate.

(Kester Decl., Ex. 2 (Defendants' RFA Responses) at 13-14.)

Plaintiff incorporates here his argument and analysis from the prior sections, because they apply equally to Request No. 8.  Also, Plaintiff very much disputes

that the terms "W-2 forms" and "cause him to be provided with" are "vague and ambiguous."  Moreover, it is particularly galling that Defendants claim to be unable to answer this Request, when it is *the Defendants* that earlier this year, provided Plaintiff with copies of the 2019-2022 W-2 forms that are the subject of this Request.  (Kester Decl. ¶ 5.)  Under the circumstances, it is absurd for Defendants to not answer this Request.  Defendants should be ordered to answer Request No. 8.

**CONCLUSION**

Defendants are playing games – and doing so in blatant disregard for the rules of discovery.  It is not that Defendants are ignorant as to whether they sent the multiple "termination" letters at issue in this Motion – after all, sophisticated parties like Defendants know exactly which letters they have sent, and which ones they dispute sending.  Rather, Defendants simply wish to *evade* the consequences of admitting that they sent them, because their defense strategy depends on claiming that there was no termination and that they still are Plaintiff's employer – which, of course, would be news to Plaintiff and to State Street Bank (his employer *for the past five years*).  If Defendants are allowed to get away with this discovery abuse, not only would it result in a further injustice to Plaintiff, but it would require unnecessary and expansive discovery into matters that should otherwise be established and beyond dispute.  It also would encourage future discovery obstinacy by Defendants, and this Court very likely would be forced to endure motion after needless motion.

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue an order compelling Defendants to provide answers to Plaintiff's RFA Nos. 2, 3, 4,

5 and 8.  Fed. R. Civ. P. 36(a)(6) & 37(a)(5).  Plaintiff further requests that he be awarded

his expenses for bringing this Motion.  *Id.* & Kester Decl. ¶ 9.

PLAINTIFF ALEKSEJ GUSAKOVS,
By His Attorneys,


Dated:  September 29, 2023                    /s/ Charles F. Kester
                                              Charles F. Kester, Esq. (*pro hac vice*)
                                              DELANEY KESTER LLP
                                              49 Boone Village, Suite 239
                                              Zionsville, Indiana 46077
                                              (818) 974-8627
                                              charles@delaneykester.com

                                              Royston H. Delaney, Esq. (BBO655666 )
                                              DELANEY KESTER LLP
                                              28 State Street, Suite 802
                                              Boston, Massachusetts 02109
                                              (857) 498-0384
                                              royston@delaneykester.com

                                              Ilyas J. Rona, Esq. (BBO642964)
                                              MILLIGAN RONA DURAN & KING LLC
                                              28 State Street, Suite 802
                                              Boston, Massachusetts 02109
                                              (617) 395-9570
                                              ijr@mrdklaw.com

                                              *Attorneys for Plaintiff Aleksej Gusakovs*

## CERTIFICATE OF SERVICE

I, Charles F. Kester, hereby certify that on September 29, 2023, I caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system on all of the individuals registered to receive electronic service of documents filed in this case, including, Hannah R. Bornstein, counsel for Defendants Johnson & Johnson and DePuy Synthes Sales, Inc.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Certificate was executed by me on September 29, 2023, at Zionsville, Indiana.

*/s/ Charles F. Kester*
Charles F. Kester
