UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEKSEJ GUSAKOVS,

    Plaintiff,

v.                                        CIVIL ACTION NO. 1:17-11502-DJC

JOHNSON & JOHNSON and
DEPUY SYNTHES SALES, INC.,

    Defendants.

**MEMORANDUM AND ORDER ON NON-PARTY MATTHEW SCHMIT'S MOTION FOR PROTECTIVE ORDER (#142)**

KELLEY, U.S.M.J.

This case involves allegations that defendants Johnson & Johnson ("J&J") and DePuy Synthes Sales, Inc. ("DePuy") wrongfully terminated plaintiff Aleksej Gusakovs in violation of the retaliation provisions in the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the Massachusetts False Claims Act ("MFCA"), Mass. Gen. Laws, Ch. 12 § 5j, as well as other state common law.  (#107 (2d Am. Compl., hereinafter "SAC") at 22-27.)  Pending before the court is non-party Matthew Schmit's motion for a protective order to limit the scope of his deposition scheduled for December 13, 2023.  (#142.)  Plaintiff opposed (#151), and defendants did not weigh in.  The court heard argument on December 4, 2023 and DENIED Mr. Schmit's motion for the following reasons.  (#153.)

1

I.     Background.

The court assumes familiarity with the factual and procedural background set out in the district court's June 16, 2023 memorandum and order (the "June 16 Order") (#105 at 3-10), and will only set out the facts and allegations relevant to the issues here.

Plaintiff alleges that in 2015-2016 he witnessed wrongdoing by defendants' employees, including alleged kickbacks to a surgeon at Boston Medical Center ("BMC") and instances in which defendants' employees, including plaintiff's supervisor, Matthew Capobianco, provided non-sterilized equipment to doctors. *See* #107 ¶¶ 18-30. On October 29, 2016, plaintiff claims he reported the misconduct to J&J's Corporate Internal Audit Department. *Id.* ¶ 31. Seven months later, plaintiff claims he reported the misconduct to the government, and in May 2017, he was interviewed at the U.S. Attorney's Office ("USAO") in Boston. *Id.* ¶ 36. Also in May 2017, the Federal Bureau of Investigations ("FBI") interviewed Mr. Capobianco, and he allegedly informed plaintiff of the interview afterwards. *Id.* ¶ 39. In June 2017, the Boston USAO issued a subpoena to J&J relating to the alleged misconduct. *Id.* ¶ 41. Also in May 2017, after another alleged sterilization-related incident involving Mr. Capobianco, plaintiff reported directly to BMC. *Id.* ¶ 37. Mr. Capobianco was immediately banned from the hospital, and BMC demanded additional information from plaintiff regarding the alleged misconduct. *Id.* ¶ 38.

Around the same time, plaintiff began to feel overwhelmed at work. He claims he requested additional support from his superiors and sales colleagues, but "those requests essentially were ignored." *Id.* ¶ 43. Mr. Capobianco also began to allegedly threaten and harass plaintiff by, for instance, asking about plaintiff's family "an odd manner that Plaintiff interpreted as being threatening," and visiting him at BMC even though he had been banned. *Id.* ¶ 48. In June 2017, plaintiff took a short-term disability leave for a disability related to stress, which was

extended through December 26, 2017. *Id.* ¶¶ 45-46. While on leave, defendants demanded the return of his work phone and iPad for inspection related to the investigation into the alleged wrongdoing. *Id.* ¶ 51. Then, in January 2018, plaintiff began to receive correspondence from defendants indicating that he had been terminated. *Id.* ¶¶ 52-58.

In August 2017, while on leave, plaintiff initiated this lawsuit as a John Doe relator on behalf of the government, raising claims against defendants and DePuy Synthes, Inc. under the FCA and Anti-Kickback statue ("AKS") relating to alleged unlawful billing practices and kickbacks. (#2 (Compl.).) Then in March 2018, after he began to receive correspondence indicating that he had been terminated, plaintiff amended his complaint to assert additional claims for, *inter alia*, FCA retaliation, MFCA retaliation, and wrongful termination in violation of public policy under Massachusetts common law. (#13 (1st Am. Compl., hereinafter "FAC").)

In September 2022, the government intervened against DePuy and DePuy Sales, Inc., as to plaintiff's FCA claims against them related to illegal kickbacks; the government declined to intervene with respect to plaintiff's other claims and declined to intervene against J&J. (#62 at 1.) In January 2023, plaintiff, defendants, DePuy Synthes, Inc., and the government signed a settlement agreement (#70), and then plaintiff and the government moved to dismiss all claims in the FAC unrelated to plaintiff's employment claims. (#72.) The court dismissed those claims later that month. (#73.)

Plaintiff then moved for leave to file the SAC, dropping DePuy Synthes, Inc. from the lawsuit and adding allegations related to his employment claims. (#91.) Defendants opposed the motion for leave to file, moved to dismiss the FAC and SAC, and further moved to strike allegations related to, *inter alia*, the alleged kickbacks in the SAC. (##96, 99.) In the June 16 Order, the district court allowed plaintiff's motion for leave to file the SAC, allowed defendants'

3

motion to dismiss in part as to all claims except plaintiff's FCA/MFCA retaliation and wrongful termination claims, and denied defendants' request to strike plaintiff's allegations related to the alleged kickbacks.[1]  (#105.)

II.     Matthew Schmit's Motion for Protective Order (#142).

On November 24, 2023, Mr. Schmit filed this motion for protective order under Federal Rules of Civil Procedure 26(c) and 45(d)(3) seeking to prohibit plaintiff from examining Mr. Schmit on facts related to the dismissed and settled claims at his deposition scheduled for December 13, 2023.  (#142); *see* #143 at 4.  He seeks to limit the scope of his upcoming deposition to the following two lines of inquiry:  (1) whether Mr. Schmit was aware that plaintiff engaged in protected activity; and (2) whether plaintiff was terminated as a result of that protected activity.  (#143 at 4.)  In particular, he seeks to prohibit plaintiff from questioning him on facts related to the alleged kickbacks and sterilization issues that plaintiff claims to have reported and that formed the basis for the FCA and MFCA claims that have been settled and dismissed.  *Id.*  Mr. Schmit argues that whether such misconduct actually occurred is not relevant to plaintiff's remaining employment claims under Fed. R. Civ. P. 26(b)(1), and that such questioning would be unduly burdensome as he would need to spend hours preparing in order to respond to the irrelevant questions.

Plaintiff opposes and argues that first, as plaintiff's "immediate supervisor," Mr. Schmit likely has knowledge of many additional categories of information that would be directly relevant to plaintiff's employment claims and that were not enumerated in Mr. Schmit's motion, such as "what [Mr. Schmit] knows about Plaintiff's reputation and performance as an employee of

---

[1] Defendants also moved to strike allegations related to the death of a former regional sales manager.  *See* #100 at 25-26.  District Judge Casper allowed defendants' motion as to those allegations.  (#105 at 29-30.)  Those allegations have no bearing here.

4

Defendants, especially given the fact that Mr. Schmit signed off on numerous year-end reviews concerning Plaintiff's work," and "whether Plaintiff was, in fact, terminated." (#151 at 1-4.) Second, plaintiff argues that Judge Casper already ruled that allegations related to the alleged kickbacks are relevant to plaintiff's remaining FCA/MFCA retaliation claims, *see* #105 at 29. (#151 at 5.) And third, he asserts that Mr. Schmit has not sufficiently shown that such questioning would be unduly burdensome, oppressive, or harassing, as required by Fed. R. Civ. P. 26(c). *Id.* at 6-7. At the hearing, plaintiff further argued that information regarding the alleged misconduct bears on witness credibility, as well as defendants' knowledge of his reports and their motivation in terminating him.

III.    Discussion.

The disagreement here boils down to whether information related to defendants' alleged misconduct is relevant to plaintiff's remaining employment claims under Rule 26(b)(1), which allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*, 344 F.R.D. 141, 144 (D. Mass. 2023) (quoting Fed. R. Civ. P. 26(b)(1)). "Relevance is 'broadly construed at the discovery phase,'" *id.* (quoting *Cabi v. Boston Children's Hosp.*, No. 15-cv-12306-DJC, 2017 WL 8232179, at *2 (D. Mass. June 21, 2017)), and "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1).

The court begins its relevancy analysis by stating the elements of plaintiff's remaining claims: "To state a claim for FCA retaliation, a plaintiff must plausibly allege 'that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct.'" (#105 at 12-13 (quoting *United States ex rel. Karvelas*

*v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 235 (1st Cir. 2004)) (additional citations omitted)). Similarly, "[p]laintiffs seeking to state a MFCA retaliation claim must plausibly allege that '(1) she engaged in conduct protected by the MFCA; (2) her employer knew that she was engaged in that conduct; and (3) her employer took an adverse employment action against her because of the protected conduct.'" *Id.* at 17 (quoting *Shepp[a]rd v. 265 Essex St. Operating Co., LLC*, 299 F. Supp. 3d 278, 284 (D. Mass. 2018); Mass. Gen. L. ch. 12, s. 5J(2)). Finally, to state a claim for wrongful termination in violation of public policy under Massachusetts law, plaintiff must show that his "discharge falls within the limited exception prohibiting employers from firing at-will employees 'for reasons that violate public policy,'" such as "asserting a protected right (e.g., filing for workers' compensation), refusing to commit an illegal act (e.g., perjury), or for doing what the law required (e.g., serving on a jury)." *Id.* at 8 (internal citations omitted). In the June 16 Order, Judge Casper limited this claim to allegations that plaintiff was terminated for activities not related to the FCA violations, "such as reporting Defendants' alleged failure to properly sterilize surgical tools and equipment." *Id.* at 19.

In ruling on defendants' motion to strike in the June 16 Order, Judge Casper held that plaintiff's allegations related to the alleged kickbacks "necessarily provide relevant factual background" to plaintiff's FCA and MFCA retaliation claims because "those claims are based upon his reporting of the kickbacks as part of the basis of Defendants' alleged retaliation."[2] *Id.* at 29. Although the standard on a motion to strike under Fed. R. Civ. P. 12(f) differs from the standard on a motion for a protective order under Fed. R. Civ. P. 26(c) or 45(d)(3), and thus is not

---

[2] Defendants' motion to strike only referenced allegations related to defendants' alleged kickbacks and did not mention plaintiff's allegations related to the sterilization issues. *See* #100 at 24-25. So, the June 16 Order also did not address the sterilization allegations. *See* #105 at 29. Those unchallenged allegations remain in the SAC. *See, e.g.*, #107 ¶¶ 28-30.

automatically dispositive of the arguments here, the court finds the June 16 Order compelling in this context. Discovery related to the alleged misconduct that plaintiff claims to have reported, whether related to settled claims or not, "provide[s] relevant factual background" for his retaliation claims. Questioning related to such issues may uncover evidence that bears on whether defendants knew plaintiff was engaged in protected conduct, and whether defendants discharged plaintiff because of that conduct—both elements of plaintiff's remaining claims, *see supra*—not to mention witness credibility and bias.

Neither party cited a case in this Circuit that definitively decides whether a former *qui tam* relator pursuing retaliation and wrongful termination claims may pursue discovery concerning the underlying misconduct after the *qui tam* claims were settled and/or dismissed, and this court has not found one. However, at least two courts outside this Circuit have held that discovery of underlying misconduct in a wrongful termination and/or retaliation lawsuit may uncover evidence that defendants were aware of the wrongdoing, failed to take steps to remedy the issues, and illegally terminated the reporting employee to coverup the wrongdoing and impede any continued investigation. *Blakeslee v. Shaw Infrastructure, Inc.*, No. 3:09-cv-0214-RRB, 2010 WL 2985812, at *2 (D. Ala. Jul. 27, 2010) ("It should be obvious that a company with real misconduct to hide would have more motive to terminate a whistle-blowing employee than would a company with clean hands."); *see also Allgood v. Baptist Memorial Med. Group, Inc.*, No. 19-2323-JTF-tmp, 2020 WL 86455, at *3 (W.D. Tenn. Jan. 7, 2020) ("Evidence of motive is extremely relevant in the pretext analysis. As a result, evidence that a company engaged in fraud is relevant to whether it punished an employee for reporting fraud." (internal punctuation and citations omitted)), *affirmed by* 2020 WL 821381 (W.D. Tenn. Feb. 19, 2020). *But see Dunlap v. Alaska Radiology Assoc., Inc.*, No. 3:14-cv-001430-TMB, 2018 WL 11462402, at *8-9 (D. Ala. Nov. 5, 2018)

7

(distinguishing *Blakeslee* and noting that where the plaintiff filed his *qui tam* action before he was terminated, the "cat" was already "out of the bag," so plaintiff's retaliation claims did not depend so heavily on proving that his employer intended to conceal fraud). Here, considering the timing of plaintiff's reports and the onset of defendants' alleged retaliatory behavior (discussed *supra*), the discovery plaintiff seeks could bear on defendants' motive in terminating plaintiff—a necessary element of plaintiff's remaining claims—and is thus relevant under Fed. R. Civ. P. 26(b)(1)'s broad scope.

The cases Mr. Schmit cites do not demand a different result. First, in *Agyeah v. City of Worcester*, No. 4:21-cv-40020-MRG, 2023 WL 6961885, at *2 (D. Mass. Oct. 20, 2023), plaintiff sought to compel responses to particular deposition questions *after* the depositions were conducted; here, Mr. Schmit seeks to prematurely limit plaintiff's questioning ahead of the deposition. Moreover, in *Agyeah*, plaintiff sought information related to different policies and constitutional violations than those that formed the basis of his *Monell* and civil rights claims, *id.* at *2; here, plaintiff seeks information related to the same misconduct that he claims to have reported on, not a "broad swath" of unrelated wrongdoing. *See id.* Second, in *Widi v. McNeil*, No. 2:12-cv-188-JAW, 2017 WL 3205473, at *1 (D. Mass. July 27, 2017), the court denied discovery against a dismissed defendant where plaintiff "has made clear . . . he believes he is entitled to maintain his lawsuit against [the dismissed defendant], despite the Court's repeated rulings to the contrary"; here, not only has the district court explicitly allowed plaintiff's allegations related to defendants' alleged wrongdoing to remain in the case, plaintiff asserts that an investigation of that

8

"relevant factual background" may uncover additional evidence bearing on the success of his live claims. Plaintiff is entitled to such an investigation under Fed. R. Civ. P. 26(b)(1).[3]

Even relevant discovery must be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and "where there is 'good cause,' the court can 'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,'" *Virtek Vision Int'l*, 344 F.R.D. at 144 (quoting Fed. R. Civ. P. 26(c)(1)). However, Mr. Schmit's argument that he may need to "prepare for hours" to respond to questioning related to his knowledge of defendants' alleged misconduct is not enough to show good cause to limit plaintiff's examination ahead of the deposition. *See id.* ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986))). To the extent Mr. Schmit is concerned plaintiff will embark on a "fishing expedition," he remains protected by Fed. R. Civ. P. 30(d)(1)'s "one day of 7 hours" time limit; plaintiff is warned that he will need to show good cause to extend beyond that limit. Moreover, if plaintiff subjects Mr. Schmit to harassing, oppressive, or otherwise bad faith questioning, Mr. Schmit retains his right to challenge such conduct under Fed. R. Civ. P. 30(d)(3). *Id.* ("At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground

---

[3] Both parties claim the Supreme Court's decision in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), supports their position. *See* #143 at 8; #151 at 3-4. *Oppenheimer Fund* addresses class action notice requirements under Fed. R. Civ. P. 23 and therefore is only of limited help here. *See* 437 U.S. at 350 ("Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d)."). To the extent the case is relevant to the resolution of Mr. Schmit's motion, it is because it stands for the unremarkable proposition that discovery is broad but not limitless under Rule 26(b)(1). *Id.* at 351-53 (defining broad bounds of relevancy under Rule 26(b)(1) and holding that respondents' "attempt to obtain the class members' names and addresses cannot be forced into the concept of 'relevancy'" because such information would enable plaintiffs to send class notices under Rule 23(c), but it would not bear on the merits of their claims).

that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.").

IV. <u>Conclusion</u>.

For the reasons discussed above, Matthew Schmit's Motion for Protective Order (#142) is <u>DENIED</u>.

December 5, 2023

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge