UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


ALEKSEJ GUSAKOVS,

     Plaintiff,


     v.                        CIVIL ACTION NO. 1:17-11502-DJC


JOHNSON & JOHNSON and
DEPUY SYNTHES SALES, INC.,

     Defendants.


**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO COMPEL (#184).**

KELLEY, U.S.M.J.

     This case involves allegations that defendants Johnson & Johnson ("J&J") and DePuy Synthes Sales, Inc. ("DSS") wrongfully terminated Aleksej Gusakovs in retaliation for blowing the whistle on defendants' alleged violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12 §§ 5A, *et seq.* ("MFCA"), as well as allegations under state common law.  (#107 (2d Am. Compl., hereinafter "SAC").)  Pending before the court is plaintiff's motion to compel production of documents in response to fifteen requests for production ("RFPs").  (#184.)  The motion is fully briefed.  *See* ##192 (opposition), 195 (reply).  The court heard argument on April 2, 2024.  (#198.)  For the reasons discussed below, plaintiff's motion is <u>allowed in part</u> and <u>denied in part</u>.

I.  Background.

  A.  Factual Background.

        The court assumes familiarity with the factual and procedural background set out in District

Court Judge Casper's June 16, 2023 memorandum and order (the "June 16 Order") (#105 at 3-10),

and will only set out facts and allegations relevant to the issues here.[1]

        In the SAC, plaintiff alleges that in 2015 and 2016 he witnessed wrongdoing by defendants'

employees, including alleged kickbacks to a surgeon, Dr. Tony Tannoury, at Boston Medical

Center ("BMC") and instances in which defendants' employees, including plaintiff's supervisor,

Matthew Capobianco, provided non-sterilized equipment to doctors.  *See* #107 ¶¶ 18-30.  On

October 29, 2016, plaintiff claims he reported the misconduct to J&J's Corporate Internal Audit

Department.  *Id.* ¶ 31.  Seven months later, plaintiff claims he reported the misconduct to the

government, and in May 2017, he was interviewed at the U.S. Attorney's Office ("USAO") in

Boston.  *Id.* ¶ 36.  Also in May 2017, the Federal Bureau of Investigations ("FBI") interviewed

Mr. Capobianco, and he allegedly informed plaintiff of the interview afterwards.  *Id.* ¶ 39.  That

same month, plaintiff witnessed another alleged sterilization-related incident involving Mr.

Capobianco, which he reported directly to BMC.  *Id.* ¶ 37.  Mr. Capobianco was immediately

banned from the hospital, and BMC demanded additional information from plaintiff regarding the

alleged misconduct.  *Id.*¶ 38.  Sometime later, Mr. Capobianco was terminated from his

employment with defendants.  In June 2017, the Boston USAO issued a subpoena to J&J

purportedly relating to the alleged misconduct.  *Id.* ¶ 41.

---

[1] The court repeats much of the factual background from its December 5, 2023 Memorandum and Order on non-party Matthew Schmit's Motion for Protective Order ("December 5 Order") (#154 at 2-5), because many of the issues in the two motions overlap.

Around the same time, plaintiff began to feel overwhelmed at work.  He requested support from his superiors and sales colleagues, but "those requests essentially were ignored."  *Id.* ¶ 43.  In June 2017, plaintiff took a short-term disability leave for a disability related to stress, which was extended through December 26, 2017.  *Id.* ¶¶ 45-46.  While on leave, defendants demanded the return of his work phone and iPad for inspection related to the investigation into the alleged wrongdoing.  *Id.* ¶ 51.

In August 2017, while still on leave, plaintiff initiated this lawsuit as a John Doe relator on behalf of the government, raising claims against defendants and DePuy Synthes, Inc. under the FCA and Anti-Kickback statute ("AKS") relating to alleged unlawful billing practices and kickbacks.  (#2 (Compl.).)   In January 2018 plaintiff began to receive correspondence from defendants informing him that he had been terminated.  (#107 ¶¶ 52-58.)  Plaintiff amended his complaint to assert additional claims for FCA retaliation, MFCA retaliation, and wrongful termination in violation of public policy under Massachusetts common law.  (#13 (1st Am. Compl., hereinafter, "FAC").)

In September 2022, the government intervened against DSS and DePuy Sales, Inc. as to plaintiff's claims related to alleged illegal kickbacks; the government declined to intervene with respect to plaintiff's other claims and declined to intervene against J&J.  (#62 at 1.)  In January 2023, plaintiff, defendants, DePuy Synthes, Inc., and the government signed a settlement agreement as to the kickback claims, #70; *see also* #195-2 (settlement agreement), and then plaintiff and the government moved to dismiss all claims in the FAC unrelated to plaintiff's employment claims.  (#72.)  Judge Casper dismissed those claims later that month.  (#73.)

Plaintiff moved for leave to file the SAC, dropping DePuy Synthes, Inc. from the lawsuit and adding allegations related to his employment claims.  (#91.)  Defendants opposed the motion

for leave to file, moved to dismiss the FAC and SAC, and further moved to strike allegations in the SAC related to the alleged kickbacks in the SAC.  (##96, 99.)  In the June 16 Order, Judge Casper allowed plaintiff's motion for leave to file the SAC, allowed defendants' motion to dismiss as to all claims except plaintiff's FCA/MFCA retaliation and wrongful termination claims, and denied defendants' motion to strike plaintiff's allegations related to the alleged kickbacks.  (#105.) In denying defendants' motion to strike, Judge Casper held that "[w]hile Defendants suggest these allegations are not 'needed to form the basis of [plaintiff's] employment retaliation claims,' those claims are based upon his reporting of the kickbacks as part of the basis of Defendants' alleged retaliation, so they necessarily provide relevant factual background."  *Id.* at 29 (internal citations omitted).

    B. <u>Previous Discovery Motions</u>.

       Numerous discovery motions followed. Mr. Capobianco moved to quash a subpoena issued by plaintiff, asserting that his Fifth Amendment privileges would be implicated by any line of questioning or production of documents and that plaintiff's requests were disproportionate to the needs of his employment claims.  (#114.)   Following a hearing, this court allowed Mr. Capobianco's motion, not reaching issues concerning relevance, but finding that plaintiff's counsel failed to articulate a line of questioning that would not implicate Mr. Capobianco's Fifth Amendment privilege.  (#163.)

       Plaintiff then moved to compel non-party Dr. Tannoury to comply with a subpoena requesting attendance at a deposition and the production of documents (#128); Dr. Tannoury moved to quash the subpoena (#137).  Following a hearing, the court denied plaintiff's motion without prejudice and allowed Dr. Tannoury's motion to quash, finding that plaintiff had failed to articulate a line of questioning that would not implicate Dr. Tannoury's Fifth Amendment privilege.  (#159.)  The court ordered the parties to confer regarding any documents that Dr.

Tannoury might be able to produce without implicating his Fifth Amendment privilege, but noted that plaintiff's RFPs were "facially overbroad," and that the court was "not inclined to allow discovery of 'relevant factual background' into defendants' alleged misconduct through individual third parties with potential liability." *Id.* (citing #105 at 29).

While Dr. Tannoury's motion was pending, non-party Matthew Schmit, plaintiff's supervisor, moved for a protective order limiting the scope of his upcoming deposition to whether Mr. Schmit was aware that plaintiff engaged in protected activity by reporting alleged wrongdoing and whether plaintiff was terminated as a result of that protected activity. (#142.) Mr. Schmit moved to preclude questioning related to plaintiff's "dismissed and settled claims," i.e., allegations related to alleged kickbacks. *Id.* This court denied Mr. Schmit's motion at the hearing (#153), and the following day, issued its decision (the "December 5 Order") in which it stated that the disagreement "boil[ed] down to whether information related to defendants' alleged misconduct is relevant to plaintiff's remaining employment claims under Rule 26(b)(1) . . . ." (#154 at 5.) The court reviewed the elements of plaintiff's employment claims, analyzed Judge Casper's June 16 Order, and held:

> Discovery related to the alleged misconduct that plaintiff claims to have reported, whether related to settled claims or not, "provide[s] relevant factual background" for his retaliation claims. Questioning related to such issues may uncover evidence that bears on whether defendants knew plaintiff was engaged in protected conduct, and whether defendants discharged plaintiff because of that conduct—both elements of plaintiff's remaining claims—not to mention witness credibility and bias.

*Id.* at 7 (internal citations omitted). The court further held that "considering the timing of plaintiff's reports and the onset of defendants' alleged retaliatory behavior . . . the discovery plaintiff seeks could bear on defendants' motive in terminating plaintiff—a necessary element of plaintiff's remaining claims—and is thus relevant under Fed. R. Civ. P. 26(b)(1)'s broad scope." *Id.* at 8.

Additionally, the court noted that Mr. Schmit's concerns regarding plaintiff's potentially overbroad questioning would be tempered by Fed. R. Civ. P. 30(d)'s seven-hour time limit. *Id.* at 9.

Shortly following the court's decisions on the motions related to non-party discovery,[2] defendants moved to limit discovery globally.[3]  (#162.)  Defendants argued that the only relevant issues remaining in plaintiff's case were "1) What, when, how, and to whom did [p]laintiff report alleged unlawful conduct? 2) What did [d]efendants know about [p]laintiff's reporting (i.e., the protected conduct)? And 3) did [d]efendants retaliate against [p]laintiff as a direct result of his protected conduct?"  (#162 at 2.)  They asserted that plaintiff should be precluded from seeking any discovery related to the underlying FCA claims and the government's investigation and resolution of those claims.  *Id.* at 1-2.

Plaintiff argued that such information was relevant to both plaintiff's remaining claims as well as defendants' affirmative defenses, which included that plaintiff was not terminated or otherwise retaliated against for any protected conduct, and that any actions taken by defendants were taken in good faith.  (#167 at 4.)  Plaintiff cited the holdings in both Judge Casper's June 16 Order and this court's December 5 Order to support his argument that discovery related to the FCA claims was not only relevant but "necessary factual background." *Id.* at 5.  Following a hearing, the court denied defendants' motion without prejudice, noting that:

> [The] [c]ourt rejects defendants' argument that absolutely no discovery is required to be produced related to the conduct underlying plaintiff's reports; however, plaintiff's discovery requests are impermissibly broad.  [The] [c]ourt encourages parties to negotiate issues that may be stipulated to at trial in order to narrow areas of dispute and streamline discovery.  If, after such negotiations, parties cannot agree on the scope of discovery, plaintiff may file a motion to compel concerning

---

[2] And one day before the court's order on plaintiff's motion related to Mr. Capobianco, *see* #163.

[3] Defendants did not formally weigh in on the discovery motions related to non-parties.

narrowly defined categories of documents.  Plaintiff shall state with particularity
why the requested discovery is relevant to his case.

(#176.)

This motion followed.  (#184.)

II.   Discussion.

Plaintiff does not dispute defendants' assertions of privilege, so the issue here is whether

the discovery plaintiff requests is relevant under Rule 26(b)(1).[4]  Fed. R. Civ. P. 26(b)(1); *see*

*Salem v. Stoneham Police Dep't*, 662 F. Supp. 3d 41, 43 (D. Mass. 2023) ("During discovery, a

party is entitled to discovery 'any nonprivileged matter that is *relevant* to any party's claim or

defense.'" (quoting Fed. R. Civ. P. 26(b)(1) (emphasis in original)).  "Relevance is 'broadly

construed at the discovery stage,'" *Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*, 344

F.R.D. 141, 144 (D. Mass. 2023) (quoting *Cabi v. Boston Children's Hosp.*, No. 15-cv-12306-

DJC, 2017 WL 8232179, at *2 (D. Mass. June 21, 2017)), and "need not be admissible in evidence

to be discoverable," Fed. R. Civ. P. 26(b)(1).  Nevertheless, "[d]iscovery is not unlimited and 'has

ultimate and necessary boundaries.'" *Salem*, 662 F. Supp. 3d at 43 (quoting *Oppenheimer Fund,*

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).[5]

---

[4] Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs
of the case, considering the importance of the issues at stake in the action, the amount in
controversy, the parties' relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the burden or expense of the
proposed discovery outweighs its likely benefit. Information within this scope of discovery need
not be admissible in evidence to be discoverable."

[5] Plaintiff repeatedly cites the December 5 Order as allowing unfettered discovery into "necessary
factual background."  Although the December 5 Order recognized that some evidence on this point
is relevant and discoverable, the order was cabined by the time limitations provided in Fed. R. Civ.
P. 30(d)—plaintiff was allowed the questions he could ask within seven hours.  (#154 at 9.)  Here,
plaintiff seeks responses to RFPs under Fed. R. Civ. P. 34, which are limited by the relevancy
and proportionality standards set out in Fed. R. Civ. P. 26(b). Accordingly, the court does not allow
plaintiff access to all possible documents concerning "necessary factual background," since that

Since the elements of plaintiff's claims are central to the court's relevancy analyses, the

court repeats:

> "To state a claim for FCA retaliation, a plaintiff must plausibly allege 'that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct.'" (#105 at 12-13 (*quoting United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 235 (1st Cir. 2004)) (additional citations omitted)). Similarly, "[p]laintiffs seeking to state a MFCA retaliation claim must plausibly allege that '(1) she engaged in conduct protected by the MFCA; (2) her employer knew that she was engaged in that conduct; and (3) her employer took an adverse employment action against her because of the protected conduct.'" *Id.* at 17 (*quoting Shepp[a]rd v. 265 Essex St. Operating Co., LLC*, 299 F. Supp. 3d 278, 284 (D. Mass. 2018); Mass. Gen. L. ch. 12, s. 5J(2)). Finally, to state a claim for wrongful termination in violation of public policy under Massachusetts law, plaintiff must show that his "discharge falls within the limited exception prohibiting employers from firing at-will employees 'for reasons that violate public policy,'" such as "asserting a protected right (e.g., filing for workers' compensation), refusing to commit an illegal act (e.g., perjury), or for doing what the law required (e.g., serving on a jury)." *Id.* at 8 (internal citations omitted). In the June 16 Order, Judge Casper limited this claim to allegations that plaintiff was terminated for activities not related to the FCA violations, "such as reporting Defendants' alleged failure to properly sterilize surgical tools and equipment." *Id.* at 19.

(#154 at 6-7.)

Per the court's Order, *see* #176, plaintiff narrowed his requests to fifteen categories.[6]

---

would surely be disproportional to his remaining employment claims. On the other hand, the court rejects defendants' position that all "necessary factual background" discovery is irrelevant. Therefore, the court encourages the parties to keep in mind the Federal Rules of Civil Procedure's obligations and reasonable limits on discovery in complying with this Order. *See* Fed. R. Civ. P. 26(b).

[6] Defendants have made the court aware that since filing this motion, plaintiff has served a second set of RFPs that are broader than the requests discussed in this Order. As defendant correctly notes, the second set of RFPs is not at issue here. However, defendants object to certain of plaintiff's Modified RFPs on grounds that they are outside the scope of the first set of RFPs from which plaintiff derived the Modified RFPs. *See, e.g.*, #185 at 10, 14 (defendants' responses to Modified RFP Nos. A4, B1). In an effort to streamline discovery before the impending deadline on May 10, 2024, *see* #111, the court will assume that plaintiff's Modified RFPs, as limited by this Order, are within the scope of plaintiff's first and/or second (and broader) sets of RFPs.

A.  Requests related to the U.S. subpoena to J&J.

1.  *The subpoena You received in early June 2017 concerning sterilization and gifts to healthcare providers to Boston Medical Center ("BMC") or Minimally Invasive Spine Surgery Boston (the "Subpoena") (RFP Nos. 17 & 32)*

Plaintiff argues that the Subpoena is relevant to his claims because it "set off a federal investigation" into the "scandal" that plaintiff uncovered and "put a target on [p]laintiff's back." (#185 at 9, 11.)  According to plaintiff, the contents of the Subpoena will test defendant's assertion that that they did not know what was communicated to the government and by whom.  *Id.* at 11. Defendants argue, however, that the Subpoena reflects the government's thoughts and investigative steps and is therefore not evidence of what defendants may have known about what plaintiff told the government.[7] (#192 at 5-6.)  Defendants further point out that the request does not seek documents concerning what defendants knew about the Subpoena or communications about it; it only seeks the Subpoena itself.  *Id.* at 6-7.

The court has reviewed the Subpoena *in camera* and finds that, as defendants represented at the hearing, some of the requests in the Subpoena are not relevant to the claims or defenses in

---

[7] Defendants' citation to *United States v. Facteau*, No. 15-cr-10076-ADB, 2015 WL 6509120, at *2 (D. Mass. Oct. 28, 2015), *objections overruled*, No. 1:15-cr-10076-ADB (D. Mass. Aug. 22, 2016) is inapposite.  *Facteau* is first, a criminal case and therefore not decided under Rule 26 of the Federal Rules of Civil Procedure.  Second, in *Facteau* the defendant sought the government's subpoenas to third parties in an effort to narrow his review of a large volume of documents at issue in the case.  In other words, defendant sought information related to what had been produced to the government by third parties in response to the subpoena.  Here, plaintiff seeks information about what the government communicated to the subpoena recipient, i.e. defendants, through the Subpoena.  Therefore, the negotiated narrowing of the Subpoena is of less relevance here than in *Facteau*.

Moreover, in *Musgrove v. Breg*, No. 2:09-cv-01029, 2010 WL 11636109, at *2 (S.D. Ohio Sept. 29, 2010), another criminal case, the court held that the subpoena at issue would "not shed any light on what [defendant] knew about [alleged wrongdoing] at the time the allegations in the complaint occurred because the subpoena did not exist at that time."  Here, in contrast, the Subpoena was issued following plaintiff's complaints and before his alleged retaliation and termination, i.e., just as the allegations in the SAC were allegedly taking place.

this case.  The Subpoena is not entirely irrelevant, however.  The court finds that plaintiff is entitled to know about requests that indicate what information the government had received that triggered the issuance of the Subpoena, so that he may counter defendants' assertion that they did not know what had been reported to the government and that it was plaintiff who reported it.  Defendants therefore shall produce to plaintiff a version of the Subpoena where any language not related to the facts of this case at all is redacted. This redacted document, when provided to plaintiff, shall be subject to the protections afforded by the parties' stipulated protective order, *see* #126. Defendants shall provide the court the redacted version no later than Friday, April 12, 2024, and after approving it, the court will direct defendants to provide it to plaintiff.

2. *All communications about the identity of any potential source(s) of the information concerning sterilization and gifts to healthcare providers at BMC or Minimally Invasive Spine Surgery Boston (RFP No. 32)*

Defendants do not assert that Modified RFP A2 is not relevant under Rule 26 and instead claim:

> To the extent any such non-privileged documents exist in the review universe consisting of the custodians, date ranges, and search terms [d]efendants identified for [p]laintiff on January 3, 2024 pursuant to the ESI Protocol entered in this matter, they either have been produced or are slated for production.  To the extent any such documents were withheld from production for privilege, they either appear on the privilege log produced to [p]laintiff on January 5, 2024 or will appear on a forthcoming privilege log.

(#192 at 1-2.)  Defendants have also applied the same search terms to the discovery produced to the government in response to the Subpoena to identify additional documents responsive to this Modified RFP. *Id.* at 2-3; *see* #198.

At the hearing, plaintiff expressed concern that defendants have produced documents responsive to keyword searches but have otherwise refused to produce responsive discovery known to exist in their custody and control.  Defense counsel stated that they have produced all documents responsive to Modified Request A2 in defendants' custody and control, whether those

10

documents were identified via search term results or were known to defendants for other reasons. *See* #199 ("Defendants state that they have 'produce[d] any discovery responsive to modified requests A2 and A3 if already known to defendants, whether or not such discovery was produced by keyword searches.'"). Therefore, subject to defendants' continuing obligation to supplement if additional responsive documents are found, *see* Fed. R. Civ. P. 26(e), plaintiff's motion to compel as to Modified Request A2 is denied.

3. *All documents discussing or referencing Alex Gusakovs as a whistleblower (RFP No. 32)*

Again, the parties do not debate the relevance of plaintiff's Modified RFP A3. Defendants claim to have produced all non-privileged responsive documents and to have logged all documents subject to privilege, and they offered to run searches on the Subpoena production to identify additional documents. (#192-1 at 4; #199.) The court denies plaintiff's motion as to Modified RFP A3 for the same reasons as Modified RFP A2, discussed above.

4. *Documents sufficient to show the dates and recipients of all "litigation hold" notices sent in connection with the Subpoena or any anticipated litigation with Alex Gusakovs (RFP Nos. 17 & 32)*

At the hearing, plaintiff's counsel represented that plaintiff had received a litigation hold notice in connection with the Subpoena and argued that whether other employees received such a notice goes to both defendants' knowledge of plaintiff's complaints, as well as defendants' retaliating against plaintiff. Defendants argue that such information is protected work product; however, at the hearing they agreed to produce the number of individuals who received litigation hold notices. Defendants did so, stating in a supplemental filing that "233 'people [] received litigation hold notices . . . in connection with the government subpoena.'" (#199.) The court finds defendants' response sufficient and denies plaintiff's motion as to Modified RFP A4.

5. *Documents sufficient to show the identity of all employees whose phones or devices You copied in response to the Subpoena and the dates of copying (RFP Nos. 32 & 41)*

At the hearing defendants agreed to produce to plaintiff the number of individuals whose electronic devices were copied in response to the Subpoena, without providing the identities of those individuals. Defendants did so, stating in a supplemental filing that "there are 10 'people whose devices were searched . . . in connection with the government subpoena.'" (#199.) The court finds defendants' response sufficient and denies plaintiff's motion as to Modified RFP A5.

6. *Documents sufficient to identify all employees interviewed in connection with the matters raised in the Subpoena (RFP No. 9)*

Defendants claim privilege and work product protection over the information requested in Modified RFP A6, arguing that the identification of employees who were interviewed in connection with the Subpoena would disclose defendants' defense of the government investigation. *See* #192 at 9-10. Plaintiff did not address defendants' privilege/work product claim in his briefing or oral argument. *See generally* ##185, 195.

Courts have "routinely" held that "the names of . . . witnesses are not protected from disclosure merely because opposing counsel has elected to interview them." *E.E.O.C. v. Collegeville/Imagineering Ent.*, No. cv-05-3033 PHX-DGC, 2007 WL 1089712, at *1 (D. Ariz. Apr. 10, 2007). However, although "[i]t is clear that the plaintiff is entitled to discover the '… identity and location of persons having knowledge of any discoverable matter,' . . .when the terms of the [discovery request] are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable." *Com. of Mass. v. First Nat. Supermarkets, Inc.*, 112 F.R.D. 149, 152 (D. Mass. 1986) (quoting Fed. R. Civ. P. 26(b)(1)) ("The cases seem to support the distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or interviewed during an investigation, which is not."); *see*

*also Gonzales v. RXO Last Mile, Inc.*, No. 19-cv-10290-TSH, 2022 WL 22269209, at *3 (D. Mass. Dec. 12, 2022) ("Several courts have held the identity of which witnesses a party chose to interview (and chose *not* to interview) is protected because it reveals the tactics of the lawyer."). Plaintiff's Modified RFP A6 clearly seeks the latter. The court denies plaintiff's motion as to Modified RFP A6.

   B. Requests related to the May 2017 Sterilization issue at BMC.

   1. *All texts and all emails involving any of Matt Capobianco, Alex Gusakovs, Mike Landau, Eric [sic] Knaus, or Dr. Tannoury ("Dr. Tannoury") concerning sterilization issues from May 30, 2017 to January 30, 2018 (RFP Nos. 17 & 32)*

   The parties do not dispute that Modified RFP B1 is relevant to the claims and defenses in plaintiff's employment action.[8] As plaintiff argues, whether plaintiff's managers and individuals allegedly involved in the purported wrongdoing were angry with plaintiff or suspected that he was the source of the reports is relevant to whether defendants had knowledge of plaintiff's protected activity, as well as whether they retaliated against him as a result.

   The parties dispute, however, the scope of defendants' review universe. Plaintiff asserts that the request is sufficiently narrow that defendants should manually review the entire collection of the above-referenced custodians for the limited timeframe from May 30, 2017 to January 30, 2018 for responsive communications. (#192-1 at 9.) Defendants argue that a manual search is disproportional and that the review universe should be narrowed by search terms, which they

---

[8] Defendants argue that these requests relate to an incident in 2017 that plaintiff reported to the BMC and not defendants. (#192 at 10.) Defendants assert that plaintiff conflates this incident with a 2016 sterilization incident that plaintiff reported directly to defendants and later the government, and about which defendants produced "substantial discovery." *Id.* Defendants, however, do not dispute the relevance of this incident to the remaining claims and defenses in this case. Simply because defendants have already produced discovery regarding one incident does not relieve them of the obligation to produce discovery on another to which plaintiff is entitled.

agreed to expand with respect to sterilization-related search terms.  *Id.*  They further agreed to apply the agreed-upon search terms to the Subpoena production.  *Id.* at 9-11.

At the hearing, plaintiff agreed to limit the requested date range to the month between May 30 and June 30, 2017, to facilitate a manual search.  Plaintiff further stated that he considered a manual review of text messages to be important, as text messages may more accurately reflect the candid and immediate reactions of the individuals sending them.  The court ordered defendants to submit the number of documents that would be included in a manual search of the communications sought in Modified RFP B1[9] in the month plaintiff identified, differentiating between texts and emails.  (#198.)  Defendant did so in a supplemental filing, stating that 7,351 emails plus 2,241 attachments to those emails (totaling 9,592 documents) exist, plus 12,051 text messages.  (#199.)

Considering the relevancy of plaintiff's request to his remaining employment claims, as well as the truncated date range intended to target only the most relevant documents, the court finds requiring defendants to conduct a manual review of the 12,051 text messages to be proportional to plaintiff's claims under Rule 26.  Defendants shall manually review all 12,051 text messages identified in its supplemental filing and produce to plaintiff all responsive communications.

The court is not convinced that a full review of the 9,592 email-related documents is proportional to the needs of this case.  Defendants therefore shall apply broad, agreed-upon search terms to the 9,592 documents identified in defendants' supplemental filing and produce to plaintiff all responsive documents.

---

[9] The court recognizes that Dr. Tannoury is not an employee of defendants and therefore cannot be named as a custodian; defendants agreed to search for communications including (i.e. to/from/CC) Dr. Tannoury in creating its review universe.

2. *All documents and communications discussing or referencing Capobianco's exclusion from the BMC (RFP No. 17)*

Defendants assert that they have provided all discovery responsive to Modified RFP B2, including results from a supplemental search including the search terms: ban*, suspen* remove*, credential*, revoke*, exclu*, cover*, allow*, disallow*, and permit.* (#192 at 14 n.16.) Plaintiff's reply did not address the sufficiency of defendants' additional search. *See* #195. At the hearing, plaintiff did not identify any additional search terms or custodians necessary to render the search complete. The court finds defendants' response to Modified RFP B2 sufficient and denies plaintiff's motion as to Modified RFP B2.

3. *All internal reports, including but not limited to any site investigation reports, relating to or concerning any sterilization issues that occurred at BMC in May (RFP Nos. 17 & 32)*

Defendants assert that they are "unaware of any internal report related to or concerning alleged sterilization issues that occurred at the BMC in May 2017." (#192 at 12.) They claim that they "did not reach this conclusion based on memory" but rather "collected and reviewed thousands of documents from various custodians who would have been likely to know or be involved in any such investigation." *Id.* Plaintiff finds defendants' assertion incredible considering BMC banned Mr. Capobianco following plaintiff's report of this incident and defendants allegedly terminated him as a result. (#185 at 15.) He points to a letter produced by BMC ("BMC letter") in response to a subpoena that should have been produced in response to this request. (#195 at 5; #195-4 (BMC letter).)

At the hearing, the parties quibbled over the definition of "internal investigation report," with defendants asserting that plaintiff never reported the May 2017 sterilization incident to defendants, so no internal investigation followed; and plaintiff arguing that Modified RFP B3 sought not only internal reports resulting from internal complaints, but reports, investigatory

documents, and communications related to investigations by either BMC or defendants in response to the May 2017 sterilization issue.  To the extent such a request is broader than Modified RFP B3, plaintiff asserted that he had narrowed his broader RFPs during discovery negotiations, and that such good faith efforts should not inadvertently preclude him from discovery that he was entitled to under his original requests.

The court sides with plaintiff.  The requested documents go to defendants' knowledge that plaintiff was the whistleblower, as well as defendants' retaliatory motive.  To the extent defendants are in possession of non-privileged documents or communications related to any investigation into the May 2017 sterilization incident, whether internal or external, defendants shall produce such documents to plaintiff.

C. Requests related to gifts[10] to Dr. Tannoury.

1. *Documents sufficient to show the dates of the overseas trips mentioned in paragraph G of the FCA Settlement Agreement, including any documents relating to payments or to expense reimbursement for Dr. Tannoury or Matt Capobianco in connection with the trips (RFP Nos. 31 & 33)*

The value of the gifts that defendants and Mr. Capobianco allegedly gave to Dr. Tannoury is relevant to defendants' motivation to retaliate against plaintiff. Defendants assert that they produced all discovery responsive to this request in a supplemental production on March 8, 2024. (#192 at 15.)  At the hearing, it became clear that defendants' production consists only of the dates of the overseas trips and does not include any information concerning any alleged "payments or expense reimbursements."   Defendants argue that there were no payments or expense reimbursements made to Dr. Tannoury, nor any items provided for "free," and so there is no discovery to produce.

_____

[10] The court recognizes that defendants dispute the use of the term "gifts."  The court uses the term with the understanding that it is an allegation and not a fact.

The court, declining to wade into the parties' disagreement as to whether the items provided were properly described as "free," ordered defendants to provide a list of all items given to Dr. Tannoury, whether they could somehow be deemed paid for or not, along with a pricelist from which plaintiff could derive the value of such items, *see infra.* (#198.)  In a supplemental filing, defendants averred that they have "produced to plaintiff a list of items that were given to Tannoury, whether or not in exchange for consideration, as well as a pricelist for those items." (#199 (cleaned up).)  They state that they "do not have any documents in their possession, custody, or control that definitively establish or identify the items or quantities of any such items that were given to Dr. Tannoury," and that they have already "provided [p]laintiff with a list of products that, based upon information and belief, may have been provided in any combination to Dr. Tannoury." *Id.* at 2 n.1.  If no additional information exists, plaintiff's motion is denied as to Modified RFP C1; however, the court reminds defendants of their continuing obligation to supplement if additional responsive documents are found, *see* Fed. R. Civ. P. 26(e).

2.  *Documents sufficient to determine the valuation of all items identified in Paragraph 25 of the Second Amended Complaint, as well as GUSAKOVS00000107, GUSAKOVS-00000648, GUSAKOVS-00001519 (RFP Nos. 30, 31, 33 & 44)*

For the reasons discussed above, the court ordered defendants to produce to plaintiff a pricelist from which plaintiff could derive the value of items identified in response to Modified RFP C1.  (#198.)  Defendants state that they have done so, and that they "are not aware of any other documents in their possession, custody, or control that would otherwise allow [p]laintiff to determine the products' valuation." (#199 at 2 n.1.)  Therefore, plaintiff's motion is denied as to Modified RFP C2.

17

> 3.  *All texts and all emails involving any of Matt Capobianco, Alex Gusakovs, Mike Landau, Eric [sic] Knaus, or Dr. Tannoury concerning gifts to healthcare providers from May 30, 2017 to January 30, 2018 (RFP No. 32)*

Plaintiff asserts that the reactions of Mr. Capobianco, Mr. Landau, Mr. Knaus, and Dr. Tannoury to "anything that jeopardized this highly-lucrative [kickback] scheme," are relevant to the claims and defenses in this case.  (#185 at 16-18.)  Defendants argue that the request seeks documents pertaining to conduct that post-dates any alleged protected activity by plaintiff and therefore cannot be relevant to his employment claims.  (#192 at 16.)  They further argue that, even if such evidence is tangentially relevant, the request fails to meet Rule 26's proportionality standard because the burden on defendants to identify such documents far outweighs any relevance to plaintiff's remaining employment claims.[11]  *Id.*

The court sides with plaintiff.  Plaintiff's Modified RFP C3 is targeted to a limited number of persons, within a closed date range, about communications concerning the subject of plaintiff's complaints.  Although the requested communications post-date plaintiff's complaints, whether individuals he alleges were directly involved in the conduct and supervised him discussed the very conduct about which he complained is relevant both to defendants' knowledge and their motivation to retaliate.  For instance, whether any of these individuals continued to engage in purportedly illegal conduct notwithstanding knowledge of plaintiff's reports could tend to show a motivation for retaliation; so, too, might communications indicating frustration at being forced to end the alleged scheme, or any hopes to rekindle it following a lay-low period.  Defendants claim,

---

[11] Defendants also correctly point out that plaintiff's citation to *United States ex. Rel. Long v. Janssen Biotech, Inc.*, No. 16-cv-12182-FDS, 2022 WL 4124017, at *2 (D. Mass. Sept. 9, 2022) is inapposite because in that case, the government declined to intervene and the relator was pursuing her FCA allegations against defendant Janssen Biotech, Inc. on her own.  Therefore, the court's holding as to the scope of discovery in that case does not support expanding the scope of discovery in this employment matter.

however, that they have no such documents in their possession, custody, or control.  (#192-1 at 20.)

As discussed above, defendants made clear at the hearing their position that no "gift" or "free" items were provided to healthcare providers.  The court assumes that this position affected defendants' search and production in response to Modified RFP C3.  Therefore, the court orders defendants to search for and produce any documents involving the individuals identified in Modified RFP C3 concerning items provided to Dr. Tannoury,[12] whether the items provided were "free" or not.

### 4. All documents reflecting or discussing any decision to refrain from providing Dr. Tannoury with gifts (RFP Nos. 30, 31 & 33)

Defendants dispute the relevance of plaintiff's Modified RFP C4 and claim that they do not have any responsive documents.  (#192-1 at 20-21.)  Plaintiff argues that any decision to stop providing Dr. Tannoury with gifts relates to the "largesse" of the purported scheme, which in turn would tend to show defendants' motivation for retaliating against the whistleblower.  (#185 at 16-18.)

Plaintiff has the better argument, for the same reasons discussed above with respect to Modified RFP C3.  Additionally, the court notes that the timing of any such decisions are relevant to the knowledge and causation elements of plaintiff's claims.  Once again, the court understands that defendants' search and production may have been limited by its position on plaintiff's request for information related to "gifts."  Therefore, the court orders defendants to search for and produce documents reflecting or discussing any decision to refrain from providing Dr. Tannoury with any items or benefits.

---

[12] As defendants argue, plaintiff has not adequately asserted the relevance of the broader "healthcare providers" in Modified RFP C3, and so the court limits its Order to items provided to Dr. Tannoury.

5.  *All documents reflecting the date of Matt Capobianco's termination and all documents
    reflecting or discussing the grounds for such termination (RFP Nos. 17 & 32)*

Plaintiff argues that Modified RFP C5 is relevant because whether Mr. Capobianco, a purported "bad actor," was treated better than plaintiff is relevant to defendants' motivation to retaliate against plaintiff. (#192-1 at 21.)  At the hearing, plaintiff's counsel clarified that Mr. Capobianco is a compelling "comparator" in proving pretext at trial.  Defendants argue that such discovery is tangentially relevant, at best, and near certain to be privileged, and therefore disproportional to the needs of the case. (#192 at 18-19.)

The court finds that Modified RFP C5 seeks relevant discovery under Rule 26's broad definition; however, it is disinclined to require defendants to engage in the exercise of searching for and logging all documents responsive to Modified RFP C5.  The court therefore orders defendants to make a good faith effort to uncover and produce non-privileged documents responsive to Modified RFP C5.

If all responsive documents are privileged, defendants shall so certify.  But defendants' obligation does not end there:  defendants have expressed a willingness to "consider what ways, if any, exist to provide [p]laintiff with the information he is seeking" short of waiving privilege or logging all such documents. (#192-1 at 22.)  Therefore, following defendants' certification, plaintiff shall communicate to defendants with particularity what information he seeks from Modified RFP C5, and the parties shall confer to determine how defendants shall produce such information without waiving privilege.  If while responding to plaintiff's defined request defendant uncovers non-privileged documents responsive to Modified RFP C5, defendant shall produce all such documents, notwithstanding their certification, in accordance with the Federal Rules.  *See* Fed. R. Civ. P. 26(e).

III.    Conclusion.

        For the reasons discussed above, plaintiff's motion to compel (#184) is allowed in part and denied in part.  Defendants' responses in compliance with this Order shall be served no later than April 29, 2024.


April 8, 2024                                        /s/ M. Page Kelley
                                                    M. Page Kelley
                                                    United States Magistrate Judge

21