IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEKSEJ GUSAKOVS,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, and DEPUY SYNTHES SALES, INC.<br><br>Defendants. | No. 17-cv-11502-DJC |

**DEFENDANTS JOHNSON & JOHNSON AND DEPUY SYNTHES SALES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), Defendants Johnson & Johnson and DePuy Synthes Sales, Inc. (together "Defendants") move to compel the production of the disclosure statement(s) and related factual information that Plaintiff alleges he "felt duty bound" to provide to the United States Attorney's Office ("USAO"), the United States Department of Justice ("DOJ"), and the Commonwealth of Massachusetts (collectively the "government"). Second Amended Complaint ("SAC"), Dkt. 107 ¶ 36. That information lies at the heart of Plaintiff's retaliation claims, but he continues to shield it from discovery by invoking inapplicable or, at minimum, waived privileges and protections. The Court should put an end to Plaintiff's obstruction.

**INTRODUCTION**

Plaintiff alleges that he was retaliated against because, *inter alia*, he engaged in activity protected by the False Claims Act ("FCA"). The activity, according to Plaintiff, included his May

1

2017 report to the government of alleged "unlawful conduct" by Defendants. SAC, Dkt. 107 ¶ 36. Reporting unlawful conduct, however, is not protected conduct under the FCA. Plaintiff must prove that he reported "conduct that could reasonably lead to an FCA action based on the submission of a false claim." *Guilfoile v. Shields Pharmacy, LLC*, No. 16-CV-10652, 2021 WL 4459515, at \*6 (D. Mass. Sept. 29, 2021) (Casper, J.).

The content of Plaintiff's disclosures to the government, therefore, lie at the heart of this case. He contends, without support, that he reported the submission of false claims. But he continues to withhold his "written disclosure of substantially all material evidence and information" that he was required to provide to the government, 31 U.S.C. § 3730(b)(2); *see also* Mass. Gen. Laws ch. 12, § 5C(3), along with the documents and communications that accompanied that disclosure(s). Specifically, Plaintiff continues to assert the work product doctrine, investigative process privilege, and common-interest doctrine. None apply to the factual information that Plaintiff seeks to shield and, in any event, all must yield to Plaintiff's continued reliance on his May 2017 report to establish a key element of his retaliation claims, and to Defendants' (and the Court's) substantial need for the information.

This Court should compel the production of documents responsive to Defendants' Request for Production Nos. 1–4 because no privilege or protection applies to that information and, even if one did, Plaintiff has waived the ability to shield discovery into disclosures by continuing to use them as a sword.

## BACKGROUND

Plaintiff filed his original complaint under seal on August 11, 2017, alleging violations of the FCA and the Massachusetts False Claims Act ("MFCA"). Complaint, Dkt. 2. He filed his first amended complaint, again under seal, on March 29, 2018, in which he added various retaliation-

related claims, including retaliation claims under the FCA and MFCA. First Amended Complaint ("FAC"), Dkt. 13. Plaintiff, the government, Defendants, and former Defendant DePuy Synthes, Inc. agreed to settle the FCA and MFCA claims on January 17, 2023, and those claims were dismissed with prejudice ten days later, leaving only Plaintiff's retaliation-related claims. Order of Dismissal, Dkt. 73.

Plaintiff moved for leave to file a second amended complaint on March 3, 2023, Dkt. 91, and Defendants opposed and moved to dismiss both the first amended complaint and the proposed second amended complaint ("PSAC"), Dkt. 96–100. The Court issued its memorandum and order on the motion to amend and motions to dismiss ("MTD Order") on June 16, 2023, in which it allowed Plaintiff's motion for leave to file the SAC, denied Defendants' motion to dismiss the FAC, and allowed in part and denied in part Defendants' motion to dismiss the PSAC. Dkt. 105 at 2. Following the Court's order, three of Plaintiff's claims remain: retaliation under the FCA, retaliation under the MFCA, and "wrongful termination in violation of public policy [under Massachusetts law], insofar as it relates to sterilization incidents and the reporting of same." *Id.*

Defendants issued their first set of requests for production ("RFPs") to Plaintiff on October 20, 2023. *See* Exhibit A to Declaration of Jarrad Kirsh ("Kirsh Decl."). RFP Nos. 1 and 2 request documents related to Plaintiff's alleged protected conduct under the FCA. RFP No. 1 requests that Plaintiff produce:

> All Documents and communications concerning, relating to, or referring to any "lawful acts involved in [Plaintiff's] reporting to the government about potential violations of the federal False Claims Act by . . . Defendants," as alleged in Paragraph 62 of the Second Amended Complaint, including but not limited to any and all disclosures made pursuant to 31 U.S.C. § 3730(b)(2).

Exhibit A to Kirsh Decl. at 6 (alterations in original). Similarly, RFP No. 2 requests that Plaintiff produce:

> All Documents and communications concerning, relating to, or referring to any "lawful 'whistleblowing' conduct" alleged in Paragraph 63 of the Second Amended Complaint, including but not limited to any and all disclosures made pursuant to 31 U.S.C. § 3730(b)(2).

*Id.*

RFP Nos. 3 and 4 request documents related to Plaintiff's alleged protected conduct under the MFCA. RFP No. 3 requests that Plaintiff produce:

> All Documents and communications concerning, relating to, or referring to any "lawful acts involved in [Plaintiff's] reporting to the government about potential violations of the Massachusetts False Claims Act by . . . Defendants," as alleged in Paragraph 66 of the Second Amended Complaint, including but not limited to any and all disclosures made pursuant to Mass. Gen. Laws ch. 12, § 5C(3).

*Id.* (alterations in original). Similarly, RFP No. 4 requests that Plaintiff produce:

> All Documents and communications concerning, relating to, or referring to any "lawful 'whistleblowing' conduct" alleged in Paragraph 67 of the Second Amended Complaint, including but not limited to any and all disclosures made pursuant to Mass. Gen. Laws ch. 12, § 5C(3).

*Id.*

Plaintiff served his responses to Defendants' RFPs on November 20, 2023. *See* Exhibit B to Kirsh Decl. His response to all four RFPs was the same:

> Plaintiff objects to this request to the extent that it seeks documents or information protected by the attorney-client privilege, the attorney-work product doctrine, the joint prosecution or common interest privilege, the marital privilege, the doctor-patient privilege, or any other applicable privilege or protection[1]. Plaintiff further objects to this request as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and the information sought is not proportional to the needs of the case.
>
> Subject to and without waiving these objections, Plaintiff will produce non-privileged documents responsive to the request.

---

[1] Plaintiff's response to RFP No. 2 contains most of the list of the privilege-related objections twice, in what Defendants assume is a copy-and-paste error, but otherwise is identical to his response to RFP Nos. 1 and 3–4. *See* Exhibit B to Kirsh Decl. at 4. In addition, the attorney-client privilege, the marital privilege, and the doctor-patient privilege clearly do not apply here (and Plaintiff has not listed them in his privilege log as protecting the documents at issue) and as such are not addressed in this motion.

4

Exhibit B to Kirsh Decl. at 4–6.

On February 2, 2024, Defendants wrote Plaintiff a letter regarding certain identified deficiencies in the productions they had received from Plaintiff to date. *See* Exhibit C to Kirsh Decl. Regarding RFP Nos. 1 and 2, Defendants wrote:

> **Request Nos. 1 and 2** both request documents and communications related to, *inter alia*, Plaintiff's reporting to the federal government. To date, Plaintiff has produced no documents related to such reporting, despite stating in his Responses to these Requests that he "will produce non-privileged documents responsive to the request." Plaintiff alleges that his reporting to the federal government constitutes protected conduct, Second Amended Complaint ("SAC") ¶ 53, an essential element to at least some of his surviving employment retaliation claims, and written disclosures to the federal government were required before Plaintiff could bring a claim under the federal False Claims Act in his initial complaint in August 2017, *see* 31 U.S.C. § 3730(b)(2). As such, there is no basis for not producing these documents. Accordingly, please promptly produce all documents responsive to these Requests, provide a privilege log listing with the appropriate level of detail any such documents being withheld from production for privilege, state if Plaintiff is withholding any documents on the basis of the non-privileged grounds enumerated in Plaintiff's objections to these Requests, and/or state that Plaintiff is not producing any documents in response to these Requests along with the basis for the non-production.

Exhibit C to Kirsh Decl. at 2. Defendants' letter contained a similar request related to RFP Nos. 3 and 4:

> **Request Nos. 3 and 4** both request documents and communications related to, *inter alia*, Plaintiff's reporting to the Commonwealth of Massachusetts. To date, Plaintiff has produced no documents related to such reporting, despite stating in his Responses to these Requests that he "will produce non-privileged documents responsive to the request." As written disclosures to the Massachusetts Attorney General were required before Plaintiff could bring a claim under the Massachusetts False Claims Act in his initial complaint in August 2017, *see* Mass. Gen. Laws ch. 12, § 5C(3), there is no basis for not producing these documents. Accordingly, please promptly produce all documents responsive to these Requests, provide a privilege log listing with the appropriate level of detail any such documents being withheld from production for privilege, state if Plaintiff is withholding any documents on the basis of the non-privileged grounds enumerated in Plaintiff's objections to these Requests, and/or state that Plaintiff is not producing any documents in response to these Requests along with the basis for the non-production.

*Id.* at 2–3.

Plaintiff responded to Defendants' letter on February 16, 2024. *See* Exhibit D to Kirsh Decl. In relevant part, Plaintiff stated:

> We did agree to produce non-privileged documents and communications with the government and we have done so. By way of illustrated examples, please see the following documents:
>
> [List of five documents by Bates number]
>
> Certain documents are being withheld due to privilege. Such documents are referenced in the Privilege Log that accompanies this letter.

Exhibit D to Kirsh Decl. at 2–3. Plaintiff also produced a privilege log that contains 27 emails identified as being to or from the federal government, plus three entries identified as constituting Plaintiff's mandatory factual disclosures. *See* Exhibit E to Kirsh Decl., Doc-IDs GPL_0005, GPL_0009, GPL_0014, GPL_0016–18, GPL_0020–35, GPL_0038–44, GPL_0056. Each of those entries lists privilege bases of 1) Attorney Work Product, 2) Common Interest, and 3) "Investigative."

None of the five documents identified by Plaintiff in his letter are direct, contemporaneous communications between Plaintiff or his attorneys on his behalf and the government that contain the actual factual reporting that Plaintiff alleges constitutes an instance of protected conduct. Indeed, in his letter Plaintiff directed Defendants to (1) the January 2023 settlement agreement between the government, Plaintiff, Defendants, and former defendant DePuy Synthes, Inc. which settled the underlying FCA and MFCA claims in this case; (2) the June 2023 criminal indictment of former DePuy Synthes Sales, Inc. sales consultant Matthew Capobianco; (3) an August 2017 FBI Receipt for the return of two cell phones to Plaintiff; (4) an October 2021 Statement of Allegations in a Board of Registration in Medicine matter against Dr. Tony Tannoury relating to events that were not part of the government's investigation of Defendants that Plaintiff alleges

6

resulted from his alleged protected conduct and have not otherwise been part of this case; and (5) a July 2023 government Submission Regarding Condition of Release No. 7 Pertaining to No Contact List in the criminal case against Mr. Capobianco.

With one exception, these documents post-date Plaintiff's alleged protected conduct by years, and the property return receipt from August 2017 says nothing about any alleged protected conduct by Plaintiff. Contemporaneous documents containing the actual factual reporting in which Plaintiff allegedly engaged are also absent from the rest of Plaintiff's document productions.

In addition, Defendants disagree that Plaintiff's disclosure statements and other factual communications and related factual document submissions provided to the government are protected by privilege. Defendants explained this to Plaintiff in a letter dated March 29, 2024.[2] *See* Exhibit F to Kirsh Decl. Plaintiff responded with a letter on April 7, 2024, in which he maintained his position that such documents were privileged and stated that Defendants would be able to sufficiently obtain the requested information through their upcoming deposition of Plaintiff. *See* Exhibit G to Kirsh Decl. Counsel for Defendants Jarrad Kirsh and counsel for Plaintiff Royston Delaney conferred via email on May 1, 2024 and May 2, 2024 and confirmed that the parties would not reach agreement on the production of these documents.[3] *See* Exhibit H to Kirsh Decl. This motion follows.

### ARGUMENT

Under Fed. R. Civ. P. 26(b)(1), Defendants are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." The materials Defendants

---

[2]    The relevant portion of Defendants' letter refers to RFP Nos. 1–5. While there is overlap between RFP Nos. 1–4 and RFP No. 5, Defendants are not seeking to compel the production of additional documents in response to RFP No. 5 at this time, though they reserve the right to do so should it become necessary in the future.

[3]    Charles Kester and Ilyas Rona for Plaintiff and Mark Seltzer, Hannah Bornstein, and Brianna Portu for Defendants were also included on these emails.

seek—factual communications with and related factual documents provided by Plaintiff to the government that Plaintiff alleges constitute instances of protected conduct—are highly relevant to Defendants' case and are not privileged.

I.    **Plaintiff's Disclosure Statements and Other Factual Communications and Documents Provided to the Government Are Centrally Relevant and Neither Privileged nor Protected.**

In his SAC, Plaintiff asserts that he reported alleged "unlawful conduct" by Defendants to the government. SAC, Dkt. 107 ¶ 36. But reporting unlawful conduct (even if that alleged conduct may have occurred) is not enough. Under the FCA and MFCA retaliation provisions, Plaintiff must prove that he reported "conduct that could reasonably lead to an FCA action based on the submission of a false claim." *Guilfoile*, 2021 WL 4459515, at \*6; *see also Guilfoile v. Shields*, 913 F.3d 178, 189 (1st Cir. 2019) ("A plaintiff alleging FCA retaliation need only plausibly plead . . . conduct that could reasonably lead to an FCA action based on the submission of a false claim."); *United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 274 (D. Mass. 2015) (stating that the MFCA is construed consistently with the FCA), *aff'd sub nom. Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016).

Reporting sterilization concerns alone, for example, would not meet that standard. MTD Order, Dkt. 105 at 19 (finding that "the FCA does not provide a comprehensive statutory remedy" for a wrongful termination claim "based on . . . sterilization incidents and the reporting of the same"). Nor would reporting "entertainment and gifts as inducements to healthcare providers," SAC, Dkt. 107 ¶ 36, without some connection to false claims. *See Guilfoile*, 913 F.3d at 190 (noting that, for a claim to be false under the FCA because of a violation of the Anti-Kickback Statute ("AKS"), there must be "a sufficient causal connection between an AKS violation and a claim submitted to the federal government").

Defendants require the requested information to identify what, specifically, Plaintiff reported to the government, and to defend against his assertion that it constituted FCA and MFCA protected activity. The information that Defendants seek includes statutorily required disclosures that Plaintiff must have made to the government, *see* 31 U.S.C. § 3730(b)(2); Mass. Gen. Laws ch. 12, § 5C(3), and other factual communications and documents that Plaintiff submitted to the government.

### a. The Factual Disclosure(s) Plaintiff Provided to the Government are Not Protected Attorney Work Product.

Plaintiff is withholding the disclosure statements and other factual communications and submissions provided to and received from the government on the basis of the attorney work product protection. *See* Exhibit E to Kirsh Decl., Doc-IDs GPL_0005, GPL_0009, GPL_0014, GPL_0016–18, GPL_0020–35, GPL_0038–44, GPL_0056. While Defendants do not agree that these disclosure statements or other factual communications and factual submissions contain attorney work product, *see Diaz v. Devlin*, No. 4:16-CV-40039-TSH, 2018 WL 1610541, at *8 (D. Mass. Apr. 3, 2018) (The attorney work product doctrine "does not extend to materials that 'contain purely factual statements and do not include any opinions or impressions.'" (quoting *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 145 (D. Mass. 2014))), *objections overruled*, 327 F.R.D. 26 (D. Mass. 2018), even if the Court determines that they do, such work product does not render the disclosure statements and other factual communications and factual submissions exempt from production, because Defendants have a substantial need for the materials and cannot obtain the materials elsewhere.

9

### i. Numerous Courts Have Held That False Claims Act Disclosure Statements are not Subject to a Blanket Privilege.

The First Circuit has not addressed whether a privilege attaches to disclosure statements submitted to the United States government in compliance with 31 U.S.C. § 3730(b)(2) or to the Commonwealth of Massachusetts in compliance with Mass. Gen. Laws ch. 12, § 5C(3). However, a majority of federal courts around the country have rejected a *per se* classification of disclosure statements as opinion work product. Instead, this majority applies a more nuanced analysis, guided by Fed. R. Civ. P. 26(b) to determine: 1) whether the disclosures contain work product, and 2) whether a defendant has demonstrated the requisite need to overcome that classification.

### ii. Ordinary Work Product is not Subject to Absolute Protection.

Under the Federal Rules of Civil Procedure, a party ordinarily may not obtain discovery of documents that were prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). However, this protection is not without limits. *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 10 (D. Mass. 2000) ("Unlike the attorney-client privilege . . . which is usually absolute if not waived, the work-product doctrine . . . has its limits.").

Work product is divided into two categories and subject to different levels of protection. *Diaz*, 2018 WL 1610541, at *9. "Namely, 'courts . . . distinguish between 'opinion' work product and 'ordinary' work product—the former category encompassing materials that contain the mental impressions, conclusions, opinions or legal theories of an attorney, the latter category embracing the residue.'" *Id.* (alteration in original) (*quoting In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988)); *City of Springfield*, 196 F.R.D. at 10 ("Rule 26(b)(3) contemplates two types of work product, each with its own level of immunity: 'ordinary' work product, for which a party must demonstrate a 'substantial need,' and 'opinion' work product with greater immunity.").

10

Ordinary work product receives only qualified protection. "Under Rule 26(b)(3)(A)(ii), [ordinary work product] is discoverable if the party seeking it 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Diaz*, 2018 WL 1610541, at *9 (*quoting* Fed. R. Civ. P. 26(b)(3)(A)(ii)); *see Lobel v. Woodland Golf Club of Auburndale*, No. CV 15-13803-FDS, 2016 WL 7410776, at *1 (D. Mass. Dec. 22, 2016); *Le v. Diligence, Inc.*, 312 F.R.D. 245, 247 (D. Mass. 2015) ("Documents and tangible things prepared by or for a party or its representative, in preparation for trial or in anticipation of litigation, are not discoverable absent a showing of substantial need, undue hardship, and inability to obtain their substantial equivalent by other means."). At most, the materials that Plaintiff seeks to withhold here are ordinary work product to which Defendants are entitled. *See, e.g.*, *United States v. Mount Sinai Hospital*, 185 F. Supp. 3d 383, 397–400 (S.D.N.Y. 2016) (rejecting bright line rule that disclosure statements are opinion work product); *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 231 F.R.D. 378, 383–84 (N.D. Ill. 2005) (classifying portions of disclosure statements as ordinary work product); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1345–46 (E.D. Mo. 1996) (classifying disclosure statement as ordinary work product and ordering production); *United States ex rel. Burns v. A.D. Roe Co., Inc.*, 904 F. Supp. 592, 594 (W.D. Ky. 1995) (ordering production of relator's disclosure statement because "[i]t is simply a recitation of factual information" and "Defendant's need for this document is great and its equivalent cannot be obtained by other means"); *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 838–39 (N.D. Ill. 1993) (ordering production of relators' disclosure statement).

Courts that have permitted production of disclosure statements and other factual communications by relators to the government often have utilized *in camera* review to determine

11

and redact those portions of disclosure statements and other communications that contain opinion work product. *See e.g., United States ex rel. Yannacopoulos*, 231 F.R.D. at 386 (undertaking *in camera* review of disclosure statements and determining which portions contained opinion work product); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 400–01 (D. Colo. 1992) (same).

Defendants do not oppose an *in camera* review by the Court of any proposed redactions prior to production. Defendants do not seek Plaintiff's legal conclusions, nor do Defendants seek legal analysis or strategic dialogue between Plaintiff's counsel and the government. However, to the extent that Plaintiff might have attached documents, data, or other factual submissions to emails, or described factual events in an email to the government, without resort to legal analysis, Defendants seek production of the statutorily-required factual information provided, including the date when such materials were provided. Defendants simply seek the material facts provided by Plaintiff to the government, which he alleges he reported—and which he put at issue as part of this action—as part of his protected conduct.

### iii. Defendants Require Access to Plaintiff's Disclosure Statements and Other Factual Communications and Submissions Provided to the Government in Order to Determine Whether Plaintiff Engaged in Protected Conduct.

The content, timing, and extent of Plaintiff's alleged reports to the government are fundamental to Defendants' defenses. As discussed above, proving retaliation under both the FCA and MFCA requires that Plaintiff prove that he engaged in protected conduct, and for conduct to be protected, it must reasonably be able to lead to an FCA claim. Reporting alleged sterilization incidents is insufficient to meet this burden. Thus, whether Plaintiff reported facts that could reasonably lead to a FCA claim—as opposed to, for example, merely reporting conduct related to alleged sterilization incidents—is an essential element to two of Plaintiff's three remaining claims.

12

Defendants can only determine what Plaintiff told the government and when he did so by obtaining access to the factual disclosures and factual submissions that he actually made.

In his April 7, 2024 letter, Plaintiff argues that deposing him on these topics would be sufficient, such that Defendants do not have substantial need for his factual disclosures. *See* Exhibit G to Kirsh Decl. at 2. This is plainly incorrect. Plaintiff's alleged reporting to the government occurred ***almost seven years ago***, and his memory of exactly what he reported certainly has faded since then. This is especially true when Plaintiff potentially met with the government more than once during a government investigation that spanned ***almost six years***, *compare, e.g.*, SAC, Dkt. 107 ¶ 36 ("On May 22, 2017, he was interviewed at the U.S. Attorney's Office in Boston.") *with* Exhibit E to Kirsh Decl., Doc-IDs GPL_0034–35 (November 14 and 15, 2017 emails with government discussing potential, and then actual, government interview of Plaintiff), leading to the risk that he will conflate what he reported at what time during any deposition testimony—a risk that is exacerbated by the incentive that Plaintiff has to recall that he reported conduct that could reasonably lead to an FCA claim as early as possible. And the deposition will become even less useful to Defendants if Plaintiff's counsel instructs Plaintiff not to answer questions about the contents of his reports because of the various asserted privileges, making the deposition clearly an insufficient method for Defendants to obtain the information they need. Given these risks and this incentive, it is apparent that Defendants should not have to rely on Plaintiff's memory of these long-ago events, especially where there is a written record of precisely what was reported.

The cases to the contrary that Plaintiff cites to in his letter to Defendants, Exhibit G to Kirsh Decl. at 2, both relate to FCA claims where the defendants could use the upcoming depositions to explore the relators' knowledge of those FCA allegations—and where relators had produced other discovery related to those allegations—not to ***retaliation*** claims where what the

relators actually reported is an element of the claim itself. *See United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, No. 00-CV-737, 2004 WL 868271, at *2–3 (E.D. Pa. Apr. 21, 2004); *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.*, No. 4:12-CV-543, 2015 WL 4609742, at *4 (E.D. Tex. July 31, 2015). Such cases are therefore inapposite. Indeed, while the "substantial need" balancing test may come out differently in cases regarding claims of substantive FCA violations, here—where all substantive FCA allegations have been settled and dismissed, and only retaliation claims remain—the factual disclosures take on heightened importance, particularly since Plaintiff has alleged that his reporting to the government is an instance of protected conduct.

Numerous other federal courts, including at least one court in this district, have permitted the production of such information. *See United States ex rel. Booker v. Pfizer, Inc.*, No. 10-cv-11166, Dkt. 139 (D. Mass. Jun. 15, 2015) (docket order granting defendant's motion to compel relator's government disclosure statements). The Court in *Booker* found it inappropriate that Relators asserted privilege over the disclosure statements, forced Defendant to take depositions on the topic, and then intended to use the statements to oppose Defendant's motion for summary judgment. *See* Transcript of Motion Hearing at 26–31, *id.*, Dkt. 140. Defendants here face the same situation: Plaintiff is asserting privilege over the factual disclosures and says his deposition will be sufficient, but he also is using what he allegedly disclosed as a sword to prove his employment retaliation claims. Plaintiff's continued withholding of the disclosure statements and related factual communications with the government from production is equally inappropriate.

Defendants have a substantial need to understand the factual information that Plaintiff provided to the government. Defendants do not have any other avenue by which to obtain this information, as it is uniquely in the hands of the Plaintiff. Defendants therefore satisfy Federal

14

Rule of Civil Procedure 26, and Plaintiff's disclosure statements and other factual communications and factual submissions provided to the government should be produced.

### b. Plaintiff Cannot Assert the "Investigative" Privilege.

Plaintiff also has asserted that "Investigative" privilege protects his communications with the government from disclosure. "The federal courts have recognized a qualified common-law privilege . . . for law enforcement investigatory information." *United States v. Lilly*, 185 F.R.D. 113, 115 (D. Mass. 1999) (alteration in original) (quoting *Kattar v. Doe*, No. CIV.A. 86-2206-MC, 1987 WL 11146, at *1 (D. Mass. Jan. 27, 1987)). However, ***the investigatory privilege "generally does not belong to individuals and can only be asserted by a governmental entity."*** *Shea v. Porter*, No. CV 1:08-12148-FDS, 2013 WL 12318557, at *4 (D. Mass. Apr. 9, 2013) (emphasis added); *see also Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 83 (D.P.R. 2006) ("[T]he law enforcement investigatory privilege 'may be invoked only by government law enforcement authorities.'" (quoting *Three Crown L.P. v. Salomon Brothers, Inc.*, No. 92 CIV. 3142 (RPP), 1993 WL 277182, at *1 (S.D.N.Y. July 21, 1993))). Plaintiff is not a governmental entity, and therefore cannot assert this privilege to withhold from production his factual disclosures and related factual communications with the government.

### c. The Common Interest Doctrine is Inapplicable as No Underlying Privilege Applies to the Factual Disclosures.

Finally, Plaintiff asserts that his factual disclosures are exempt from disclosure because of the common interest doctrine. The common interest doctrine creates an exception whereby two parties can share privileged information without waiving the ability to claim that such information is privileged. It does not, however, create an independent basis of privilege. *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002) ("The common-interest doctrine . . . is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived

15

when privileged information is disclosed to a third party." (internal quotation marks omitted)). Where, as here, there is no underlying privilege or protection, Plaintiff cannot rely on the common interest doctrine as a means to avoid production.

As no privilege or protection applies to the factual disclosures and related factual communications between Plaintiff or his attorneys and the government, Plaintiff has no justification for failing to produce such obviously relevant material.

**II.      Any Privileges Asserted are Nonetheless Waived, as Plaintiff has Put the Contents of the Disclosure Statements at Issue.**

A party *waives* any claim to privilege when, in civil litigation, that party puts the communications at issue. *Urban v. Fed. Home Loan Mortg. Corp.*, 79 F. Supp. 3d 307, 313 (D. Mass. 2015) ("It is settled law that by placing privileged communications . . . 'at issue' in civil litigation, a party waives any applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party." (alteration in original) (*quoting F.D.I.C. v. R.W. Beck, Inc.*, No. CIV.A. 01-CV-11982-RGS, 2004 WL 1474579, at *1 (D. Mass. July 1, 2004))). This maxim flows from the unfairness to the other party when privileged documents are in play. *See id.* "[C]ourts use a three-factor test in determining whether an at-issue waiver has occurred: (1) whether the proponent of the privilege took some affirmative step such as filing a pleading; (2) whether the affirmative act put the privileged information at issue by making it relevant to the case; and (3) whether upholding the privilege would deny the opposing party access to information vital to its case." *Traverse v. Gutierrez Co.*, No. CV 18-10175-DJC, 2019 WL 12291347, at *6 (D. Mass. May 6, 2019) (Casper, J.). They also "require[] that the privileged information be not only relevant, but also actually relied upon by the privilege holder to support a claim or defense in the case." *Id.* Overall, "'[t]he privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that

16

will be unavailable to the defendant if the privilege prevails.'" *Urban*, 79 F. Supp. 3d at 314 (*quoting R.W. Beck*, 2004 WL 1474579, at *1).

Plaintiff took the affirmative step of filing employment retaliation claims against Defendants. In so doing, he made his disclosure statements relevant to his case because he alleges that such reporting to the government constitutes the protected conduct that is a required element of those claims. If the Court were to uphold the privilege, Defendants would not have access to vital information regarding what Plaintiff reported to the government and when he made those reports, which is critical to their defense of Plaintiff's allegations. And since Plaintiff alleges that his reporting satisfies the protected conduct element of his claims, he is actually relying on the reports to support them. As such, Plaintiff has waived privilege over his factual communications with the government by directly placing them "at issue" in this litigation. They therefore must be produced.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court compel Plaintiff to produce all disclosure statements and other factual communications and submissions provided to the government.

Dated: May 2, 2024

Respectfully submitted,

DEFENDANTS
JOHNSON & JOHNSON and DEPUY SYNTHES
SALES, INC.

By their attorneys,


*/s/ Mark D. Seltzer*
Mark D. Seltzer, Esq.
(BBO No. 556341)
Hannah R. Bornstein, Esq.
(BBO No. 670433)
Brianna N. Portu, Esq.
(BBO No. 698715)
Jarrad Kirsh, Esq.
(BBO No. 710535)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109-2835
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
Email: mseltzer@nixonpeabody.com


## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2024, I electronically filed the foregoing document with the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that the parties or their counsel of record registered as ECF Filers will be served by the CM/ECF system.


*/s/ Mark D. Seltzer*

18