UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALEKSEJ GUSAKOVS,

     *Plaintiff,*

   v.

JOHNSON & JOHNSON and
DEPUY SYNTHES SALES, INC.,

     *Defendants.*

Civil Action No.:
1:17–cv–11502–DJC

### PLAINTIFF'S MOTION TO COMPEL FINANCIAL DISCOVERY

Pursuant to Federal Rules of Civil Procedure 26(b) and 37(a), Plaintiff Aleksej Gusakovs ("Plaintiff") respectfully moves this Court to compel Defendants Johnson & Johnson and DePuy Synthes Sales, Inc. (collectively, "Defendants") to produce employee financial compensation data. The False Claims Act's remedial scheme authorizes back pay and front pay damages and black letter law requires that any damages calculation be grounded in concrete, verifiable facts. Hence, the information sought here is not merely relevant – it is indispensable.

Based on the prior motion practice in this case, Plaintiff is confident that the Court is familiar with the underlying facts and procedural events that have occurred.  Let's keep this brief.

1

## A. The False Claims Act Provides a "Make Whole" Remedy

The False Claims Act, 31 U.S.C. § 3730(h), provides a comprehensive retaliation remedy for employees who are discharged, demoted, suspended, threatened, harassed, or otherwise discriminated against because of lawful acts taken in furtherance of an FCA action. Section 3730(h)(2) sets forth the specific relief Congress authorized:

> All relief necessary to make the employee, contractor, or agent whole. Such relief shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h)(2).

A statutory remedy making the employee "whole" has been consistently interpreted to encompass both back pay and front pay. With respect to front pay, in *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001), the Supreme Court explained that "front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Id.*, at 846.

The First Circuit has approved calculating damages so as to include front pay, where such calculations are "reasonable." Such pay is a valuable piece of the employment damages model and can be awarded going forward for *decades*. In *Lestage v. Coloplast Corp.*, 976 F.3d 1 (1st Cir. 2020), a case brought under the same statutory scheme as this one, the plaintiff's damages expert projected the plaintiff's future wage losses over a *period of 20.4 years* — the full estimated span of the plaintiff's remaining working life. The jury accepted the expert's methodology and awarded more than two

2

decades of front pay. The defendant then moved for judgment as a matter of law and a new trial, attacking the expert's methodology as resting on "flawed methodology and unrealistic assumptions." The First Circuit rejected both arguments and upheld the jury award.

In this case, records of what Plaintiff would have earned had he not been retaliated against are relevant because of his stable employment history. Since his retaliation, Plaintiff has worked continuously at State Street Bank. His only job change in the last decade was brought about by Defendant's conduct in this case. The evidence will show that Alex Gusakovs was a good employee and would have remained at DePuy Synthes Sales, Inc. had he not been retaliated against.

Defendants have, without any attempt at justification, simply refused to provide financial compensation data for company employees. This is procedurally indefensible under the discovery rules – and Defendants know this.  Plaintiff surmises, however, that Defendants ultimately will seek to capitalize on their failure to produce this data. To wit, they likely will seek to exclude Plaintiff's damages expert report under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Defendants will argue that under Federal Rule of Evidence 702 and the *Daubert* line of cases, expert testimony on damages must be "based on sufficient facts or data" and must be "the product of reliable principles and methods" reliably applied "to the facts of the case." Fed. R. Evid. 702.

Without the discovery sought, Plaintiff must calculate damages on publicly available information for *similar* jobs in *similar* markets. Such calculations would be

3

vulnerable to an argument that any model built on generalized market data rather than on Defendants' own compensation records is critically flawed.

The road to the courthouse steps is strewn with inadmissible expert reports. One federal district court recognized in a challenge to a lost earnings model, that when an expert relies on published data rather than the actual records of the defendant, the analysis captures what similarly situated workers generally earn rather than what *this* plaintiff would specifically have earned at *this* employer. *See e.g. Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (damages expert excluded where methodology rested on assumptions not grounded in record evidence). The First Circuit's application of *Daubert* to economic experts is similarly demanding. An expert who cannot point to the defendant's own financial data as the foundation of her model faces significant *Daubert* vulnerability. This improper and unfair endgame is inevitable if Defendants are allowed to withhold this critically important information.

## B.  Plaintiff Seeks a Narrow Set of Records

Plaintiff only seeks the Wage and Tax Statements (also known as W-2s) that are directly relevant to the computation of back pay and front pay under 31 U.S.C. § 3730(h)(2) for the following employees of Defendants:

- Matthew Capobianco and his replacement(s): Matthew Capobianco and the employee(s) who held the same position at Boston Medical Center after his exclusion, from January 1, 2017 to December 31, 2025;

- <u>Regional Sales Managers</u>: Erik Knaus and the employee(s) who took over as Regional Sales Manager of Spinal Sales, from January 1, 2017 to December 31, 2025;

- <u>Northeast AVPs</u>: Mike Landau and the employee(s) who took over as Assistant Vice President of Spinal Sales in the Northeast region, from January 1, 2017 to December 31, 2025; and

- <u>VPs of Sales</u>: Travis Williams and the employee(s) who took over as Vice President of US Spine Sales, from January 1, 2017 to December 31, 2025.

- <u>Employees at Boston Medical Center</u>: all subsequent employees who had any sales responsibilities over, or who covered surgeries at, Boston Medical Center, regardless of title, and including but not limited to Sales Consultants, Sales Consultants 1, Sales Consultants 2, Senior Sales Consultants, Team Leads, and/or Associate Sales Consultants, from January 1, 2017 to December 31, 2025 along with job titles and job descriptions. This last category being necessary to ensure that plaintiff has a complete picture of the sales team covering BMC over years since plaintiff's departure from BMC.

Defendants cannot seriously contend that producing these records is burdensome – let alone *unduly* burdensome – nor is it disproportionate to the needs of the case. The proportionality factors under Rule 26(b)(1) all favor production: (1) the importance of the issues at stake (the False Claims Act's "make whole" remedy); (2) the amount in controversy (potentially a decade of back pay and two decades of front pay);

5

(3) the parties' relative access to information (Defendants have exclusive possession of all compensation records); and (4) the importance of the discovery in resolving the issues. These factors weigh heavily in Plaintiff's favor.

<strong><u>CONCLUSION</u></strong>

Compelling production of the requested financial data is the only remedy that preserves the integrity of both the discovery process and the evidentiary process. With Defendants' actual records, Plaintiff's expert can construct a damages model that satisfies the factual-foundation requirements of the controlling caselaw. For the foregoing reasons, Plaintiff respectfully requests that this Court direct Defendants to produce the records sought, within seven days of the Court's order.

Respectfully submitted,
PLAINTIFF ALEKSEJ GUSAKOVS,
By His Attorneys,

Dated:  June 19, 2026

/s/ Royston H. Delaney
Royston H. Delaney (BBO# 655666)
DELANEY KESTER LLP
28 State Street, Suite 802
Boston, Massachusetts 02109
(857) 498-0384
royston@delaneykester.com

Ilyas J. Rona, Esq. (BBO# 642964)
RONA & DURAN LLP
28 State Street, Suite 802
Boston, Massachusetts 02109
(617) 762-0103
ijr@ronaduran.com

Charles F. Kester, Esq. (*pro hac vice*)
DELANEY KESTER LLP
49 Boone Village, Suite 239

Zionsville, Indiana 46077
(818) 974-8627
charles@delaneykester.com

*Attorneys for Plaintiff Aleksej Gusakovs*

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I, Royston H. Delaney, hereby certify that prior to filing this motion, I conferred with counsel for the Defendants and attempted in good faith to resolve or narrow the issues presented in the motion. Accordingly, the provisions of L.R. 7.1 have been complied with.

Dated:  June 19, 2026                      /s/ Royston H. Delaney
                                           Royston H. Delaney

## CERTIFICATE OF SERVICE

I, Royston H. Delaney, hereby certify that on June 19, 2026, I caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system on all of the individuals registered to receive electronic service of documents filed in this case including counsel for Defendants Johnson & Johnson and DePuy Synthes Sales, Inc.

Dated:  June 19, 2026                      /s/ Royston H. Delaney
                                           Royston H. Delaney

7