UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALEKSEJ GUSAKOVS,<br><br>   *Plaintiff,*<br><br>  v.<br><br>JOHNSON & JOHNSON and<br>DEPUY SYNTHES SALES, INC.,<br><br><br>   *Defendants.* | Civil Action No.:<br>1:17–cv–11502–DJC |

**PLAINTIFF'S MOTION TO COMPEL NON-PARTY MATTHEW CAPOBIANCO'S PRODUCTION OF GOVERNMENT DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26(b) and 37(a), Plaintiff Aleksej Gusakovs ("Plaintiff") respectfully moves this Court to compel non-party Matthew Capobianco to produce the documents provided to him by the United States government.

**PROCEDURAL BACKGROUND**

On or about June 22, 2023, the United States charged Matthew Capobianco with eight counts of wire fraud in violation of 18 U.S.C. § 1343, for allegedly causing Boston Medical Center ("BMC") to overpay for hundreds of thousands of dollars of surgical products. The government also charged Mr. Capobianco with one count of making false statements to FBI agents in violation of 18 U.S.C. § 1002(a)(2). (Exhibit 1) (the "Criminal Case")

One section of the indictment was entitled "*Interference with Hospital-1's Sterilization Process*" and alleged, inter alia, that in the fall of 2016 Mr. Capobianco attempted to

1

bypass BMC's sterilization process. The indictment elaborated on the steps taken by "Sales Rep-1" (Alex Gusakovs) to prevent that from happening. The indictment also described a second incident on May 30, 2017, when Mr. Gusakovs prevented another near disaster by alerting the hospital to the risk which Mr. Capobianco posed. That night Mr. Capobianco was interviewed by the FBI and the indictment followed.

Ultimately, and for reasons best known to the government, those charges were dismissed on January 30, 2026. The very day the criminal charges were dismissed, counsel for Plaintiff sent a litigation preservation letter to Mr. Capobianco. Following the resumption of active ligation in this case, Plaintiff issued a subpoena *duces tecum* (the "Subpoena") and served it on Mr. Capobianco, seeking documents which the United States provided to him in the course of the prosecution:

> All documents and communications received from, or provided to You or your attorneys by, the federal government in connection with Your criminal prosecution or criminal case 1:23-cr-10164-RGS, including but not limited to any "Brady" material, "Jencks material," video recordings, audio recordings, photographs, grand jury or other transcripts, third-party records, or any documents prepared by members of law enforcement or employees of the United States Attorney's office, such as memoranda, reports, summaries, letters, witness statements, or documents reflecting or summarizing witness interviews.

Exhibit 2, as amended March 26, 2026, Request No. 1 ("Request No. 1")

On April 10, 2026, Mr. Vien, on behalf of Mr. Capobianco, issued a series of objections to the Subpoena (Exhibit 3). On May 4, 2026, Mr. Vien appeared before this Court and argued that, among other things, the protective order in the Criminal Case prevented compliance with the Subpoena. (Exhibit 4 at 12:41)

2

Following that hearing, Mr. Gusakovs filed a motion with the court in the Criminal Case to amend the protective order to allow compliance with the Subpoena. On July 1, 2026, the Court (Stearns, J.) allowed that motion. In allowing the order, the Court noted *the assent of the United States*. (Criminal Case ECF 114.)

Even though the United States assented and the motion was allowed, Mr. Capobianco still refuses to produce the government's documents. Mr. Capobianco's counsel recently stated that they had discharged their duties under the Subpoena. (Exhibit 5)

Given Mr. Capobianco's position - that he need not respond any further to the Subpoena - Plaintiff now moves this Court to compel the production of government documents responsive to Request No. 1.

## ARGUMENT

When this matter was last before this Court on May 4, 2026, the Court indicated that Plaintiff's intervention in the Criminal Case would be necessary to modify the protective order. Mr. Capobianco's counsel, Mr. Vien, was in agreement: "I support the Court's thinking and position that we should all go before Judge Stearns and we should give the government notice and have them come and we could all settle this in a relatively quick hearing before Judge Stearns." (Exhibit 4 at 12:53)

The government was notified, assented and the motion was allowed relatively quickly. So, Plaintiff's counsel inquired when Mr. Capobianco would be producing those documents. Mr. Vien evaded the question and announced that, after three years of representing Capobiano, he was withdrawing from the case. (Exhibit 6) Subsequently

3

his colleague, Emma Notis-McConarty wrote to Plaintiff's counsel to advise that further objections to production will be issued by July 13, 2026. (Exhibit 5)

Mr. Capobianco has had *years* to assert his objections and *years* to produce any undisputed documents. He has produced nothing at all. The sun is setting on discovery, and Plaintiff simply cannot afford to be tied up in successive rounds of objections from Mr. Capobianco with no end in sight and no documents to show for it.

Mr. Capobianco has used a variety of arguments, and stall tactics, to try to avoid production of the criminal discovery afforded to him. For example, Mr. Capobianco has complained of the burden on him and has repeatedly suggested that this material should be obtained directly from the government. This burden argument ignores the impracticalities raised by the procedures established for a subpoena to the Department of Justice under *United States ex rel. Touhy v. Ragen* 1951, 340 U.S. 462 (1951).

Such a *Touhy* request will be denied if the material is available elsewhere (as it is in this case). When an agency refuses subpoena compliance, the requesting party must then sue the agency under the Administrative Procedure Act. This is a cumbersome procedure that could not reasonably be conducted within the time frame of a case, even one as old as this. *See e.g., COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269, 278 (4th Cir. 1999) (where the subpoena was not enforceable because the documents were available from a non-governmental entity).

Other, less legalistic, arguments followed. Counsel for Mr. Capobianco also suggested that because the documents were in the possession of his law firm rather than the client, they were "not in Mr. Capobianco's possession." (Exhibit 4 at 12:46)

4

After a very brief tutorial from the Court on constructive possession, Mr. Vien responded "I've never had to deal with that issue, your Honor, but I defer to you." (Exhibit 4 at 12:55)

Next, came Mr. Vien's objections as to cost: "I understand about Key Discovery and third-party vendors. And they'll do a lot of work and you can direct them to do whatever you want, but at a price, at a very, very high price." (Exhibit 4 at 12:50) The Court then observed that Plaintiff would be covering the cost and the objection quickly pivoted to other discovery sought by the Subpoena.

"[T]here's other documents still involved because we are working with Mr. Capobianco, making sure he doesn't have anything on his person that is responsive to any of the other requests." (Exhibit 4 at 12:50) More specifically, Mr. Vien told the Court "we're working with him on his phone, to see if he used his personal phone for any communications or documents." (Exhibit 4 at 12:53) The very same phone was the subject of the most recent email exchange with Mr. Vien. The response was that he (not his firm) would be withdrawing from the case - as if that precipitous retreat relieved him of any professional obligation to answer questions about representations to this Court. (Exhibit 6)

All manner of argument has been made to avoid having to turn over this discrete set of *government* documents. The Court is aware of the extent to which Plaintiff has had to go to obtain discovery from Defendants and third-parties alike. Mr. Capobianco has the documents from his criminal case, he no longer faces criminal jeopardy and even the United States assents to their production.

## CONCLUSION

The discovery clock is ticking. Mr. Capobianco's desire to debate his obligation to provide other personal documents has no bearing on what Plaintiff seeks today. The government provided documents to Capobianco as a criminal defendant in an inquiry into allegations that mirror allegations in this case. There is no longer any impediment to their production. The time has come for compliance.

Respectfully submitted,
PLAINTIFF ALEKSEJ GUSAKOVS,
By His Attorneys,


Dated:  July 10, 2026

/s/ Royston H. Delaney
Royston H. Delaney (BBO# 655666)
DELANEY KESTER LLP
28 State Street, Suite 802
Boston, Massachusetts 02109
(857) 498-0384
royston@delaneykester.com

Ilyas J. Rona, Esq. (BBO# 642964)
RONA & DURAN LLP
28 State Street, Suite 802
Boston, Massachusetts 02109
(617) 762-0103
ijr@ronaduran.com

Charles F. Kester, Esq. (*pro hac vice*)
DELANEY KESTER LLP
49 Boone Village, Suite 239
Zionsville, Indiana 46077
(818) 974-8627
charles@delaneykester.com

*Attorneys for Plaintiff Aleksej Gusakovs*

6

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I, Royston H. Delaney hereby certify that prior to filing this motion, I conferred with counsel for the Defendants and attempted in good faith to resolve or narrow the issues presented in the motion. Accordingly, the provisions of L.R. 7.1 have been complied with.

Dated:  July 10, 2026                          /s/ Royston H. Delaney
                                                Royston H. Delaney

## CERTIFICATE OF SERVICE

I, Royston H. Delaney, hereby certify that on July 10, 2026, I caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system on all of the individuals registered to receive electronic service of documents filed in this case including counsel for Defendants Johnson & Johnson and DePuy Synthes Sales, Inc.

Dated:  July 10, 2026                          /s/ Royston H. Delaney
                                                Royston H. Delaney